NIMALKA R. WICKRAMASEKERA (SBN: 268518)
nwickramasekera@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Ave., 38th Fl.
Los Angeles, CA 90071
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

ROBERT N. KANG (SBN: 274389)
rkang@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 34th Fl.
San Francisco, CA 94111
Telephone:   (415) 591-1000
Facsimile:    (415) 591-1400

Attorneys for PayPal, Inc.

*(Additional counsel information omitted)*

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ECARDLESS BANCORP, LTD., | Case No. 24-cv-01054-BLF |
| Plaintiff, | **PAYPAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULE 12(b)(6)** |
| v. | |
| PAYPAL, INC., | Date:          October 10, 2024 |
| Defendant. | Time:          9:00 AM<br>Courtroom:  3<br>Judge:        Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III. STATEMENT OF FACTS .................................................................................. 2

    A.   Procedural History ................................................................................... 2

    B.   The '862 and '863 patents ....................................................................... 3

    C.   The '206 and '942 patents ....................................................................... 5

IV.  APPLICABLE LAW .......................................................................................... 6

    A.   Rule 12(b)(6) ........................................................................................... 6

    B.   Subject Matter Eligibility under 35 U.S.C. § 101 .................................. 6

V.   ARGUMENT ...................................................................................................... 8

    A.   The claims of the '862 Family are patent-ineligible. .............................. 8

        1.   Representative Claims ................................................................... 8

        2.   *Alice* step one: The claims of the '862 Family are directed to facilitating purchases using an intermediary ................................ 9

            a.   Representative Claim 9 of the '862 patent ......................... 9

            b.   Representative Claim 1 of the '862 patent ....................... 15

        3.   *Alice* step two: The claims of the '862 Family lack an inventive concept. ....................................................................... 16

    B.   The claims of the '206 Family are patent-ineligible. ............................ 19

        1.   Claim 1 of the '206 patent is representative ............................... 19

        2.   *Alice* step one: The claims of the '206 Family are directed to the abstract idea of multi-factor authentication using location information in combination with the abstract idea of the '862 Family. ............................................................................ 20

        3.   *Alice* step two: The claims of '206 Family lack an inventive concept. ....................................................................... 23

VI.  CONCLUSION.................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
838 F.3d 1253 (Fed. Cir. 2016)...................................................................................9, 19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014)........................................................................................... *passim*

*Asghari-Kamrani v. United Servs. Auto. Ass'n,*
No. 2:15-cv-478, 2016 WL 3670804 (E.D. Va. July 5, 2016)........................................ *passim*

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................................................6, 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................................................6

*Beteiro, LLC v. BetMGM, LLC,*
626 F. Supp. 3d 789 (D.N.J. Sept. 7, 2022).................................................................23

*Boom! Payments, Inc. v. Stripe, Inc.,*
839 F. App'x 528 (Fed. Cir. 2021) ........................................................................ *passim*

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018)....................................................................................7

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014)...................................................................................10

*CG Tech. Dev., LLC v. FanDuel, Inc.,*
442 F. Supp. 3d 840 (D. Del. 2020), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021) .....................23

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
859 F.3d 1352 (Fed. Cir. 2017)...................................................................................18

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014)...............................................................................8, 16

*Customedia Techs., LLC v. Dish Network Corp.,*
951 F.3d 1359 (Fed. Cir. 2020).....................................................................................9

*Dropbox, Inc. v. Synchronoss Techs., Inc.,*
371 F. Supp. 3d 668 (N.D. Cal. 2019), *aff'd*, 815 F. App'x 529 (Fed. Cir. June 19,
2020) .........................................................................................................................8, 19

*Elec. Power Grp., LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016).....................................................................................9

*Front Row Techs., LLC v. NBA Media Ventures, LLC,*
204 F. Supp. 3d 1190 (D.N.M. 2016), *aff'd*, 697 F. App'x 701 (Fed. Cir. 2017) ..................22

*Innovation Sciences, LLC v. Amazon.com, Inc.*,
  778 F. App'x 859 (Fed. Cir. 2019) ...................................................................................10, 14

*Integrated Tech. Sys. V. First Internet Bank of Ind.*,
  No. 2:16-CV-00417-JRG, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017) ................................10

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015)..........................................................................................24

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*,
  876 F.3d 1372 (Fed. Cir. 2017)...................................................................................... *passim*

*In re Killian*,
  45 F.4th 1373 (Fed. Cir. 2022) ...........................................................................................7

*Mayo Collaborative Servs. V. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012)..............................................................................................................16

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
  839 F. App'x 520 (Fed. Cir. 2021) ......................................................................................18

*NantWorks, LLC v. Niantic, Inc.*,
  No. 20-CV-06262-LB, 2021 WL 24850 (N.D. Cal. Jan. 4, 2021) ........................................22

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
  855 F.3d 1322, 1327 (Fed. Cir. 2017), *cert. denied*, 583 U.S. 1056, 138 S. Ct. 672
  (2018) ...................................................................................................................................19

*Samsung Elecs. Co. Ltd. v. Blaze Mobile, Inc.*,
  673 F. Supp. 3d 1066 (N.D. Cal. May 16, 2023)..................................................................16

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)............................................................................................7

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017)....................................................................................6, 7, 17

*Skillz Platform, Inc. v. Aviagames Inc.*,
  No. 21-cv-02436, 2022 WL 783338 (N.D. Cal. Mar. 14, 2022) .....................................18, 22

*Smart Authentication IP, LLC v. Elec. Arts, Inc.*,
  402 F. Supp. 3d 842 (N.D. Cal. Sept. 11, 2019)........................................................13, 14, 23

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
  873 F.3d 1364,1374 (Fed. Cir. 2017)...................................................................................24

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ...............................................................................................6

*Strikeforce Techs., Inc. v. SecureAuth Corp.*,
  No. CV-17-04314, 2017 WL 8808122 (C.D. Cal. Dec. 1, 2017)....................................13, 14

*Telesign Corp. v. Twilio, Inc.*,
  No. 18-cv-03279-VC, 2018 WL 10638619, ECF No. 219, slip op. (N.D. Cal. Oct.
  19, 2018) ...............................................................................................................................12

iii

*Trading Techs. Int'l, Inc. v. IBG LLC,*
  921 F.3d 1378 (Fed. Cir. 2019)............................................................................................7

*Universal Secure Registry LLC v. Apple Inc.,*
  10 F.4th 1342 (Fed. Cir. 2021) ................................................................................ *passim*

**Statutes**

35 U.S.C. § 101 ............................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12 .......................................................................................................................18

Fed. R. Civ. P. 12(b)(6).....................................................................................................1, 6, 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**NOTICE OF MOTION AND MOTION**</u>

**PLEASE TAKE NOTICE** that on October 10, 2024 at 9:00 AM, or as soon as this matter may be heard before the Honorable Judge Beth Labson Freeman, of the above-entitled Court located at 280 South 1st Street, San Jose, California 95113, Defendant PayPal, Inc. ("PayPal" or "Defendant") respectfully moves the Court to grant PayPal's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) that the Asserted Patents, U.S. Patent Nos. 7,599,862 (the "'862 patent"); 7,599,863 (the "'863 patent"); 9,202,206 (the "'206 patent"); and 9,785,942 (the "'942 patent") are ineligible for patenting under 35 U.S.C. § 101.

