NIMALKA R. WICKRAMASEKERA (SBN: 268518)
nwickramasekera@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Ave., 38th Fl.
Los Angeles, CA 90071
Telephone:   (213) 615-1700
Facsimile:   (213) 615-1750

ROBERT N. KANG (SBN: 274389)
rkang@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 34th Fl.
San Francisco, CA 94111
Telephone:   (415) 591-1000
Facsimile:   (415) 591-1400

Attorneys for PayPal, Inc.

*(Additional counsel information omitted)*

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ECARDLESS BANCORP, LTD., | Case No. 24-cv-01054-BLF |
| Plaintiff, | **PAYPAL, INC.'S CLAIM CONSTRUCTION BRIEF** |
| v. | |
| PAYPAL, INC., | Judge:       Hon. Beth Labson Freeman |
| Defendant. | |

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3    I.    INTRODUCTION ................................................................................................. 1

4    II.   THE ASSERTED PATENTS ................................................................................. 2

5    III.  DISPUTED TERMS ............................................................................................. 3

6          A.   "transaction identifier" / "transaction identification" (All independent claims
               of the '862 and '863 patents) ................................................................... 3

7
          B.   "said … at least one order variable" ('863 patent, claim 9)........................ 11

8
          C.   "utilizing the positioning location from the [customer/merchant]
9              [computer/computer device] device [to verify/that verifies] that the
               [customer/merchant] [computer/computer device] is at an authorized
10             location" ('206 patent claim 1, 6, 11; and '942 patent, claims 1, 7, 13)..................... 15

11         D.   "communicating between the customer computer and the bank computer…
               including transaction identification" ('862 patent claim 9, '863 patent claim
12             9) ................................................................................................. 18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mutual Pharmaceutical Co., Inc.*,

5

384 F.3d 1333, 72 U.S.P.Q.2d 1726 (Fed. Cir. 2004) ............................................................10

6

*Baldwin Graphic v. Siebert*,

7

512 F.3d 1338 (Fed. Cir. 2008)..................................................................................11, 20

8

*Chef Am., Inc. v. Lamb-Weston, Inc.*,

358 F.3d 1371 (Fed. Cir. 2004)........................................................................................19

9

*Ekchian v. Home Depot, Inc.*,

10

104 F.3d 1299 (Fed. Cir. 1997)..........................................................................................4

11

*Halliburton Energy Servs., Inc. v. M-I LLC*,

514 F.3d 1244 (Fed. Cir. 2008)........................................................................................20

12

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,

13

933 F.3d 1345 (Fed. Cir. 2019)..........................................................................................4

14

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,

545 F.3d 1340, 1347 (Fed. Cir. 2008) ........................................................................12, 13

15

*Novo Indus., L.P. v. Micro Molds Corp.*,

16

350 F.3d 1348 (Fed. Cir. 2003)........................................................................................19

17

*Rheox, Inc. v. Entact, Inc.*,

276 F.3d 1319 (Fed. Cir. 2002)..........................................................................................4

18

*Route1 Inc. v. AirWatch LLC*,

19

829 F. App'x 957 (Fed. Cir. 2020)....................................................................................17

20

*Salazar v. AT&T Mobility LLC*,

64 F.4th 1311 (Fed. Cir. 2023) ........................................................................................11

21

*Seachange Int'l, Inc. v. C-COR, Inc.*,

22

413 F.3d 1361 (Fed. Cir. 2005)..........................................................................................4

23

*Sensor Elec. Tech., Inc. v. Bolb, Inc.*,

No. 18-CV-05194-LHK, 2019 WL 4645338 (N.D. Cal. Sept. 24, 2019)..............................20

24

*Sol IP, LLC v. AT&T Mobility LLC*,

25

Case No. 2:18-CV-00526, 2020 WL 60141 (E.D. Tex. Jan. 6, 2020)....................................19

26

*Summit 6, LLC, v. Samsung Electronics Co.*,

802 F.3d 1283 (Fed. Cir. 2015)........................................................................................11

27

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*,

28

849 F.3d 1349 (Fed. Cir. 2016)..........................................................................................6

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
No. C 10-03481 JW, 2012 WL 3763667 (N.D. Cal. Aug. 29, 2012), *aff'd,* 646 F.
App'x 929 (Fed. Cir. 2016) .......................................................................................................8

*Ultravision Techs., LLC v. Govision, LLC*,
No. 2022-1098, 2023 WL 2182285 (Fed. Cir. Feb. 23, 2023) ..........................................11, 17

*Wi-LAN USA, Inc. v. Apple Inc.*,
830 F.3d 1374 (Fed. Cir. 2016).............................................................................................17

**Statutes**

35 U.S.C. § 112................................................................................................................14, 19

1    **I.      INTRODUCTION**

2           This is a straightforward patent case involving four expired patents.  The parties disagree over

3    the construction of four terms.

4           For the "transaction identifier" or "transaction identification" terms, eCardless ignores the

5    claim language and the specification, which require the transaction identifier or identification to be

6    created or assigned by the customer, merchant, or both, ***but not the bank***.  And eCardless further

7    ignores its own clear and unmistakable disavowal of claim scope during prosecution of parent patent

8    applications, which excludes transaction identifiers created or assigned by the bank, rather than the

9    merchant or customer.  During prosecution, in order to distinguish the pending claims from the prior

10   art, eCardless unequivocally stated that the "transaction identifier is created by the customer, merchant

11   or both.  ***It is not created by the bank***."[1] eCardless should not be allowed to now recapture claim scope

12   it disavowed with its impermissibly broad construction.