The Complaint should be dismissed with prejudice, and all claims of the Asserted Patents held unenforceable, because every claim of the Asserted Patents recites subject matter that is ineligible for patent protection under 35 U.S.C. § 101. PayPal's motion is based on this notice of motion and motion, the memorandum of points and authorities below, the declaration of R. Kang ("Kang Decl.") and its exhibits, the pleadings and papers on file, and any materials and argument presented to the Court at the time of the hearing.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Buyers and sellers have used intermediaries to facilitate purchases for centuries.  Anyone who has purchased a home, or paid for a purchase using a wire transfer, has used a third-party intermediary to facilitate a transaction.  The process has been fundamentally the same for generations:  first, the buyer informs the seller that he or she wishes to purchase a product.  Ostensibly, the buyer does this without providing his or her bank account and routing numbers to the seller.  The buyer then communicates with the intermediary—be it an escrow agent or bank—and authenticates him or herself with the intermediary.  The buyer then authorizes the purchase with the intermediary, and the intermediary assures payment to the seller.

The Asserted Patents of Plaintiff eCardless Bancorp, Ltd. ("eCardless") recite nothing more than using generic computing technology in a conventional manner to carry out this exact procedure over the internet in order to reduce fraud by limiting the transmission of sensitive information from buyer to seller.  But the Supreme Court and Federal Circuit have consistently held that facilitating

financial transactions through the use of a third-party intermediary—whether "to mitigate settlement risk," as in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 219-20 (2014), or to "mitigate information security risks," as in *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1350 (Fed. Cir. 2021) ("*USR*")—is an abstract idea. The claims of the '862 and '863 patents are directed to the abstract idea of facilitating purchases using an intermediary, and implementing this abstract idea using wholly conventional and generic computing technology.

The claims of the '206 and '942 patents simply layer multi-factor authentication using location onto this age-old financial transaction. These lengthy claims are directed to a combination of three ideas, each of which the Federal Circuit has held are abstract: multi-factor authentication, location-based authentication, and facilitating a purchase using a third-party intermediary. Moreover, the asserted claims implement these abstract ideas by "simply recit[ing] conventional actions in a generic way": performing a first verification procedure in a conventional manner based on known parameters, such as PINs and browser cookies, and performing a second verification procedure based on location information from a GPS receiver in a device. *USR*, 10 F.4th at 1354 (holding "multi-factor authentication of a user's identity using two devices to enable a transaction" is an abstract idea). The asserted claims contain nothing to move them beyond the abstract. Consequently, the Asserted Patents are ineligible under *Alice,* and PayPal respectfully requests the Court grant its motion to dismiss.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Whether the claims of the Asserted Patents are invalid for failure to recite patent-eligible subject matter under 35 U.S.C. § 101, where (1) the Asserted Patents are directed to the abstract ideas of (i) facilitating purchases using an intermediary, and (ii) the combination of multi-factor authentication using location and facilitating purchases using an intermediary; and (2) the Asserted Claims' elements are conventional, generic, and well understood, and thus lack an inventive concept.

## III.    STATEMENT OF FACTS

### A.    Procedural History

eCardless is a non-practicing entity incorporated in Washington state. PayPal is a global leader in online payment solutions headquartered in San Jose, CA. eCardless brought this action against PayPal in the Midland-Odessa Division of the United States District Court for the Western District of

Texas on November 23, 2022, alleging infringement of the Asserted Patents. ECF No. 1. The Texas Court granted PayPal's transfer motion and transferred this case to this Court on February 22, 2024. ECF No. 86.

**B.    The '862 and '863 patents**

The '862 and '863 patents, respectively titled "Transferring Funds in Connection with Internet Orders Using Order Variables from Two Sources and Authentication," and "Order File Processing Using Order Variables from Two Sources and Authentication," were both filed January 3, 2006, as continuation applications of U.S. Pat. App. No. 09/669,335, which issued as U.S. Patent No. 7,006,986 (the "'986 patent"). Both the '862 and '863 patents expired on November 8, 2021.

The '862 and '863 patents (collectively, the "'862 Family") share a common specification and are directed to a method of performing a transaction with "three discrete communications linkages which define communications routes between the three key parties—the customer computer 10, merchant computer 20 and the bank computer 30." ECF No. 1-2 ("'862 patent") at 8:57–61.

The '862 patent states that, in prior art Internet purchasing, the customer computer does not directly communicate with the bank computer, but instead sends payment information to the merchant, and in turn the merchant sends the same payment information to the bank. *See* '862 patent at 6:45–7:30, Figs. 1–2. According to the specification, in the prior art, "sensitive business information is communicated at least twice:" once when "transmitting sensitive account information between the customer computer and merchant computer," and again "when the merchant computer sends an authorization request to the bank computer 30." *Id.* at 7:34–49. The specification contends that "there is significant opportunity for interception" of customer account information in each of these communications, and therefore fraud. *Id.* at 6:49–57 (Fig. 2, Step 43), 7:8–14 (Fig. 2, Step 51).

The specification purports that in the claimed invention—in contrast to prior-art Internet purchasing—"no account number, account address, or other sensitive information" is transmitted from the customer to the merchant, or the merchant to the bank. *Id.* at 30:48–50. Rather, the customer pre-registers his or her account information with the bank, "preferably with at least some of the information being communicated via one or more communications vehicles which are not over the internet," such

1  as "via telephone." '862 patent, 10:54–11:12, 10:1–4, 19:4–20:3, Fig. 6, 32:13–18. The "bank

2  computer 30 stores or otherwise controls access to customer account information." *Id.* at 8:25–28.

3       During a transaction, the customer builds and transmits an order file to the merchant by placing

4  an order (Fig. 4, steps 110, 120, and 130). Then, the customer contacts the bank (step 140) and

5  authenticates his or her identity to validate the transaction (step 150). The customer authenticates with

6  the bank via a "second data communications linkage . . . between the customer computer 10 and bank

7  computer 30" of the claimed invention (Figure 3, annotated in yellow below). '862 patent, 9:34–37,

8  19:4–20:13. The patent states that Figure 3, depicting the three discrete communications linkages,

9  "illustrates a significant difference" from the prior art. *Id.* at 8:35–38.



21       After customer authentication and approval of the purchase, the bank contacts the merchant

22  and assures payment (step 180). *Id.* at 30:35–31:17. "The bank may provide delivery or shipping

23  instructions . . . when the bank is assuring the merchant of payment." *Id.* at 31:9–12; *see also* Fig. 3

24  above (annotated in blue).

25       The patents purport that "separation of . . . key information to one of the three or more

26  communications linkages . . . provides increased security against surreptitious interception or

27  collection of internet communicated files that have all the information needed to effectuate a purchase

28  transaction according to prior art techniques." *Id.* at 9:16–22.

1    **C.    The '206 and '942 patents**

2        The '206 patent, entitled "Secure financial transaction processing using location information"

3    was filed May 26, 2009. The '942 patent, titled "Methods for performing internet processes using

4    global positioning and other means" was filed December 1, 2015 as a continuation of the '206 patent.