13          For the term "said … at least one order variable" in claim 9 of the '863 patent, eCardless

14   contends that the "order variable" sent from the bank to the merchant need not be the same order

15   variable communicated from the customer to the bank.  But this reading contradicts the specification,

16   file history, and importantly, eCardless's agreement with respect to the nearly identical terms in the

17   other independent claims of the '862 Family.  PayPal's construction, on the other hand, is supported

18   by the specification and the prosecution history.

19          With respect to the "utilizing the positioning location [to verify/ that verifies] that the

20   [customer/merchant] [computer/computer device] is at an authorized location" term, PayPal's

21   construction, which requires a comparison of the positioning location to a stored location associated

22   with the [customer/merchant] is supported by the claim language, specification, and prosecution

23   history.

24          Finally, PayPal's construction for the term "communication between the customer computer

25   and the bank computer … including transaction identification" cures an obvious antecedent basis issue

26   in claim 9 of both the '862 and '863 patents. Should the Court reject PayPal's construction, the claims

27   _____

28   [1] All emphases in this Brief are added unless otherwise noted.

1  are indefinite because it is unclear to which "transaction identification" the later recited "said
2  transaction identification" refers.

3  **II.    THE ASSERTED PATENTS**

4      eCardless alleges both direct and indirect infringement of four patents, U.S. Patent Nos.
5  7,599,862 (the "'862 patent"), U.S. Patent No. 7,599,863 (the "'863 patent"), U.S. Patent No.
6  9,202,206 ("the '206 patent"), and U.S. Patent No. 9,785,942 ("the '942 patent") (collectively, the
7  "Patents-in-Suit" or "Asserted Patents") against PayPal. eCardless asserted claims 1–3, 9, 10–11, and
8  13–14 of each of the '862 and '863 patents; claims 1, 5–6, 10–11, and 15 of the '206 patent; and 1–2,
9  5–7, 9, 11, 13, and 15 of the '942 patent. The '862 and '863 patents ("'862 Family") share a common
10  specification, and the '206 and '942 patents ("'206 Family") share a common specification.   The
11  figures are identical between the two patent families, and the supporting disclosure is substantially
12  similar.

13      The Asserted Patents are directed to methods for conducting a purchase transaction over the
14  internet involving interactions among three parties: (i) a customer, (ii) a merchant, and (iii) a bank.
15  '862 patent, 5:39-42; '206 patent, 5:45-48; *see also* '862 patent, Abstract; '206 patent, Abstract. The
16  Asserted Patents' specifications contrast their methods from prior-art internet purchasing mechanisms
17  (*see* '862 patent, 6:45-7:30; '206 patent, 6:51-7:35) in which the customer computer does not directly
18  communicate with the bank computer, resulting in the transmission of "sensitive account information
19  between customer computer 10 and the merchant computer 20," "when the merchant computer sends"
20  this information "to the bank computer 30," and potentially "if account information is used in the bank
21  card company's response to the charge authorization request." '862 patent, 7:34-46; '206 patent, 7:38-
22  50.

23
24
25
26
27
28



The inventions of the Asserted Patents claim to solve this purported security problem based on the use of "discrete communication linkages" shown in Figure 3 above such that these linkages provide "[t]he separation of certain data processing functions and key information." '862 patent, 9:4-23; '206 patent, 9:8-27. The Asserted Patents describe using three communications linkages: a customer-merchant communications linkage between customer computer 10 and merchant computer 20, a customer-bank communications linkage between customer computer 10 and bank computer 30, and a merchant-bank communications linkage between merchant computer 20 and bank computer 30. '862 patent, 9:16-39; '206 patent, 9:20-42.

The Asserted Patents describe withholding certain information from transmissions over respective communication linkages such that information is selectively transmitted over these linkages. *See*, *e.g.*, '862 patent claim 1: with respect to the customer-merchant communications linkage ("steps being performed without communicating a customer account number or similar customer account identification"); the customer-bank communications linkage ("provide at least one customer order variable not provided to the merchant in said building a merchant order file"); the merchant-bank communications linkage ("providing … at least one order variable which is not included in the merchant order file").

## III.    DISPUTED TERMS

### A.    "transaction identifier" / "transaction identification" (All independent claims of the '862 and '863 patents)

| PayPal's Proposed Construction | eCardless's Proposed Construction |
|---|---|
| "an identifier that is created by the customer, | Plain and ordinary meaning; |

| merchant or both and used for completing a transaction" | no construction is required.

But if the Court requires construction, "non-fraud-enabling string of numbers and/or letters used to specifically or uniquely identify a transaction." |
|---|---|

The term "transaction identifier" or "transaction identification" appears in in all asserted independent claims of the '862 Family. The intrinsic record supports PayPal's construction, while eCardless's construction finds no support in the patent or file history.