5    Both the '206 and '942 patents expired on September 25, 2020.

6        The '206 and '942 patents (collectively, the "'206 Family") share a common specification and

7    are also directed to methods for purchasing of goods or services over the internet involving interactions

8    among a "customer computer 10," "merchant computer 20," and the "bank computer 30." ECF No. 1-

9    4 ('206 patent) at 9:37–42, 9:57–61. The specifications of the '206 Family and '862 Family

10   substantially overlap.

11       The claims of the '206 Family are directed to the same method of facilitating a purchase using

12   an intermediary as the '862 Family claims, with additional limitations for authenticating a device or

13   transaction based on two verification procedures involving three claimed pieces of data.  In the first

14   verification procedure, the bank computer verifies a device by assessing "changeable authentication

15   or changeable verification parameters" (*e.g.*, a "user personal information number" or "user

16   identification code") and "computer identification information" or "code" (*e.g.*, a cookie).  *See* '206

17   patent at 16:17–21 ("The user identification code may be selected by the bank, or the code may reflect

18   the user's choice"), 19:21–25 ("One suitable form of identification is sometimes referred to as a

19   'cookie'.  The to [sic] preferred cookies for the invention are selectively allowed by the customer

20   computer to be written to the customer computer in a form which allows the bank to positively identify

21   the customer computer.").

22       In the second verification procedure, the bank computer utilizes a "positioning location" that

23   "includes position data obtained from a GPS sensor of the" customer or merchant's "computer device."

24   '206 patent, Claim 1. As the '206 patent explains, "[t]he bank may also maintain customer account

25   information which indicates the location or locations which are authorized locations from which orders

26   may be placed." '206 patent, 15:22–24.  These authorized locations are compared against the location

27   of a user or merchant device based on its GPS sensor.  *Id.* at 32:7–19 ("It is further possible to utilize

28   the locational identification information from a GPS unit to additionally analyze the apparent validity

1  of a transaction.  This can be done by comparing the indicated user or computer GPS . . . against the

2  shipping address.").

3  **IV.    APPLICABLE LAW**

4      **A.    Rule 12(b)(6)**

5      A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to

6  'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Bell*

7  *Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Although a complaint attacked through a Rule 12(b)(6)

8  motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and

9  conclusions." *Twombly*, 550 U.S. at 555.

10      To state a plausible claim for relief, the complaint "must contain sufficient allegations of

11  underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

12  "Factual allegations must be enough to raise a right to relief above the speculative level on the

13  assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*,

14  550 U.S. at 555 (citations omitted). To survive a motion to dismiss, a complaint "must contain

15  sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which

16  means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable

17  inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal

18  quotation marks omitted).

19      **B.    Subject Matter Eligibility under 35 U.S.C. § 101**

20      "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at

21  216.  In *Alice*, the Supreme Court set forth a two-step test for determining whether a claim is directed

22  to ineligible subject matter.

23      *__Alice__ __step one__*. The first step is to "determine whether the claims at issue are directed to one

24  of those patent-ineligible concepts," *e.g.*, an abstract idea. *Id.* at 217. A Section 101 inquiry, including

25  at step one, is a question of law which may be decided based on only the "intrinsic evidence from the

26  specification without need for 'extraneous fact finding outside the record.'" *Secured Mail Sols., LLC*

27  *v. Universal Wilde, Inc.*, 873 F.3d 905, 912–13 (Fed. Cir. 2017).

28      "Under this inquiry, [courts] evaluate the focus of the claimed advance over the prior art to

1    determine if the character of the claim as a whole, considered in light of the specification, is directed

2    to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir.

3    2019) (quotation omitted). The step one analysis typically begins with an "[e]xamination of earlier

4    cases" . . . "arising under § 101 through comparison to [] prior opinions." *In re Killian*, 45 F.4th 1373,

5    1383 (Fed. Cir. 2022) (citing *Alice*, 573 U.S. at 221).

6        ***Alice* step two.** If a claim is directed to ineligible subject matter, the second step is to

7    "determine whether [any] additional elements transform the nature of the claim into a patent-eligible

8    application" by reciting "an inventive concept—*i.e.*, an element or combination of elements that is

9    sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the

10   ineligible concept itself." *Alice*, 573 U.S. at 217–18 (quotations omitted). Even if "the techniques

11   claimed are groundbreaking, innovative, or even brilliant . . . that is not enough for eligibility" if "the

12   advance lies entirely in the realm of abstract ideas." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161,

13   1163 (Fed. Cir. 2018). "What is needed is an inventive concept in the non-abstract application realm."

14   *Id.* at 1168.

15       To the extent claims include non-abstract elements, they are still ineligible if they recite "well-

16   understood, routine, conventional activities previously known to the industry." *Alice*, 573 U.S. at 225

17   (quotation omitted). The "inquiry is not whether the claimed invention as a whole is unconventional

18   or non-routine," but "whether the claim limitations other than the invention's use of the ineligible

19   concept to which it was directed were well-understood, routine and conventional." *BSG Tech LLC v.*

20   *Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

21       The two-step *Alice* inquiry is a legal one, which may be decided based on the "intrinsic

22   evidence from the specification without need for 'extraneous fact finding outside the record.'" *Secured*

23   *Mail Sols., LLC*, 873 F.3d at 912. "Like other legal questions based on underlying facts," patent

24   eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the

25   undisputed facts . . . require a holding of ineligibility under the substantive standards of law." *SAP*

26   *Am.*, 898 F.3d at 1166.

27

28

V.    **ARGUMENT**

A.    **The claims of the '862 Family are patent-ineligible.**

Claims 1–20 of each of the '862 and '863 patents are directed to the patent-ineligible abstract idea of facilitating purchases using an intermediary.  The use of an intermediary to facilitate payment for purchases, such as in escrow or a bank wire transfer, is a fundamental economic practice known long before the use of computers and Internet commerce. Because nothing in these claims adds an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself," this Court should find the claims ineligible under 35 U.S.C. § 101.  *See Alice*, 573 U.S. at 225–26.

1.    **Representative Claims**

"[T]he Court need not individually analyze every claim if certain claims are representative." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 371 F. Supp. 3d 668, 684 (N.D. Cal. 2019), *aff'd*, 815 F. App'x 529 (Fed. Cir. June 19, 2020). Claims are representative when they "are substantially similar and linked to the same abstract idea." *See id.* (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)).  As described below, the independent claims of the '862 Family are all directed to the abstract idea of facilitating purchases using an intermediary.  The dependent claims are substantially similar and linked to the same abstract idea.  Thus, independent claim 1 of the '862 patent is representative of dependent claims 2–8 of the '862 patent, independent claim 1 of the '863 patent, and dependent claims 2–8 of the '863 patent. Independent claim 9 of the '862 patent is representative of dependent claims 10–20 of the '862 patent, independent claim 9 of the '863 patent, and dependent claims 10–20 of the '863 patent.