### 1.   eCardless disclaimed "transaction identifiers" created by banks during prosecution

eCardless expressly limited the scope of this term during prosecution of the '862 Family.  The '863 patent is a continuation of the '862 patent, which itself is a continuation of U.S. Patent Application No. 09/669,335 ("'335 Application"), which issued as U.S. Patent No. 7,006,986.  During prosecution of the '335 Application, eCardless specifically disclaimed transaction identifiers that are created by the bank to distinguish the invention from the prior art, stating that the "transaction identifier" is created by either the ***"merchant or customer or both. It is not created by the bank."*** Kang Decl., Ex. A at 17.  The term should therefore be construed consistently with eCardless's statements to the Patent Office.  "Where an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372–73 (Fed. Cir. 2005) (citing *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) ("Explicit arguments made during prosecution to overcome prior art can lead to narrow claim interpretations . . . ."); *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection.").

1

2

Specifically, in response to a rejection by the examiner, eCardless cancelled all the claims and

submitted amended new claim 54 of the '335 Application.  Kang Decl., Ex. A at 4, 16.  Claim 54

3

4

contains a similar limitation at issue, "assigning a transaction identifier during said building a customer

order file and said building a merchant order file."  Indeed, this language is replicated verbatim in '863

5

6

patent, claim 1.  "Statements made during prosecution of a parent application are relevant to construing

terms in a patent resulting from a continuation application if such statements relate to the subject

7

8

matter of the claims being construed." *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d

9

1345, 1350 (Fed. Cir. 2019).

10

eCardless distinguished the prior art of record (U.S. Patent No. 5,883,810, to Franklin) by

11

12

arguing that in Franklin, the "transaction number is transmitted via the internet *from the issuing bank*

to the customer," who then conveys it to a merchant, a process eCardless argued is "subject to

13

14

interception and misuse *because it is further transmitted via the internet from the customer to the*

*merchant*."  Kang Decl., Ex. A at 12-13.  eCardless further explained that Franklin's transaction

15

16

number "is transmitted over the internet for possible interception *at two stages* and at unknown

17

transmission nodes therebetween":  first "from the *bank to the customer* and" second, "from the

18

19

*customer to the merchant* using the internet." *Id.* at 13.  eCardless contrasted the pending claims,

stating, "[i]n the Applicants' recited method the unusable transaction number … results from *the*

20

21

*customer/merchant exchange*." *Id.* at 14.

22

eCardless then contrasted Franklin with the transaction identifier of the Asserted Claims,

23

arguing:

24

25

26

27

28

1
2
3
4
5
6
7

> The method of claim 54 includes assigning a transaction identifier. However, this transaction identifier is created by the customer, merchant or both. It is not created by the bank with attendant credit rights which can be intercepted and used by a fraud artist. The transaction identifier is communicated to the bank with additional order information needed to complete the transaction.

8
9
10
11
12
13
14
15
16
17
18
19
20

*Id.* at 17.   eCardless also separately argued this point to the examiner during an applicant interview.  *See* Kang Decl., Ex. B at 3 ("The Attorney of Record argued that ***his invention*** assigns a transaction ID to a particular customer-merchant exchange.  Since the transaction ID is ***assigned by either the customer or merchant*** the ID is not ready to be charged because ***neither the customer nor merchant*** has the authority to authorize a charge.").  Thus, the interview summary is consistent with eCardless distinguishing Franklin's bank-created transaction identifier from its invention as a whole.  Because the asserted independent claims of the '862 and '863 patents contain nearly identical limitations, the term "transaction identifier" should be limited by the applicant's unambiguous disclaimer.  *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1358 (Fed. Cir. 2016) (finding disclaimer where statements made to overcome prior art "may not have been necessary," but were "clear and unmistakable.").

21
22
23
24
25
26
27

Further, the prosecution histories of the '862 Family confirm that eCardless's disavowal applies to the claims of the '862 Family.  In the Notice of Allowability of both the '862 and '863 patents, the examiner made clear that the bank ***receives*** the transaction identification, rather than ***generates*** it. *See* Kang Decl., Ex. C at 7 ("Franklin does not teach or suggest withholding an order variable from a merchant ***until a customer's bank computer <u>receives</u> a transaction identification*** and at least one order variable ***from the customer***.")**;** *see* Kang Decl., Ex. A at 17 ("The ***transaction***

28

*identifier is communicated **to the bank*** with additional order information needed to complete the transaction.").

## 2.   The claim language supports PayPal's construction

Consistent with eCardless's disavowal of claim scope during prosecution, the claim language supports PayPal's construction that the transaction identifier or transaction identification must be assigned or created by one of the customer computer, merchant computer, or both.

Claim 9 of the '862 patent recites the step of "communicating between a customer computer and a merchant computer," and then expressly requires "assigning a transaction identification ***during said communication step*** to identify said transaction." '862 patent, 51:54-62.  Similarly, claim 9 of the '863 patent recites the steps of "communicating between a customer computer used by a customer user and a merchant computer," "assembling order information associated with a customer order using the merchant computer and customer computer during said communicating step," and expressly recites the step of "assigning a transaction identification ***during said communicating or said assembling steps***." '863 patent, 51:57-52:2.  Because the claimed "communicating" and "assembling" steps do not involve the bank, the assignment of the transaction identifier must be performed by the customer computer, merchant computer, or both.