Independent claim 9 of the '862 patent is nearly identical to independent claim 9 of the '863 patent, and the differences between them are trivial or typographical.  For example, '862 patent claim 9 requires providing an order variable "to proceed with merchant processing of the customer order," whereas '863 patent claim 9 requires providing an order variable "to thereby allow the merchant to fulfill or reject the order."  *Compare* '862 patent, 51:13–16, *with* '863 patent, 52:13–15.  Similarly, independent claim 1 of the '862 patent is nearly identical to independent claim 1 of the '863 patent except that the latter includes an additional limitation "assembling order information for a customer

order . . ." '863 patent, 50:44–47.  And the dependent claims 2–8 and 10–20 of both the '862 and '863 patents do not add anything above the abstract idea.  These claims merely recite using "verification or authentication fields" that change with each transaction (claims 2–6 and 10–15), conducting the authentication procedure for the merchant (claims 16–17), or specify that the customer, merchant, or both assign the transaction identifier ('862 patent claims 7–8, 18–20).  These are trivial variations of the same abstract idea of facilitating purchases using an intermediary.  *See, e.g.*, *Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, 876 F.3d 1372 (Fed. Cir. 2017) (remote seller generating an order code for each order).  Thus, claim 1 of the '862 patent is representative of claims 2–8 of the '862 patent and claims 1–8 of the '863 patent, and claim 9 of the '862 patent is representative of claims 10–20 of the '862 patent and claims 9–20 of the '863 patent.

### 2.    *Alice* step one: The claims of the '862 Family are directed to facilitating purchases using an intermediary

The first step of the Alice framework "look[s] at the 'focus' of the claims [and] their 'character as a whole,'" to determine whether they are directed to an abstract idea or other patent-ineligible concept. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  Here, the clear focus of the claims is the abstract idea of facilitating purchases using an intermediary.  The asserted claims do not provide a "solution of a 'technological problem'" or "an improvement in computer or network functionality." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016). *See also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) (holding "[t]o be a patent-eligible improvement to computer functionality, we have required the claims to be directed to an improvement in the functionality of the computer or network platform itself.").  Rather, the claims do nothing more than use an intermediary—a bank—to pay a seller upon the buyer authorizing a specified transaction with the intermediary in order to avoid transmitting sensitive information to the seller that may be intercepted.

### a.    Representative Claim 9 of the '862 patent

Claim 9 of the '862 patent is directed to the abstract idea of facilitating a purchase using an intermediary.  Broadly, claim 9 requires the steps of: (1) a customer (*i.e.*, buyer) placing an order with a merchant (*i.e.*, seller) via the internet ('862 patent, 51:52–61), (2) generating a transaction identifier

for the order (*id.* at 51:62–52:2); (3) the buyer authenticating itself and approving the transaction identified by the transaction identifier with the bank (*i.e.*, intermediary) (*id.* at 52:3–9); and (4) the intermediary paying the seller (*id.* at 52:10–18). This is effectively the same as paying for a purchase via wire transfer: a buyer places an order with a seller, the seller gives the customer an order number so that he or she knows what an incoming wire is for, the buyer communicates with his or her bank to authenticate with the bank and provide instructions, including the order number, for paying the seller, after which the bank pays the seller. This is not a technological solution to a problem rooted in technology, but simply a method of conducting a transaction that has been used for centuries.

Both the Supreme Court and the Federal Circuit have consistently found similar claims covering facilitating purchases and other financial transactions using intermediaries directed to abstract ideas. *See, e.g.*, *Alice*, 573 U.S. at 219 (holding claims directed to "exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk" abstract); *Innovation Sciences, LLC v. Amazon.com, Inc.*, 778 F. App'x 859 (Fed. Cir. 2019) (holding claims directed to the abstract idea of "securely processing a credit card transaction with a payment server" ineligible); *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528 (Fed. Cir. 2021) (holding "the claims are directed to the abstract idea of payment escrow" using an "online marketplace"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding performance guaranty by a third-party "safe transaction service" provider a type of "long-familiar commercial transaction[]" and abstract); *Integrated Tech. Sys. v. First Internet Bank of Ind.*, No. 2:16-CV-00417-JRG, 2017 WL 631195, at *4 (E.D. Tex. Jan. 30, 2017) (claims directed to "electronic escrow agent" to facilitate sending cash between individuals found abstract); *Inventor Holdings*, 876 F.3d 1372 (Fed. Cir. 2017) (holding claims directed to local processing of payments by a POS system for remotely purchased goods "are manifestly directed to an abstract idea").

Claim 9 of the '862 patent closely mirrors the invention in *Inventor Holdings,* which "covers purchasing goods from a remote seller by placing an order, receiving an order code, entering the order code at a POS terminal, and paying for the order in person." *Inventor Holdings,* 875 F.3d at 1375. Although in *Inventor Holdings* the patent at issue included three method claims—one drafted from the perspective of each of the intermediary (POS system, claim 1), seller (claim 25), and buyer (claim

41)—whereas claim 9 aggregates the actions of all three parties (the bank, merchant, and customer, respectively) into a single claim, the limitations use nearly identical language to cover the same general process of: (1) a buyer placing an order with a seller via the internet, (2) generating a transaction identifier for the order; (3) the buyer authenticating itself and approving the transaction identified by the transaction identifier with the intermediary; and (4) the intermediary paying the seller and the seller processing the order. The table below compares the limitations of the '582 patent of *Inventor Holdings* with claim 9 of the '862 patent, color coded for each of these four steps:

| U.S. Patent No. 6,381,582 ('582 patent) of *Inventor Holdings* | Claim 9 of the '862 patent |
|---|---|
| (Claim 41 **[buyer]**): transmitting an order for goods to a remote merchant | communicating between a customer computer and a merchant computer via the internet; |
| (Claim 25 **[seller]**): receiving a remote order for a purchase of goods from a customer | assemble order information associated with a customer order using the merchant computer and customer computer during said communicating step |
| (Claim 25 **[seller]**): generating a code and a purchase price for said remote order | assigning a transaction identification during said communicating step to identify said transaction, said transaction identification not being useful for making other transactions against the customer account; |
| (Claim 41 **[buyer]**): providing at least one of said code and said purchase price for use by a point-of-sale system of a local seller in processing a payment for said order; | conducting an identification inquiry between the bank computer and customer computer via the internet to verify the authority of the customer user for using said customer account; |
| (Claim 8 **[POS system]**) receiving at a point-of-sale system a code relating to a purchase of goods | communicating between the customer computer and the bank computer via the internet including transaction identification and at least one order variable; |
| (Claim 8 **[POS system]**): transmitting to said remote seller data indicating that said payment has been received for said remote order | communicating between the bank computer and the merchant computer; |
| (Claim 25 **[seller]**): initiating, responsive to said payment data, a shipment of said goods; and<br>receiving a payment for said remote order from said local seller | said communicating between the bank computer and the merchant computer including said transaction identification and said at least one order variable not previously known to the merchant computer to proceed with merchant processing of the customer order;<br><br>paying the merchant using the bank. |

The only differences between the claims of the '582 patent and claim 9 are: (i) in the '582

11

patent, the user submits payment directly to the intermediary (the POS system), whereas in claim 9, the user submits an "order variable not previously known to the merchant" over a separate communications linkage to authorize the intermediary (the bank) to make the payment, and (ii) eCardless admits that the order variable received from the customer by the bank is *the same order variable* that is sent from the bank to the merchant during payment.  Kang Decl. Ex. B at 3.  These differences do not render the claim patent-eligible, as they do not "constitute an improvement to computer functionality itself."  *USR*, 10 F.4th at 1346.