Similarly, claim 1 of the '863 patent recites "building a ***customer*** order file," "building a ***merchant*** order file."  The claim finally recites the step of "assigning a transaction identification ***during said building a customer order file and said building a merchant order file***." '863 patent, 50:42-60.  In its claim construction briefing before the Texas court, eCardless admitted that the customer order file and merchant order files are—as the terms suggest—built by the customer and merchant computers, respectively.  Pending claim 54 of the '335 Application also recited the identical steps of "building a customer order file," "building a merchant order file," and "assigning a transaction identifier ***during*** said building a customer order file and building a merchant order file." Kang Decl.,

7

Ex. A at 3-4.  eCardless argued that "the applicant's statements"—that the "transaction identifier is created by the customer, merchant, or both"—were simply acknowledging those *explicitly assigned actors* in the claim…" Dkt. 54 at 6-8; Dkt. 61 at 7.  eCardless thus concedes that claim 1 of the '863 patent likewise *requires* that the transaction identifier is created by the customer, merchant or both.

Finally, claim 1 of the '862 patent requires "authorizing by the customer computer to the bank computer… including *said transaction identifier*."  '862 patent, 51:1-6.  The claim further recites "communicating between the bank computer and the merchant computer with the bank computer providing said transaction identifier." *Id.* at 51:7-10.  Claim 1 does not recite any limitation where the customer computer *receives* the transaction identifier—only that it provides it to the bank, and that the bank provides it to the merchant.  This is entirely consistent with eCardless's disclaimer statement in prosecution of the '335 Application, where it stated that the "transaction identifier is created by the customer, merchant or both.  It is not created by the bank… [t]he transaction identifier *is communicated <u>to the bank</u>* with additional order information needed to complete the transaction." Kang Decl., Ex. A at 17.  Thus, the structure of claim 1 of the '862 patent supports PayPal's construction that the transaction identifier is created by the customer computer, rather than the bank.

The prosecution history also supports PayPal's construction.  The Notice of Allowability for the '862 patent states that claim 36 (which issued as claim 9) was allowable because the prior art did not disclose "communicating between a customer computer and a merchant computer … and assemble order information associated with a customer order using the merchant computer and customer computer *during said communicating step*, and "assigning a transaction identification *during said communication step*," and that the limitations of claim 28 (which issued as claim 1) "are similar to the limitations of claim 36," and were "therefore analyzed and allowed on the basis of the same rationale set forth for claim 36 above."  Kang Decl., Ex. C at 6-7.

The dependent claims of the '862 patent Family further support PayPal's construction. Those claims only provide three options as to which party assigns the transaction identifier/identification: (i) the customer (claims 7 and 18 of the '862 '863 patents), (ii) the merchant (claims 8 and 19 of the '862 and '863 patents), or (iii) both the customer and the merchant (claim 20 of the '862 and '863 patents). *See, e.g., U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-03481 JW, 2012 WL 3763667, at *4 (N.D. Cal. Aug. 29, 2012) (limiting the construction of "frame transmission task" to processes that occur "before the frame is completely transferred to the buffer memory," in part, because "the protocols and conditions disclosed in these dependent Claims are consistent with pre-transmission tasks performed on a frame."), *aff'd*, 646 F. App'x 929 (Fed. Cir. 2016). Tellingly, no dependent claim specifies that the bank assigns the transaction identifier/identification. Further, these dependent claims mirror those added in the amendment in the '335 Application where eCardless disclaimed transaction identifiers created by the bank. Pending claims 59-61 and 72-74 of the '335 Application, which were added simultaneously with the disclaimer, specified that either the customer computer, merchant computer, or both assigns the transaction identifier. Kang Decl., Ex. A at 6, 10.

### 3.    The specification supports PayPal's construction

The specifications of the '862 Family describe only two embodiments: one where the transaction identifier is created by the ***customer***, and one where the transaction identifier is created by the ***merchant***. For the first embodiment, the specifications state, "the order may be ***assembled by a customer*** with merely the ordered items specified, the identity of the merchant, ***and a transaction identification or control number***." '862 patent, 23:50-53. Additionally, in the examples "B" and "C" provided in the specification, "[t]he ***customer*** then builds the order file … the customer saves the order file with the merchant and maintains a record of the order file contents on the user's computer. The record of the order file includes merchant identification information, ***transaction identification***, and

an indication of the amount to be charged to the customer's account." '862 patent, 34:16-24, 35:34-42.

With respect to the transaction identifier generated by the **merchant** computer, the specification states: "[t]he merchant communicates with the bank and indicates that the customer has placed an order that includes a request that the bank is to be used to assure payment and/or make payment for the customer order.  The merchant can communicate relevant information to the bank indicating the **transaction control number**, customer identification, and amount of charges associated with the order."  '862 patent, 25:46-53, 27:66-28:1. *See also* '862 patent, 25:59-61 ("[t]he **merchant information supplied to the bank concerning the customer order includes transaction identification which is also provided to the customer computer**."), 4:12-25 ("For internet purchase transactions . . . a response is usually communicated by the merchant to the customer . . . the responses usually involve sending a confirmation that the order has been received and accepted. An invoice or other transaction control number is usually assigned.")

Critically, there is no disclosure in the specification of a "transaction identifier," "transaction identification," or "transaction control number" created, generated, or assigned by the **bank**.  Indeed, as discussed above, in each instance and example in the specification, information identifying a transaction is generated by either the customer or merchant.