*First*, authorizing an intermediary such as a bank to pay a seller is itself a long-established and conventional financial practice.  When wiring money to a recipient, the sender's bank will authenticate the sender to make sure he or she is authorized to access the account by any known verification method such as driver's license, debit card PIN, or—if the authorization is provided through online banking— conventional web authentication such as username and password.  The Federal Circuit has held that verifying a user's identity is, in both the payment and other contexts, an abstract idea.  *See, e.g.*, *USR*, 10 F.4th at 1350 (finding claims "directed to a method for verifying the identity of a user to facilitate an economic transaction" abstract); *Telesign Corp. v. Twilio, Inc*., No. 18-cv-03279-VC, 2018 WL 10638619, ECF No. 219, slip op. at 3–4 (N.D. Cal. Oct. 19, 2018) (holding "verifying a user's identity using passcodes" is an abstract idea).  *See also Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15-cv-478, 2016 WL 3670804, at *4 (E.D. Va. July 5, 2016) (holding the combination of "the use of a third party intermediary to confirm the identity of a participant to a transaction and the use of a temporary code to confirm the identity of a participant to a transaction" is an abstract idea).

Likewise, when executing escrow, the escrow agent must verify the identity of the buyer and that the transaction has been consummated prior to releasing funds to the seller.  The Federal Circuit has held that electronic payment escrow is an abstract idea.  In *Boom! Payments*, the Federal Circuit determined "the claims are directed to the abstract idea of payment escrow."  839 F. App'x at 532. The claims at issue required that "the buyer provides payment information to the system, such as credit or debit card information," after which a "unique 'buyer identifier' is then generated and provided to the buyer.  Once the transaction has been consummated . . . the buyer provides the buyer identifier to the seller . . . . The seller then provides the buyer identifier to the online marketplace . . . and payment

1   is authorized." *Id.* at 530. Because only the buyer and the online marketplace know the "buyer

2   identifier," reception of the buyer identifier authorizes the payment to the intermediary. Thus,

3   authorizing a pre-stored payment method using an intermediary is itself an abstract idea, and cannot

4   remove claim 9 from the realm of the abstract.

5        Furthermore, the fact that authorization occurs over a separate "communications linkage"

6   between the customer and the bank is also abstract. For example, when executing a wire transfer, the

7   communications mechanism the buyer uses to communicate with the bank is typically different than

8   the one the buyer uses with the seller. And this Court has specifically held that authentication using

9   multiple communications mediums is abstract. *See Smart Authentication IP, LLC v. Elec. Arts, Inc.*,

10  402 F. Supp. 3d 842, 853 (N.D. Cal. Sept. 11, 2019) (granting motion to dismiss and holding asserted

11  patent "is directed to the abstract idea of verifying the identity of a user in more than one way over

12  multiple communications mediums."); *see also Strikeforce Techs., Inc. v. SecureAuth Corp.*, No. CV-

13  17-04314, 2017 WL 8808122, at *6 (C.D. Cal. Dec. 1, 2017) (finding claims that patentee

14  characterized as "implementing out-of-band authentication" abstract and ineligible subject matter).

15       ***Second***, the limitation requiring that certain information (*i.e.*, sensitive data) is ***not*** transmitted

16  the merchant (*i.e.*, "order variable ***not previously known to the merchant computer***") is also itself an

17  abstract idea. The Federal Circuit has held the "use of an identification code known only to the buyer

18  and the third party to verify a transaction could be performed just as readily without the use of

19  computers and cannot be said to be a 'technological' solution that improves the functioning of a

20  computer system." *Boom! Payments,* 839 F. App'x at 532. Indeed, in a conventional escrow or wire

21  transfer arrangement, the seller does not receive the buyer's account numbers.

22       Furthermore, claim 22 in *Universal Secure Registry* also included similar negative limitations,

23  but nonetheless the Federal Circuit found it was directed to an abstract idea. *USR*, 10 F.4th at 1349

24  ("providing the account identifying information to a third party ***without providing the account***

25  ***identifying information to the provider*** . . . enabling or denying the provider to perform the transaction

26  ***without the provider's knowledge of the account identifying information***."). The Federal Circuit

27  held, "the claims here involve allowing a financial transaction between two parties using a third-party

28  intermediary to mitigate information security risks," and that "sending data to a third-party as opposed

13

to the merchant itself is an abstract idea." *Id.* at 1350.

Critically, the claims do not specify what "order variable" is withheld from the merchant, or what "order variable" is provided by the customer and bank to complete the order. Rather, the claims use results-based negative limitations that whatever information is transmitted to the merchant cannot "be used to make fraudulent charges against the customer account." The Federal Circuit consistently finds claims using this type of results-based language directed to abstract ideas. *USR*, 10 F.4th at 1355 ("Because the claims broadly recite generic steps and results—as opposed to a specific solution to a technological problem—we hold that the claims are abstract under *Alice.*"); *see also Innovation Sciences*, 778 F. App'x at 864 (finding claim that "recites, in merely functional, results-oriented terms" method of "securely processing a credit card transaction with a payment server" abstract). And like the claims at issue in each of *Inventor Holdings*, *Innovation Sciences*, *Smart Authentication*, *StrikeForce*, *Asghari*, *USR*, and *Boom! Payments*, claim 9 "only describe[s] the steps of passing information back and forth by a computer." *Boom! Payments*, 839 F. App'x at 532.

Similarly, the additional limitation, "said transaction identifier not being useful for making other transactions against the customer account" ('862 patent, 51:59–62) merely describes a characteristic of nearly all transaction identifiers. The patent admits that, during prior art online orders, a merchant typically assigns an order number for recordkeeping (*id.* at 4:24–25 ("An invoice or order number is usually assigned.")—ostensibly this order number cannot be used to make *other* orders. Indeed, in *Asghari,* the claims recite a "dynamic code that is valid for a predefined time and *becomes invalid after use*." *Asghari*, 2016 WL 3670804, at *2. *See also Boom! Payments*, 839 F. App'x at 530 (reciting the step of "generat[ing] a *transaction-specific* buyer acceptance identifier"); *USR*, 10 F.4th at 1348 ("When a user initiates a purchase, the user enters a secret code . . . to cause the ID device to generate a *one-time code.*"). Conventional, well-known characteristics cannot render the claims patent eligible.

*Third*, the requirement that the order variable be sent from the bank to the merchant "to proceed with merchant processing of the order," such as a shipping or delivery address, does not render the claims non-abstract. This step could just as easily be performed without the use of computers, and similarly cannot be said to be a "technological" improvement. Indeed, originally filed claim 1 of the

'986 patent expressly recited this limitation ("providing delivery address information to the merchant from the bank in connection with said order"), yet the Patent Office rejected claim 1 as patent-ineligible.  Kang Decl. Ex. C.