Thus, the specification and the claims are consistent with eCardless's disavowal of claim scope in prosecution, and confirm that PayPal's construction of transaction identifier/identification is correct. *See Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co., Inc.,* 384 F.3d 1333, 1341, 72 U.S.P.Q.2d 1726 (Fed. Cir. 2004) (limiting "solubilizer" to "surfactants" where all embodiments and working examples of the specification used surfactants, and the prosecution history confirmed this construction.).  And even if the Court were not to find an unambiguous disclaimer in the prosecution history, the totality of the Applicant's statements made in the prosecution history, combined with the

10

claim language and specification which both show that the transaction identifier is created by the customer, merchant, or both, demonstrates that PayPal's proposed construction reflects the proper understanding of the term in the context of the intrinsic evidence. *See, e.g., Ultravision Techs., LLC v. Govision, LLC*, No. 2022-1098, 2023 WL 2182285, at *4 (Fed. Cir. Feb. 23, 2023) ("The prosecution history is relevant for more than an evaluation of disclaimer—it provides additional context for evaluating how the term would be understood and how it was used in the patent.").

eCardless's construction of "transaction identifier," a "non-fraud-enabling string of numbers and/or letters used to specifically or uniquely identify a transaction," on the other hand, ignores the claim language, specification, and its own statements before the Patent Office, and improperly broadens the term to encompass transaction identifiers assigned by the bank. The construction of the term "transaction identifier" or "transaction identification" should be construed to be an identifier that is created by the customer, merchant or both and used for completing a transaction.

### B.    "said … at least one order variable" ('863 patent, claim 9)

| PayPal's Proposed Construction | eCardless's Proposed Construction |
|---|---|
| "said … at least one order variable not previously known to the merchant computer" in limitation [F] derives its antecedent basis from "communicating between the customer computer and the bank computer via the internet including a transaction identification and at least one order variable" in limitation [E] | Plain and Ordinary meaning; no construction is required.<br><br>But if the Court requires construction for order variable, "field of information included in an order file." |

PayPal contends that the term "***said . . .*** at least one order variable" in limitation 9[F] of the '863 patent derives its antecedent basis from the term "at least one order variable" in limitation 9[E], and therefore refers to the same set of one or more order variables. *Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1315 (Fed. Cir. 2023) (citing *Summit 6, LLC, v. Samsung Elecs. Co.*, 802 F.3d 1283, 1343 (Fed. Cir. 2015)); *see also Baldwin Graphic v. Siebert,* 512 F.3d 1338, 1342 (Fed. Cir. 2008) ("The subsequent use of [the] definite article[] . . . 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning.")

Critically, eCardless **agreed** that such an antecedent basis exists in nearly identical limitations recited in the '862 patent, claims 1 and 9 and '863 patent claim 1. Dkt. 156. eCardless argues that, despite the fact that all the claims relate to the same purported invention described in the common specification of the '862 and '863 patents, a typographical difference between '863 patent claim 9 and the other independent claims of the '862 Family negates the clear antecedent basis. Specifically, the other independent claims of the '862 Family recite the term "said transaction [identifier/identification] and said at least one order variable," ('862 patent limitations 1[J], and 9[E] and '863 patent limitations 1[L]), whereas the limitation at issue in '863 patent, claim 9 recites "said transaction identifier and at least one order variable." For clarity, the relevant limitations of claim 9 of the '863 patent are reproduced below:

| '863 patent claim 9 |
|---|
| 9[E]: "communicating between the customer computer and the bank computer via the internet including a transaction identification and **at least one order variable**" |
| 9[F]: "communicating between the bank computer and the merchant computer; said communicating between the bank computer and the merchant computer including **said transaction identification and at least one order variable not previously known to the merchant computer**, to thereby allow the merchant to fulfill or reject the order" |

There is no reason to construe this limitation in claim 9 of the '863 patent differently from nearly identical claims in the other three independent claims of the '862 Family. **First,** the surrounding claim language strongly supports PayPal's construction. Limitation 9[E] requires a communication between a customer computer and a bank computer, "including a transaction identification **and** at least one order variable." The very next limitation requires a communication between the bank computer and the merchant computer, "including **said transaction identification and at least one order variable**." A plain reading of the claim suggests that the bank is sending the **same set** of information to the merchant that it received from the customer—the transaction identification **and** the at least one order variable. *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1347 (Fed. Cir. 2008)

("this court does not interpret claim terms in a vacuum, devoid of the context of the claim as a whole.") (internal citations omitted).