**Finally,** the limitations requiring that the customer computer send an order variable to the bank, and subsequently that the bank forward the order variable to the merchant, cannot render the claims patent eligible.  Fundamentally, a buyer providing information such as closing instructions to an intermediary, such as an escrow agent, who then provides the information to the seller is a conventional economic process that has been performed without computers for centuries.  And this Court found a claim reciting a nearly identical process directed to an abstract idea.  *Asghari*, 2016 WL 3670804, at \*2 (holding claims that require a user "provide his or her UserName and SecureCode to the External-Entity" and "the External-Entity then sends the Username and SecureCode to the Central-Entity" abstract).  Indeed, the Federal Circuit in *Inventor Holdings* found a similar set of claims, requiring that a "remote seller generates an 'order code'" that it sends to the buyer, after which "the buyer may then enter the order code at a point-of-sale (POS) terminal," directed to an abstract idea and patent-ineligible.  *Inventor Holdings*, 876 F.3d at 1375; *see also Boom! Payments*, 839 F. App'x at 530 (finding claims that require a "buyer identifier" to be provided from buyer to seller, then from the seller to an online marketplace, abstract). And critically, eCardless contends that claim 9 **does not require** that the variable sent from the bank to the merchant is the same order variable received at the bank from the customer.  Kang Decl. Ex. A at 16.  Even were this requirement enough to remove the claims from the realm of the abstract, it cannot save the eligibility of '862 patent, claim 9.

### b.  Representative Claim 1 of the '862 patent

Representative '862 patent, claim 1 is also directed to the abstract idea of facilitating purchases using an intermediary.  Like claim 9 of the '862 patent, claim 1 recites limitations that generally describe the same four steps of (1) a buyer placing an order with a seller via the internet ('862 patent, 50:39–52), (2) generating a transaction identifier for the order (*id.* at 50:53–55); (3) the buyer authenticating itself and approving the transaction identified by the transaction identifier with the bank (*i.e.*, intermediary) (*id.* at 50:56–51:6); and (4) the intermediary paying the seller (*id.* at 51:7–19).

Claim 1 differs only in that it includes more specificity in step (1); e.g. "building a customer

order file" and "building a merchant order file" (*id.* at 50:42–52). These limitations are simply directed to prior art mechanisms putting items in an online shopping cart at a merchant website, and do not change the abstract nature of the claim. *See, e.g.*, '862 patent, 6:44–67 ("FIG. 2 further illustrates steps performed in a typical prior art internet purchase transaction . . . Step 43 involves interaction between the customer computer and the merchant computer wherein the customer builds an order file."). "[N]o entity is entitled to 'wholly preempt' such concepts." *Inventor Holdings*, 876, F.3d at 1378. *See also Samsung Elecs. Co. Ltd. v. Blaze Mobile, Inc.*, 673 F. Supp. 3d 1066, 1081 (N.D. Cal. May 16, 2023) (holding claims directed to "combination of two fundamental economic practices… (1) selecting and purchasing products and (2) providing security for transactions on mobile devices" directed to an abstract idea). And as discussed above, limitations that some order information is withheld from the merchant cannot render the claim patent-eligible. *USR*, 10 F.4th at 1349.

Furthermore, that the claim is verbose does not alter the analysis under *Alice* step one. While eCardless takes great pains to use as many words as possible to express a single idea—for example, separately claiming the step of "communicating between the customer computer and the bank computer **to provide**" an order variable and transaction identifier, and the step in which that information **is provided** ('862 Patent at 50:63-51:6), verbosity alone cannot remove a claim from the realm of the abstract. *See Asghari,* 2016 WL 3670804, at *4 (holding a claim directed to an abstract idea "is admittedly verbose . . . because the patent claims combine two abstract ideas").

Accordingly, claims 1–20 of the '862 and '863 patents are directed to the abstract idea of facilitating purchases using an intermediary.

### 3.    *Alice* step two: The claims of the '862 Family lack an inventive concept.

Because the claims of the '862 Family are directed to an abstract idea, they are patent-ineligible unless they contain an "inventive concept" that ensures the patent amounts to significantly more than a patent on the ineligible idea itself. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). The '862 Family claims simply implement the abstract idea using "well-understood, routine, conventional activity," and cannot supply an inventive concept. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012).

Representative claims 1 and 9 of the '862 patent merely recite generic "computer[s]" (*e.g.*, a

"customer computer," a "merchant computer," and a "bank computer") without anything more. "Computer" is simply a generic computing term that does not confer an inventive concept, particularly by September 25, 2000, the earliest claimed priority date of the '862 Family. "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

The specification also admits that the communication linkages between the three parties are "conventional," and made using "known" communication techniques. *See, e.g.*, '862 patent, 6:16–18 ("This customer-merchant communications linkage can function in many of the conventional ways now known"), 6:29-32 ("Communications links between the customer computer 10, customer internet service provider 12, internet 15, merchant internet service provider 18 and merchant computer 20 may use a variety of data processing communications vehicles."), 8:18–20 ("All links use **conventional data communications vehicles** or suitable future communications vehicles"). *See also id.* at 6:29–32, 9:24–33, 9:61–67, 24:15–18.

Similarly, the specification admits that the customer authentication by the bank is accomplished via conventional means, such as verification of shipping or delivery address ('862 patent, 15:7–12), telephone number (*id.* at 15:20–26), "user personal identification" information/code/number such as "numeric, alpha-numeric, alphabetical" PINs (*id.* at 15:28–32, 14:43–51), and "customer computer identification information" (*id.* at 15:13–19). *See also id.* at 17:34 ("a variety of **known** identification methods are possible. One suitable form of identification is sometimes referred to as a 'cookie.'"), 11:58–65 ("The associated bank data field used to specifically or uniquely identify an authorized customer computer may take various forms **now known or hereafter developed**."), 18:15–18.

The specification also admits that payment is effected using conventional means. '862 patent, 30:4–8 ("the bank can effect payment by sending checks, wire transfers, electronic funds transfers, or other known or hereafter developed methods of payment."). Nor does the specification describe any technical advance in generating the "transaction identifier," and admits that in the prior art "an invoice or other transaction control number is usually assigned." *Id.* at 23:50–55, 4:21–25. *See Secured Mail Sols., LLC*, 873 F.3d at 910 (Fed. Cir. 2017) (finding no inventive concept where barcode generation

claims "are not directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality," and the specification contains "no description of how the unique identifier is generated").

Furthermore, the order and timing of the claim elements—including what data is sent between the parties—are "merely the necessary steps of executing payment escrow, and so do not constitute an inventive concept." *Boom! Payments*, 839 F. App'x at 533. And the dependent claims do not add an inventive concept, merely adding limitations that describe conventional well-known technology, such as changing an authentication field with each transaction, or specifying whether the customer or the merchant generates the transaction identifier.

In addition, none of the other claims in the '862 Family contain an inventive concept, but are simply "high-level, functional claims supported by scant additional details in the specification." *Skillz Platform, Inc. v. Aviagames Inc.*, No. 21-cv-02436, 2022 WL 783338, at *13–15 (N.D. Cal. Mar. 14, 2022). For example, the specification merely states, "the computer identification information may vary with time . . . . Still further, such information may change or be changeable each time or at a certain frequency" without providing any technical improvement to computer identification information, or details on how the information changes. '862 patent, 11:66–12:22.

Further, the Complaint is devoid of any factual allegations that the '862 Family includes an inventive concept or presented a technological solution beyond well-understood, routine, conventional activity. Indeed, the Complaint merely includes the conclusory statement that the '862 and '863 patents each "claims patent-eligible subject matter." ECF No. 1, ¶¶ 30, 35. A court need not accept as true a complaint's legal conclusions. *Iqbal*, 556 U.S. at 679.