*Second*, the specification supports PayPal's construction. The specification describes the use of a "shipping or delivery address" as "a key piece of order information because without such information the internet merchant cannot provide the goods or service." '862 patent, 13:5-7. The patent explains that "the customer may during communication with the bank indicate the desired authorized delivery address." *Id.*, 13:24-27. The patent continues: "the delivery address can alternatively be supplied by the bank to the merchant. This may be done after the customer has selected during communication with the bank, the desired authorized delivery address from a set of available options and/or in a shorthand manner." *Id.*, 13:17-22. Importantly, the specification does not contain or describe any embodiments in which a customer sends the transaction identifier and missing order variables to the bank, and the bank sends the transaction identifier *and a different set of order variables* to the merchant. Rather, the specification consistently describes sending the same order variable from the customer to the bank, and from the bank to the merchant.  In addition, the specification repeatedly describes that the bank obtains ordering information from the customer that was communicated with the specific transaction.  '863 patent, 13:42-45 ("The bank, after successfully completing its validation *analysis of the purchase transaction*, sends assurance of payment to the merchant and directs that shipment must be to *an authorized delivery address* specified by the bank to the merchant."); 43:3-4 ("providing delivery address information to the merchant in connection with said order; information"); 29:33-39 ("It is also possible to send the authorization notice and assurance of payment to the merchant along with *key information* which has been verified. *This may be transaction purchase amount, confirmation of the goods or services, and/or delivery address information* which has been verified against authorized delivery addresses for the customer account involved."); 29:44-55 ("One key piece of *transaction information* which can be used in the bank

transaction authorization or assurance of payment ***is the delivery address***. The delivery address may be specified by the bank and shipment to any different address may result in refusal to pay or revocation of payment. The merchant is obligated in such forms of the invention to follow the bank instructions containing a delivery authorization address communicated by the bank to the merchant."); 43:3-4 ("providing delivery address information to the merchant in connection with said order."); 43:31 ("delivering the order information to the merchant."); 45:54-56 ("communicating from the bank to the merchant an authorized delivery address and assurance of payment information upon successful verification in said verifying steps."); 49:24-25 ("communicating the at least some of the order information from the bank to the merchant.").

***Third***, the file history supports PayPal's construction. In the Notice of Allowability for the '863 patent, the examiner explained that the prior art of record "does not teach or suggest withholding a an [sic] order variable from a merchant ***until*** a customer's bank computer receives a transaction identification and at least one order variable from the customer and ***releases said transaction identification and at least one order variable*** needed by the merchant to complete the purchase." Kang Decl., Ex. C at 4–8. The examiner explained that none of the prior art recited the claimed procedure: (1) withholding an order variable from the merchant; (2) receiving a transaction identifier and the withheld order variable from the customer at the bank; and (3) releasing the transaction identifier and the withheld order variable to the merchant. eCardless's position simply ignores the relationship between the order variable, which is "needed by the merchant to complete the purchase," but is "withheld" ***until*** received from the customer, at which point the bank "releases" it to the merchant. It makes little sense to "release" an order variable to the merchant if that order variable is not the one that is withheld and subsequently received.

***Fourth***, PayPal's construction is supported by eCardless's eligibility allegations in its first amended complaint (Dkt. 149). eCardless alleges that the claims of the '863 patent have novel and

inventive subject matter because the claims disclose a method where the financial institution "*withholds*" key *order* information to the merchant, *that it received from the customer*.

> "[The] Claims of the '863 Patent…disclose a novel and inventive method through which some of the **key order information** are communicated to the merchant **directly by the financial institution—but not the customer**. For example, the **customer provides the financial institution**—not the merchant—**with order information** needed by the merchant to proceed with merchant processing of the customer order. The financial institution **withholds this information** and **communicates it to the merchant** at an appropriate time determined by the financial institution.

Dkt. 149 ¶ 44. Notably, eCardless did not cabin its statements to only claim 1 of the '863 Patent. PayPal's construction, which requires the bank to communicate the same "at least one order variable," to the merchant which it received from the customer is consistent with the alleged point of novelty and inventiveness that eCardless relies on in its eligibility allegations.

*Finally*, eCardless's overemphasis on the grammatical difference between "said transaction identifier and **said** at least one order variable" as recited in every other independent claim of the '862 Family, and "said transaction identifier and at least one order variable" as recited in claim 9 of the '863 patent, creates Section 112 written description and enablement issues.  As discussed above, the specification is devoid of any examples or embodiments where the customer sends the bank a transaction identifier and one withheld order variable, and the bank sends the merchant the transaction identifier and a *different* withheld order variable needed by the merchant to complete the transaction. '863 patent, 13:42-45; 29:33-39; 29:44-55; 43:3-4; 45:54-56; 49:24-25.

**C.**    *"utilizing the positioning location from the [customer/merchant] [computer/computer device] device [to verify/that verifies] that the [customer/merchant] [computer/computer device] is at an authorized location"* **('206 patent claim 1, 6, 11; and '942 patent, claims 1, 7, 13)**

| PayPal's Proposed Construction | eCardless's Proposed Construction |
|---|---|
| "comparing the positioning location to a stored location associated with the [customer/merchant]" | eCardless contends PayPal is not permitted to present this term for construction, and refuses to provide a construction. |

The term "utilizing the positioning location from the [customer/merchant] [computer/computer device] device [to verify/that verifies] that the [customer/merchant] [computer/computer device] is at an authorized location" appears in all independent claims in the '206 Family.  PayPal's construction, "comparing the positioning location to a stored location associated with the [customer/merchant]" is consistent with the claim language and specification.

The independent claims of the '206 Family require accessing "***a positioning location*** indicative of ***a physical location*** of the [customer/merchant] [computer/computer device] device for the purpose of conducting the payment transaction," and then "utilizing" this "***positioning location***" [to ***verify*** / that ***verifies***] that the [customer/merchant] [computer / computer device] is ***at an authorized location***.  '206 patent, 66:14-24, 67:7-17, 68:13-22; '942 patent, 67:30-39, 68:33-36, 68:45-49, 69:30-34, 70:9-11.  The claims thus require verifying that a first location (a positioning location of the customer/merchant computer) is an "authorized location."