Finally, claim construction is unnecessary to decide eligibility here. Courts routinely adjudicate eligibility before *Markman*, especially where, as here, Plaintiff only argues that the disputed claim terms should "simply be afforded their plain and ordinary meaning." *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 525 (Fed. Cir. 2021); *see also Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (listing cases where the Federal Circuit affirmed § 101 rejections on Rule 12 motions prior to construing the claims); Kang Decl. Ex. B at 2.

1    At bottom, the limitations of the '862 Family claims may make use of technology, but do not

2    describe improvements to payment processing itself.  Instead, they do little more than "recite[] that

3    the abstract idea[s] . . . will be implemented using the conventional components and functions" generic

4    to computers.  *Affinity Labs*, 838 F.3d at 1263.  Accordingly, claims 1–20 of the '862 and '863 patents

5    lack an "inventive concept" under *Alice* step 2.

6        **B.    The claims of the '206 Family are patent-ineligible.**

7    Claims 1–15 of the '206 patent and Claims 1–15 of the '942 patent are directed to the abstract

8    idea of multi-factor authentication using location layered on top of the abstract idea of the '862 Family.

9    "Adding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract."

10   *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), *cert. denied*, 583 U.S.

11   1056, 138 S. Ct. 672 (2018).  Because nothing in these claims adds an inventive concept "sufficient to

12   ensure that the patent in practice amounts to significantly more than a patent upon the ineligible

13   concept itself," the Court should also find the claims ineligible under 35 U.S.C. § 101.  *See Alice*, 573

14   U.S. at 225–26.

15       **1.    Claim 1 of the '206 patent is representative**

16   Claim 1 of the '206 patent representative of the remaining claims of the '206 Family.  As

17   discussed below, representative claim 1 of the '206 patent is directed to the abstract idea of multi-

18   factor authentication using location information layered on top of the abstract idea of facilitating a

19   purchase with an intermediary claimed in the '862 Family.  The first part of the claim discusses the

20   multi-factor authentication procedure for a customer ('206 patent, 65:64–66:28), and the latter part of

21   the claim simply describes authenticating a merchant (*id.* at 66:28-34), and facilitating the transaction

22   in the same manner as in the '862 Family (*id.* at 66:35-43).

23   The remaining claims in the '206 Family "are substantially similar and linked to the same

24   abstract idea." *Dropbox*, 371 F. Supp. 3d at 684.  The other independent claims recite substantially the

25   same subject matter—while '206 patent claim 1 is a method claim drafted from the perspective of a

26   financial provider, the other independent claims of the '206 patent (claims 6 and 11) are merely

27   counterpart Beauregard and system claims, respectively, reciting the same subject matter.  '942 patent

28   claim 1 differs only that it lacks the step of "receiving, by at least one processor, computer

19

identification information from a merchant computer device," and method claims 7 and 13 are simply drafted from the perspective of a customer computer or merchant computer, respectively. Independent claims 7 and 13 also add the feature of the merchant computer receiving a transaction identifier or customer verification information from the customer computer that "is not useful in determining a customer account number." But as discussed *supra* Section V.A.2, this type of results-based negative limitation is itself an abstract idea and thus does not alter the representativeness inquiry.

Likewise, the dependent claims simply recite minor variations to the same general abstract idea. For the '206 patent, the dependent claims recite using telephone information during the first verification (claims 2, 7, 12); using shipping address during the second verification (claims 3, 8, 13); using delivery address in the second verification (4, 9, 14); and using location information obtained from a third party (claims 5, 10, 15). Similarly, for the '942 patent, the dependent claims simply claim variations on the same two verification procedures; for example, that the payment request is initiated by the customer (claim 3) or the merchant (claim 4); obtaining GPS location information from both the customer and the merchant in a third verification procedure (claims 5, 7); communicating without using the internet (claims 8, 14); or communicating using encrypted communication linkages (claims 12, 15). And claim 2 adds the same results-based negative limitation of the transaction identifier "not useful in determining a customer account number." None of these minor variations render the claims non-abstract; indeed, they almost appear to be algorithmically generated, mirroring the ***17 columns*** of claim variations at the end of the specification. *See* '206 patent, 41:37–58:55; *see also* '862 patent, 39:10–50:12.

**2.  *Alice* step one: The claims of the '206 Family are directed to the abstract idea of multi-factor authentication using location information in combination with the abstract idea of the '862 Family.**

The claims of the '206 Family are directed to the abstract idea of multi-factor authentication using location information layered on top of the abstract idea of the '862 Family. This addition of two abstract ideas cannot render the claims patent eligible. *Boom! Payments*, 839 F App'x at 532 (holding "at most, the use of an identification code does nothing more than overlay a second layer of abstraction—specifically, identity authentication—on the escrow procedure described by the claims").

20

Representative claim 1 of the '206 patent specifies that a first verification is performed based on received "authentication or . . . verification parameters" and "computer identification information," and that a second verification is performed based on received "positioning location indicative of a physical location of the customer computer device . . . wherein the positioning location includes position data obtained from a GPS sensor of the customer computer device." '206 patent, Claim 1.

The Federal Circuit has held that multi-factor authentication is an abstract idea. In *Universal Secure Registry*, the Court held that claims 10 and 12 of the analyzed patent were directed to the abstract idea of "multi-factor authentication of a user's identity using two devices to enable a transaction." *USR*, 10 F.4th at 1354–57. The Court rejected USR's arguments that the claims cover a technological solution to problems specific to authentication systems, because "the claims do not include sufficient specificity. . . . Rather, the claims generically provide for the collection of biometric information . . . then authenticating a user using both the biometric-information-derived first authentication and a second authentication information." *Id.* at 1354.

Claim 1 of the '206 patent is similarly generic. The claim merely requires "performing . . . a first verification procedure using the plurality of changeable authentication or changeable verification parameters and the computer identification information from the customer computer device to determine that the customer is authorized to use the customer computer device," but does not limit the parameters or information to any specific type. Rather, the '206 patent describes generic "changeable authentication or changeable verification parameters" such as passcodes. *See* '206 patent, 16:13–21:

> Customer account set up at the bank further preferably includes another field or fields of information to define authorized users for the customer account. This is done by setting up a user personal identification number or other user identification information and coding. The user identification code may be selected by the bank, or the code may reflect the user's choice. A particular requested personal identification number or code can be numeric, alpha-numeric, is alphabetical or some other code configuration.

The specification goes on to list other "authentication/verification parameters" that are entirely conventional: shipping or delivery address (*id.* at 16:44–50) and telephone caller ID information (*id.* at 16:58–64). The specification in fact states "a variety of ***known*** identification methods are possible." *Id.* at 19:15–20. And there is nothing new about providing a "changeable" passcode—users have been

able to change or reset PIN numbers and passcodes since their inception.

Similarly, the specification does not describe any new "computer identification information," but merely describes conventional and known methods of identifying a computer, such as a browser cookie. *See id.* at 19:21–25:

> One suitable form of identification is sometimes referred to as a 'cookie'. The to [sic] preferred cookies for the invention are selectively allowed by the customer computer to be written into the customer computer in a form which allows the bank to positively identify the customer computer.