The specification makes it clear that the verification is performed by comparing the positioning location to a stored location (an authorized location) associated with the customer or merchant.   The specification exclusively and consistently describes comparing or matching GPS locational information of a customer or merchant computer with other "physical location information" associated with the customer or merchant, such as the customer/merchant's physical mailing address, to verify that the customer or merchant computer is at an authorized location.  '206 patent, 11:7-16 ("The bank-originated account information may include address or physical location information which may be used ***in comparison*** to any GPS locational information provided by the customer user or customer computer."); 32:7-19 ("It is further possible to utilize the locational identification information from a GPS unit to additionally analyze the apparent validity of a transaction. This can be done by ***comparing the indicated user or computer GPS or other location information against the shipping address***…. The location information may also be used merely to verify that the ordering user or computer is located at a ***customer authorized location***."); 36:41-44 ("The bank performs the desired identification inquiry ***by comparing*** the user's personal identification code to the customer account information for this field."); 42:7-12 ("verifying said ordering computer identification information from the ordering computer by ***comparing*** said ordering computer identification information to said customer computer

1   identification information kept by the bank to assure it is an authorized customer computer."); 43:15-

2   18 (same); 47:1-4 (same); 49:45-49 (same); 53:33-36 (same); 55:24-27 (same); 55:46-49 (same); 56:7-

3   9; 53:14-19 ("***Verifying*** said ordering computer global positioning satellite location information from

4   the ordering computer by ***comparing*** said ordering computer global positioning satellite location

5   information to said customer computer global positioning satellite information kept by the bank to

6   assure it is an authorized customer computer location.").  The specification's exclusive and consistent

7   description of performing location verification by comparing the GPS positional location to other

8   stored location information (such as a mailing address) associated with the customer or merchant

9   confirms PayPal's construction.  *See, e.g., Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1382-84

10  (Fed. Cir. 2016) ("The specification's consistent descriptions of multiple specified connections,

11  however, suggest that the patent's claims do not encompass an embodiment contrary to these

12  descriptions."); *Route1 Inc. v. AirWatch LLC*, 829 F. App'x 957, 961–62 (Fed. Cir. 2020) (ruling that

13  specification limited the meaning of a claim term even though "'the specification does not contain an

14  explicit statement disclaiming' remote-initiated connections, 'this is not an instance where the

15  specification would necessarily have to disavow an embodiment that would otherwise be covered by

16  the plain language of the claim[ ].' Rather, the plain terms of the instruction limitation are 'entirely

17  consistent with and even support the specification's exclusive depiction' of host-initiated

18  connections.").

19       In addition, PayPal's construction of this term is supported by the prosecution history.  "Even

20  if there were any lingering doubt, such doubt is put to rest by the prosecution history."  *Route1*, 829

21  F. App'x at 962.  During prosecution, eCardless distinguished the claims over the closest prior art

22  (U.S. Patent No. 6,377,810 to Geiger) on the basis that "Geiger does not determine that a user/device

23  is in an authorized location ***for comparison purposes***."  Kang Decl., Ex. D at 13.  eCardless further

24  explained:

25       In contrast to Geiger, <u>the recited claims of the present application</u> use positional
26       information to perform a verification procedure in order to determine whether a
         device is at an authorized location. Specifically, the claims provide a method to
27       authorize a transaction - by associating a device used in a transaction with a

28

1

2

financial account and ***comparing the actual device location with an authorized
location*** associated with a financial account.

3

*Id.* at 13-14 (underlined text in original).  The examiner was persuaded, and withdrew the rejection

4

based on Geiger in a June 19, 2014 Office Action.  *See Ultravision Techs,* 2023 WL 2182285, at *4.

5

Furthermore, eCardless made clear that the disputed terms are equivalent to the limitations of

6

the previously as-filed claims of the '206 patent: "comparing… the global positioning location from

7

the computer device to a location identified independently of the global positioning location," and

8

"determining… if the global positioning location matches the independently identified location." Kang

9

Decl., Ex. D at 2-7, 9.

10

Accordingly, both the specification and the prosecution history support PayPal's proposed

construction.

11

12

D.    **"communicating between the customer computer and the bank computer…
      including transaction identification" ('862 patent claim 9, '863 patent claim 9)**

13

| PayPal's Proposed Construction | eCardless's Proposed Construction |
|---|---|
| "communicating between the customer computer and the bank computer… including said transaction identification" Alternatively, indefinite. | eCardless contends PayPal is not permitted to present this term for construction, and refuses to provide a construction. |

14

15

16

17

18

The term "communicating between the customer computer and the bank computer… including

19

transaction identification" appears in both claim 9 of the '862 patent and claim 9 of the '863 patent.

20

PayPal's proposed construction resolves an antecedent basis issue created by this term that is

21

consistent with the specification of the '862 Family. However, eCardless refused to agree to this

22

proposed construction.  To the extent that PayPal's construction is rejected, the disputed term creates

23

an antecedent basis issue that renders both claim 9 of the '862 patent and claim 9 of the '863 patent

24

indefinite.