Indeed, the specification states that the computer identification field is also entirely generic. *Id.* at 19:67–20:2 ("A variety of customer computer identification techniques can be used as may ***now be known*** or using new technology hereafter developed.").

Nor does the claim's recitation that the computer identification information is "changeable" render the claim patent-eligible. "In cases involving authentication technology, patent eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer functionality itself." *USR*, 10 F.4th at 1346. The specification merely states that "the computer identification information may vary with time, so as to be unique at any particular point in time," and provides several generic methods of creating a time-varying code. '206 patent, 12:51–13:6, 36:51–55, 38:14–18. Time-varying codes have been a fundamental feature of cryptography and encryption. *Id.* at 63:69–70 ("***Current techniques*** using only encryption make the information available but difficult to decipher."). The claims are not directed to any new method of providing variable computer identification information, but rather only that the information ***can*** vary. *See Asghari*, 2016 WL 3670804, at *4 (holding the concept of generating a random, time-sensitive code "could easily be performed either by hand or, more simply, with technologies much older than computers" such as "using a set of dice containing both letters and numbers").

Furthermore, the use of location information is also an abstract idea. Courts have routinely invalidated patents under Section 101 that are directed to nothing more than taking a particular action, such as authenticating or verifying an individual, based on location data. *NantWorks, LLC v. Niantic, Inc.*, No. 20-CV-06262-LB, 2021 WL 24850, at *6 (N.D. Cal. Jan. 4, 2021) (holding claim directed

to the abstract idea of "reconciling transactions based on a user's location and generic computer technologies" ineligible); *Skillz Platform*, 2022 WL 783338, at *13–15 (collecting cases). *See also Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190, 1238 (D.N.M. 2016) (finding claims directed to the abstract idea of "authorizing handheld devices to receive streaming video based on a user's location" ineligible), *aff'd*, 697 F. App'x 701 (Fed. Cir. 2017); *Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789, 800 (D.N.J. Sept. 7, 2022) (holding "the concept of taking action in response to location-based information . . . is abstract and patent-ineligible"); *CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 847 (D. Del. 2020) (finding claims directed to the "basic steps of determining the configuration of a game based on the location of a mobile device" ineligible), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021). Indeed, the claims in *Smart Authentication* included limitations where a user-authentication service policy specifies "geographical constraints," yet nonetheless this Court found all claims directed to abstract ideas and patent-ineligible. *Smart Authentication*, 402 F. Supp. 3d at 846.

The remaining limitations of the claim are purely routine—the financial provider system authenticates a merchant computer, receives a payment request from it, a transaction identifier is generated, and assures payment from the customer to the merchant. None of these limitations remove the claim from the realm of the abstract—they are simply formulations of online shopping using an intermediary. For example, the specification does not even mention how the transaction identifier is generated "based on the first and second verification procedures" at all.

At bottom, the claims of the '206 Family present no improvement to computer functionality, and are merely directed to multi-factor authentication using location. Accordingly, Claims 1–15 of the '206 and '942 patents are directed to an abstract idea under Step 1 of *Alice*.

**3.  *Alice* step two: The claims of '206 Family lack an inventive concept.**

Because the claims of the '206 Family are directed to the abstract idea of multi-factor authentication using location in combination with the abstract idea of facilitating purchases using an intermediary, these claims are ineligible unless they contain an "inventive concept" that ensures the patent amounts to significantly more than a patent on the ineligible idea itself.

Like the claims of the '862 Family, representative claim 1 of the '206 patent merely recites

conventional components, such as a "computer device," "processor," and "GPS sensor." These are

generic computing terms that were well-known and that do not confer an inventive concept,

particularly by the earliest claimed priority date of September 25, 2000. "[T]he mere recitation of a

generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."

*Alice*, 573 U.S. at 223. *See also Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364,1374

(Fed. Cir. 2017) (finding claims teaching the use of a "processor," an "interface," "memory," and

"data," including "hash identifier[s]" to "merely requir[e] generic computer implementation"); *Intell.*

*Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) ("a database, user

profile . . .[,] and a communication medium, are all generic computer elements"). Like the claims of

the '862 Family, the '206 Family's claims use these generic components in conventional ways, and

do not solve a problem unique to the Internet or e-commerce. *See Intell. Ventures*, 792 F.3d at 1371.

The specification admits that the claims utilize only conventional components. For example,

the specification states that "location information can be generated by a global satellite positioning

device. Such global satellite positioning devices are ***commercially available in a wide range of forms***

and are often referred to as 'GPS' units." '206 patent, 10:43–46; *see also id.* at 8:22–24 ("All links

use ***conventional data communications vehicles*** or suitable future technology communications

vehicles."), 9:34–36 ("This customer-merchant communications linkage can function in many of the

***conventional ways now known*** . . ."), 40:58–60 ("The bank then utilizes ***conventional technology*** to

seek authorization to charge the potential customer's pre-existing charge account.").

And tellingly, the specification describes the invention as simply combining GPS location

information with other verification parameters to achieve an expected, commensurate increase in

security. '206 patent, 16:3–11 ("Another preferred form of the invention utilizes any available

customer or user locational information to further authenticate the ordering computer. The GPS or

other location information may be combined with telephone caller identification information . . . . This

may facilitate detection of fraudulent routing schemes ***which might otherwise misuse telephone caller***

***identification alone***."). There is nothing in the specification or the Complaint suggesting "that the

claimed combination of these conventional authentication techniques achieves more than the expected

sum of the security provided by each technique." *USR*, 10 F.4th at 1353. Like the claims analyzed in

*USR*, the claims of the '206 Family is simply a "combination of . . . long-standing conventional methods of authentication" that "yields expected results of an additive increase in security. *Id.*

Finally, like its allegations for the '862 Family, eCardless's Complaint includes only the bald legal conclusion that each of the patents of the '206 Family "claims patent-eligible subject matter." ECF No. 1, ¶¶ 40, 45. The Court should not give eCardless's unsupported legal conclusions any weight.

Accordingly, Claims 1–15 of the '206 and '942 patents do not add an "inventive concept."

## VI.    CONCLUSION

Because the Asserted Patents are directed to ineligible subject matter, the Court should grant PayPal's motion to dismiss with prejudice.

Dated: June 3, 2024

WINSTON & STRAWN LLP

By:   */s/ Robert N. Kang*

ROBERT N. KANG
(SBN: 274389)
rkang@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 34th Fl.
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

BARRY K. SHELTON
(SBN: 199307)
bshelton@winston.com
**WINSTON & STRAWN LLP**
2121 N. PEARL ST., STE. 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

NIMALKA R. WICKRAMASEKERA
(SBN: 268518)
nwickramasekera@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Ave., 38th Fl.
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

DEVIN P. GARRITY
(admitted *Pro Hac Vice*)

dgarrity@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10016
Telephone: (212) 294-1730
Facsimile: (212) 294-4700

*Attorneys for Defendant PayPal, Inc.*

PAYPAL'S MOTION TO DISMISS                                    CASE NO. 5:24-CV-1054-BLF

1

## **<u>CERTIFICATE OF SERVICE</u>**

2      I hereby certify that all counsel of record are being served with a copy of the foregoing

3   document via the Court's CM/ECF system on June 3, 2024.

4

5                              */s/ Robert N. Kang*
                             Robert N. Kang

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28