25

As shown below in claim 9 of the 862 patent, "a transaction identification" is first assigned in

26

the third limitation ("assigning a transaction identification during said communicating step" between

27

the customer computer and the merchant computer (step 9[B], shown in <span style="color:red">**red**</span>).  Claim 9 next recites the

28

step of "communicating between the customer and bank…including transaction identification," (step

18

9[D], shown in *blue*), and finally, the claim requires a step of communicating between the bank and merchant "including said transaction identification," (step 9[E], shown in *green*).

> 9. A method for transferring funds in connection with purchasing by a customer using o [*sic*] merchant having an internet site at which the merchant offers goods and/or services; and wherein a bank computer authorizes the purchase in association with a customer account and assures payment to the merchant, comprising:
>
> communicating between a customer computer and o [*sic*] merchant computer via the internet and assemble [*sic*] order information associated with a customer order using the merchant computer and customer computer during said communicating step;
>
> 9[B]: *assigning a transaction identification during said communicating step* to identify said transaction, said transaction identification not being useful for making other transactions against the customer account;
>
> 9[C]: conducting an identification inquiry between the bank computer and customer computer via the internet to verify the authority of the customer user for using said customer account;
>
> 9[D]: *communicating between the customer computer and the bank computer* via the internet *including transaction identification* and at least one order variable;
>
> 9[E]: *communicating between the bank computer and the merchant computer*; *said* communicating between the bank computer and the merchant computer including *said transaction identification* and said at least one order variable not previously known to the merchant computer to proceed with merchant processing of the customer order;
>
> paying the merchant using the bank.

It is unclear from which "transaction identification" the term "*said transaction identification*" in step 9[E] derives its antecedent basis.  There are two options— (1)  "*a transaction identification*" assigned in step 9[B]; or (2) "*transaction identification*" in step 9[D].

To resolve this ambiguity, PayPal proposes the term "communicating between the customer computer and the bank computer … including transaction identification" (in blue above) should be construed as "communicating between the customer computer and the bank computer… including *said* transaction identification."   A Court may correct an error in a patent claim "only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Sol IP, LLC v. AT&T Mobility LLC*, Case No. 2:18-CV-00526, 2020 WL 60141, at *10 (E.D. Tex. Jan. 6, 2020) (quoting *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003)); *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("[C]ourts may not redraft

1  claims, whether to make them operable or to sustain their validity."). Here, the specification does not

2  describe the existence of **two** separate transaction identifiers (or transaction identifications) for a single

3  transaction. Instead, as described in *supra* III.A, the specification exclusively describes the customer

4  or merchant creating the transaction identifier/identification, and communicating the transaction

5  identifier/identification to the merchant. Thus, PayPal's proposed construction is consistent with the

6  specification because it requires the transaction identification assigned by the customer and/or

7  merchant to be the same transaction identification which is communicated between the customer

8  computer and the bank computer.

9      eCardless, however, refused to agree to this construction, and therefore rejects it. PayPal

10  offered this construction to eCardless as an agreed-upon construction. Kang Decl., Ex. E at 2-4.

11  eCardless refused to agree, and offers no alternative construction to cure the clear antecedent basis

12  issue with the term "said transaction identification." Should the Court reject PayPal's construction, it

13  is indefinite under 35 U.S.C. § 112.

14      A claim is "indefinite if a [claim] term does not have proper antecedent basis." *Halliburton*

15  *Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). A claim limitation lacks

16  antecedent basis "where it would be unclear as to what element the limitation was making reference."

17  *Sensor Elec. Tech., Inc. v. Bolb, Inc.*, No. 18-CV-05194-LHK, 2019 WL 4645338, at *31 (N.D. Cal.

18  Sept. 24, 2019) (internal citations omitted). "For instance, 'if two different levers are recited earlier

19  in [a] claim, the recitation of 'said lever' in the same or subsequent claim would be unclear where it

20  is uncertain which of the two levers was intended.'" *Id.* (citing *Baldwin Graphic Sys., Inc. v. Siebert,*

21  *Inc.*, 512 F.3d 1338, 1343 (Fed. Cir. 2008)). Here, because it is unclear to which of two possible

22  "transaction identifications" that "*said transaction identification*" refers, the term lacks a proper

23  antecedent basis and renders claim 9 of the '862 patent and claim 9 of the '863 patent indefinite.

24

25  Dated: July 5, 2024            WINSTON & STRAWN LLP

26                         By:  */s/ Robert N. Kang*

27                         ROBERT N. KANG
                       (SBN: 274389)

28                         rkang@winston.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WINSTON & STRAWN LLP**
101 California Street, 34th Fl.
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

BARRY K. SHELTON
(SBN: 199307)
bshelton@winston.com
**WINSTON & STRAWN LLP**
2121 N. PEARL ST., STE. 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

NIMALKA R. WICKRAMASEKERA
(SBN: 268518)
nwickramasekera@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Ave., 38th Fl.
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

DEVIN P. GARRITY
(admitted *pro hac vice*)
dgarrity@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10016
Telephone: (212) 294-1730
Facsimile: (212) 294-4700

*Attorneys for Defendant PayPal, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on July 5, 2024.

*/s/ Robert N. Kang*
Robert N. Kang