NIMALKA R. WICKRAMASEKERA (SBN: 268518)
nwickramasekera@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Ave., 38th Fl.
Los Angeles, CA 90071
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

ROBERT N. KANG (SBN: 274389)
rkang@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 34th Fl.
San Francisco, CA 94111
Telephone:   (415) 591-1000
Facsimile:    (415) 591-1400

Attorneys for PayPal, Inc.

*(Additional counsel information omitted)*

### IN THE UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ECARDLESS BANCORP, LTD., | Case No. 24-cv-01054-BLF |
| Plaintiff, | **PAYPAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER RULE 12(b)(6)** |
| v. | |
| PAYPAL, INC., | Date:          October 10, 2024 |
| Defendant. | Time:          9:00 AM |
| | Courtroom:   3 |
| | Judge:         Hon. Beth Labson Freeman |

1

## **TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ............................................................................................... 1

4    II.    STATEMENT OF ISSUES TO BE DECIDED ................................................ 2

5    III.    STATEMENT OF FACTS ................................................................................. 2

6        A.    Procedural History .............................................................................. 2

7        B.    The '862 and '863 patents ................................................................. 3

8        C.    The '206 and '942 patents ................................................................. 4

9    IV.    APPLICABLE LAW ......................................................................................... 5

10        A.    Rule 12(b)(6) ....................................................................................... 5

11        B.    Subject Matter Eligibility under 35 U.S.C. § 101 ............................. 6

12    V.    ARGUMENT ...................................................................................................... 7

13        A.    The claims of the '862 Family are patent-ineligible. ......................... 7

14            1.    Representative Claims ............................................................. 7

15            2.    *Alice* step one: The claims of the '862 Family are directed to
                    facilitating purchases using an intermediary ......................... 9

16

17            3.    *Alice* step two: The claims of the '862 Family lack an inventive
                    concept. ................................................................................. 16

18        B.    The claims of the '206 Family are patent-ineligible. ....................... 19

19            1.    Claim 1 of the '206 patent is representative ........................ 19

20            2.    *Alice* step one: The claims of the '206 Family are directed to the
                    abstract idea of multi-factor authentication using location
21                    information in combination with the abstract idea of the '862
                    Family. ................................................................................... 21
22

23            3.    *Alice* step two: The claims of '206 Family lack an inventive
                    concept. ................................................................................. 24

24    VI.    CONCLUSION................................................................................................. 25

25

26

27

28

1
2

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

3

**Cases**

4    *Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
      838 F.3d 1253 (Fed. Cir. 2016 ...................................................................................9, 19

5    *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
6      573 U.S. 208 (2014)................................................................................... *passim*

7    *Asghari-Kamrani v. United Servs. Auto. Ass'n*,
      No. 2:15-cv-478, 2016 WL 3670804 (E.D. Va. July 5, 2016)..............................................*passim*
8

9    *Ashcroft v. Iqbal*,
      556 U.S. 662 (2009)................................................................................5, 6, 18

10
     *Bell Atl. Corp. v. Twombly*,
11     550 U.S. 544 (2007)................................................................................................6

12   *Beteiro, LLC v. BetMGM, LLC*,
      626 F. Supp. 3d 789 (D.N.J. Sept. 7, 2022) ...............................................................23
13

14   *Boom! Payments, Inc. v. Stripe, Inc.*,
      839 F. App'x 528 (Fed. Cir. 2021) ................................................................ *passim*

15   *BSG Tech LLC v. Buyseasons, Inc.*,
16     899 F.3d 1281 (Fed. Cir. 2018)................................................................................7

17   *buySAFE, Inc. v. Google, Inc.*,
      765 F.3d 1350 (Fed. Cir. 2014)..............................................................................10
18

19   *CG Tech. Dev., LLC v. FanDuel, Inc.*,
      442 F. Supp. 3d 840 (D. Del. 2020), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021) ...........................23

20
     *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
21     776 F.3d 1343 (Fed. Cir. 2014)...........................................................................8, 16

22   *Customedia Techs., LLC v. Dish Network Corp.*,
      951 F.3d 1359 (Fed. Cir. 2020)..............................................................................9
23

24   *Dropbox, Inc. v. Synchronoss Techs., Inc.*,
      371 F. Supp. 3d 668 (N.D. Cal. 2019), *aff'd*, 815 F. App'x 529 (Fed. Cir. June 19, 2020)......8, 20

25
26   *Elec. Power Grp., LLC v. Alstom S.A.*,
      830 F.3d 1350 (Fed. Cir. 2016)..............................................................................9

27   *Esignature Software, LLC v. Adobe Inc.*,
      No. 2023-1711, 2024 WL 3289488 (Fed. Cir. July 3, 2024)...........................................18
28

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
   204 F. Supp. 3d 1190 (D.N.M. 2016), *aff'd*, 697 F. App'x 701 (Fed. Cir. 2017) ........................23

*Innovation Scis., LLC v. Amazon.com, Inc.*,
   778 F. App'x 859 (Fed. Cir. 2019) ...............................................................................10, 13, 14

*Integrated Tech. Sys. v. First Internet Bank of Ind.*,
   No. 2:16-CV-00417-JRG, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017) ...............................10, 11

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)...........................................................................................24

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017).........................................................................8, 10, 14, 15

*In re Killian*,
   45 F.4th 1373 (Fed. Cir. 2022) ...............................................................................................6

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
   566 U.S. 66 (2012 ..................................................................................................................16

*MyMail, Ltd. v. ooVoo, LLC*,
   No. 2020-1825, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021) ......................................18

*NantWorks, LLC v. Niantic, Inc.*,
   No. 20-CV-06262-LB, 2021 WL 24850 (N.D. Cal. Jan. 4, 2021) ........................................23, 25

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
   855 F.3d 1322 (Fed. Cir. 2017), *cert. denied*, 583 U.S. 1056, 138 S. Ct. 672 (2018)..................19

*Samsung Elecs. Co. Ltd. v. Blaze Mobile, Inc.*,
   673 F. Supp. 3d 1066 (N.D. Cal. May 16, 2023)........................................................................15

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)...............................................................................................7

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017)...............................................................................6, 7, 17

*Skillz Platform, Inc. v. Aviagames Inc.*,
   No. 21-cv-02436, 2022 WL 783338 (N.D. Cal. Mar. 14, 2022) ......................................17, 23

*Smart Authentication IP, LLC v. Elec. Arts, Inc.*,
   402 F. Supp. 3d 842 (N.D. Cal. Sept. 11, 2019).................................................................12, 14, 23

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
   873 F.3d 1364 (Fed. Cir. 2017...............................................................................................24

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...............................................................................................6

1
2
*Strikeforce Techs., Inc. v. SecureAuth Corp.*,
    No. CV-17-04314, 2017 WL 8808122 (C.D. Cal. Dec. 1, 2017) ...................................13

3
*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)...................................................................................18

4
5
*Telesign Corp. v. Twilio, Inc.*,
    No. 18-cv-03279-VC, 2018 WL 10638619, ECF No. 219, slip op. (N.D. Cal. Oct. 19, 2018) ....12

6
7
*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1378 (Fed. Cir. 2019).....................................................................................6

8
*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)...................................................................................18

9
10
*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ........................................................... *passim*

11
*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) ...................................................................................18

12
13
**Statutes**

14
35 U.S.C. § 101..................................................................................... *passim*

15
**Other Authorities**

16
Fed. R. Civ. P. 12(b)(6)...................................................................................1, 5, 6, 7

17
18
19
20
21
22
23
24
25
26
27
28

1

**NOTICE OF MOTION AND MOTION**

2          **PLEASE TAKE NOTICE** that on October 10, 2024 at 9:00 AM, or as soon as this matter

3 may be heard before the Honorable Judge Beth Labson Freeman, of the above-entitled Court located

4 at 280 South 1st Street, San Jose, California 95113, Defendant PayPal, Inc. ("PayPal" or "Defendant")

5 respectfully moves the Court to grant PayPal's Motion to Dismiss Plaintiff's Amended Complaint

6 pursuant to Fed. R. Civ. P. 12(b)(6) that the Asserted Patents, U.S. Patent Nos. 7,599,862 (the "'862

7 patent"); 7,599,863 (the "'863 patent"); 9,202,206 (the "'206 patent"); and 9,785,942 (the "'942

8 patent") are ineligible for patenting under 35 U.S.C. § 101.

9          The Amended Complaint should be dismissed with prejudice, and all claims of the Asserted

10 Patents held unenforceable, because every claim of the Asserted Patents recites subject matter that is

11 ineligible for patent protection under 35 U.S.C. § 101. PayPal's motion is based on this notice of

12 motion and motion, the memorandum of points and authorities below, the declaration of R. Kang

13 ("Kang Decl.") and its exhibits, the pleadings and papers on file, and any materials and argument

14 presented to the Court at the time of the hearing.

15

**MEMORANDUM OF POINTS AND AUTHORITIES**

16 **I.      INTRODUCTION**

17          Buyers and sellers have used intermediaries to facilitate purchases for centuries.  Anyone who

18 has purchased a home, or paid for a purchase using a wire transfer, has used a third-party intermediary

19 to facilitate a transaction.  The process has been fundamentally the same for generations:  first, the

20 buyer informs the seller that he or she wishes to purchase a product.  Ostensibly, the buyer does this

21 without providing his or her bank account and routing numbers to the seller.  The buyer then

22 communicates with the intermediary—be it an escrow agent or bank—and authenticates him or herself

23 with the intermediary.  The buyer then authorizes the purchase with the intermediary, and the

24 intermediary assures payment to the seller.

25          The Asserted Patents of Plaintiff eCardless Bancorp, Ltd. ("eCardless") recite nothing more

26 than using generic computing technology in a conventional manner to carry out this exact procedure

27 over the internet in order to reduce fraud by limiting the transmission of sensitive information from

28 buyer to seller.  But the Supreme Court and Federal Circuit have consistently held that facilitating

financial transactions through the use of a third-party intermediary—whether "to mitigate settlement risk," as in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 219-20 (2014), or to "mitigate information security risks," as in *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1350 (Fed. Cir. 2021) ("*USR*")—is an abstract idea.  The claims of the '862 and '863 patents are directed to the abstract idea of facilitating purchases using an intermediary, and implementing this abstract idea using wholly conventional and generic computing technology.

The claims of the '206 and '942 patents simply layer multi-factor authentication using location onto this age-old financial transaction. These lengthy claims are directed to a combination of three ideas, each of which the Federal Circuit has held are abstract:  multi-factor authentication, location-based authentication, and facilitating a purchase using a third-party intermediary.  Moreover, the asserted claims implement these abstract ideas by "simply recit[ing] conventional actions in a generic way": performing a first verification procedure in a conventional manner based on known parameters, such as PINs and browser cookies, and performing a second verification procedure based on location information from a GPS receiver in a device.  *USR*, 10 F.4th at 1354 (holding "multi-factor authentication of a user's identity using two devices to enable a transaction" is an abstract idea).  The asserted claims contain nothing to move them beyond the abstract.  Consequently, the Asserted Patents are ineligible under *Alice,* and PayPal respectfully requests the Court grant its motion to dismiss.

## II.   STATEMENT OF ISSUES TO BE DECIDED

Whether the claims of the Asserted Patents are invalid for failure to recite patent-eligible subject matter under 35 U.S.C. § 101, where (1) the Asserted Patents are directed to the abstract ideas of (i) facilitating purchases using an intermediary, and (ii) the combination of multi-factor authentication using location and facilitating purchases using an intermediary; and (2) the Asserted Claims' elements are conventional, generic, and well understood, and thus lack an inventive concept.

## III.   STATEMENT OF FACTS

### A.   Procedural History

eCardless brought this action against PayPal in the Western District of Texas, alleging infringement of the Asserted Patents. ECF No. 1. The Texas Court granted PayPal's transfer motion and transferred this case to this Court on February 22, 2024. ECF No. 86.

**B.     The '862 and '863 patents**

The '862 and '863 patents, respectively titled "Transferring Funds in Connection with Internet Orders Using Order Variables from Two Sources and Authentication," and "Order File Processing Using Order Variables from Two Sources and Authentication," were both filed January 3, 2006, as continuation applications of U.S. Pat. App. No. 09/669,335, which issued as U.S. Patent No. 7,006,986 (the "'986 patent"). Both the '862 and '863 patents expired on November 8, 2021.

The '862 and '863 patents (collectively, the "'862 Family") share a common specification and are directed to a method of performing a transaction with "three discrete communications linkages which define communications routes between the three key parties—the customer computer 10, merchant computer 20 and the bank computer 30." ECF No. 1-2 ("'862 patent") at 8:57–61.

The '862 patent states that, in prior art Internet purchasing, the customer computer does not directly communicate with the bank computer, but instead sends payment information to the merchant, and in turn the merchant sends the same payment information to the bank. *See* '862 patent at 6:45–7:30, Figs. 1–2. According to the specification, in the prior art, "sensitive business information is communicated at least twice:" once when "transmitting sensitive account information between the customer computer and merchant computer," and again "when the merchant computer sends an authorization request to the bank computer 30." *Id.* at 7:34–49. The specification contends that "there is significant opportunity for interception" of customer account information in each of these communications, and therefore fraud. *Id.* at 6:49–57 (Fig. 2, Step 43), 7:8–14 (Fig. 2, Step 51).

The specification purports that in the claimed invention—in contrast to prior-art Internet purchasing—"no account number, account address, or other sensitive information" is transmitted from the customer to the merchant, or the merchant to the bank. *Id.* at 30:48–50. Rather, the customer pre-registers his or her account information with the bank, "preferably with at least some of the information being communicated via one or more communications vehicles which are not over the internet," such as "via telephone." '862 patent, 10:54–11:12, 10:1–4, 19:4–20:3, Fig. 6, 32:13–18. The "bank computer 30 stores or otherwise controls access to customer account information." *Id.* at 8:25–28.

During a transaction, the customer builds and transmits an order file to the merchant by placing an order (Fig. 4, steps 110, 120, and 130). Then, the customer contacts the bank (step 140) and

authenticates his or her identity to validate the transaction (step 150). The customer authenticates with the bank via a "second data communications linkage . . . between the customer computer 10 and bank computer 30" of the claimed invention (Figure 3, annotated in yellow below). '862 patent, 9:34–37, 19:4–20:13. The patent states that Figure 3, depicting the three discrete communications linkages, "illustrates a significant difference" from the prior art. *Id.* at 8:35–38.



After customer authentication and approval of the purchase, the bank contacts the merchant and assures payment (step 180). *Id.* at 30:35–31:17. "The bank may provide delivery or shipping instructions . . . when the bank is assuring the merchant of payment." *Id.* at 31:9–12; *see also* Fig. 3 above (annotated in blue).

The patents purport that "separation of . . . key information to one of the three or more communications linkages . . . provides increased security against surreptitious interception or collection of internet communicated files that have all the information needed to effectuate a purchase transaction according to prior art techniques." *Id.* at 9:16–22.

**C.    The '206 and '942 patents**

The '206 patent, entitled "Secure financial transaction processing using location information" was filed May 26, 2009. The '942 patent, titled "Methods for performing internet processes using

1    global positioning and other means" was filed December 1, 2015 as a continuation of the '206 patent.

2    Both the '206 and '942 patents expired on September 25, 2020.

3         The '206 and '942 patents (collectively, the "'206 Family") share a specification and are also

4    directed to methods for purchasing of goods or services over the internet involving interactions among

5    a "customer computer 10," "merchant computer 20," and the "bank computer 30." ECF No. 1-4 ('206

6    patent) at 9:37–42, 9:57–61. The specifications of the '206 and '862 Families substantially overlap.

7         The claims of the '206 Family are directed to the same method of facilitating a purchase using

8    an intermediary as the '862 Family claims, with additional limitations for authenticating a device based

9    on two verification procedures.  In the first verification procedure, the bank computer verifies a device

10   by assessing "changeable authentication or changeable verification parameters" (*e.g.*, a "user personal

11   information number" or "user identification code") and "computer identification information" or

12   "code" (*e.g.*, a cookie).  *See* '206 patent at 16:17–21 ("The user identification code may be selected

13   by the bank, or the code may reflect the user's choice"), 19:21–25 ("One suitable form of identification

14   is sometimes referred to as a 'cookie'.  The to [sic] preferred cookies for the invention are selectively

15   allowed by the customer computer to be written to the customer computer in a form which allows the

16   bank to positively identify the customer computer.").

17        In the second verification procedure, the bank computer utilizes a "positioning location" that

18   "includes position data obtained from a GPS sensor of the" customer or merchant's "computer device."

19   '206 patent, Claim 1. "The bank may also maintain customer account information which indicates the

20   location or locations which are authorized locations from which orders may be placed."  '206 patent,

21   15:22–24.  These authorized locations are compared against the location of a user or merchant device

22   based on its GPS sensor.  *Id.* at 32:7–19 ("It is further possible to utilize the locational identification

23   information from a GPS unit to additionally analyze the apparent validity of a transaction.  This can

24   be done by comparing the indicated user or computer GPS . . . against the shipping address.").

25   **IV.     APPLICABLE LAW**

26       **A.     Rule 12(b)(6)**

27        A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to

28   'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

1   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Although a complaint attacked through a Rule
2   12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels
3   and conclusions." *Twombly*, 550 U.S. at 555.

4       To state a plausible claim for relief, the complaint "must contain sufficient allegations of
5   underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).
6   "Factual allegations must be enough to raise a right to relief above the speculative level on the
7   assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*,
8   550 U.S. at 555 (citations omitted). To survive a motion to dismiss, a complaint "must contain
9   sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which
10  means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable
11  inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

12      **B.    Subject Matter Eligibility under 35 U.S.C. § 101**

13      "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at
14  216.  In *Alice*, the Supreme Court set forth a two-step test for determining whether a claim is directed
15  to ineligible subject matter.

16      ***Alice* step one.** The first step is to "determine whether the claims at issue are directed to one
17  of those patent-ineligible concepts," *e.g.*, an abstract idea. *Id.* at 217. A Section 101 inquiry, including
18  at step one, is a question of law which may be decided based on only the "intrinsic evidence from the
19  specification without need for 'extraneous fact finding outside the record.'" *Secured Mail Sols., LLC
20  v. Universal Wilde, Inc.*, 873 F.3d 905, 912–13 (Fed. Cir. 2017).

21      "Under this inquiry, [courts] evaluate the focus of the claimed advance over the prior art to
22  determine if the character of the claim as a whole, considered in light of the specification, is directed
23  to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir.
24  2019) (quotation omitted). The step one analysis typically begins with an "[e]xamination of earlier
25  cases" . . . "arising under § 101 through comparison to [] prior opinions." *In re Killian*, 45 F.4th 1373,
26  1383 (Fed. Cir. 2022) (citing *Alice*, 573 U.S. at 221).

27      ***Alice* step two.** If a claim is directed to ineligible subject matter, the second step is to
28  "determine whether [any] additional elements transform the nature of the claim into a patent-eligible

application" by reciting "an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18. Even if "the techniques claimed are groundbreaking, innovative, or even brilliant . . . that is not enough for eligibility" if "the advance lies entirely in the realm of abstract ideas." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018). "What is needed is an inventive concept in the non-abstract application realm." *Id.* at 1168.

To the extent claims include non-abstract elements, they are still ineligible if they recite "well-understood, routine, conventional activities previously known to the industry." *Alice*, 573 U.S. at 225 (quotation omitted). The "inquiry is not whether the claimed invention as a whole is unconventional or non-routine," but "whether the claim limitations other than the invention's use of the ineligible concept to which it was directed were well-understood, routine and conventional." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

The two-step *Alice* inquiry is a legal one, which may be decided based on the "intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.'" *Secured Mail Sols., LLC*, 873 F.3d at 912. "Like other legal questions based on underlying facts," patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts . . . require a holding of ineligibility under the substantive standards of law." *SAP Am.*, 898 F.3d at 1166.

## V.    ARGUMENT

### A.    The claims of the '862 Family are patent-ineligible.

Claims 1–20 of each of the '862 and '863 patents are directed to the patent-ineligible abstract idea of facilitating purchases using an intermediary. The use of an intermediary to facilitate payment for purchases, such as in escrow or a bank wire transfer, is a fundamental economic practice known long before the use of computers and Internet commerce. Because nothing in these claims adds an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself," this Court should find the claims ineligible under 35 U.S.C. § 101. *See Alice*, 573 U.S. at 225–26.

#### 1.    Representative Claims

1    "[T]he Court need not individually analyze every claim if certain claims are representative."

2    *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 371 F. Supp. 3d 668, 684 (N.D. Cal. 2019), *aff'd*, 815 F.

3    App'x 529 (Fed. Cir. June 19, 2020). Claims are representative when they "are substantially similar

4    and linked to the same abstract idea." *See id.* (quoting *Content Extraction & Transmission LLC v.*

5    *Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)).   As described below, the

6    independent claims of the '862 Family are all directed to the abstract idea of facilitating purchases

7    using an intermediary.  The dependent claims are substantially similar and linked to the same abstract

8    idea.  Thus, independent claim 1 of the '862 patent is representative of dependent claims 2–8 of the

9    '862 patent, independent claim 1 of the '863 patent, and dependent claims 2–8 of the '863 patent.

10   Independent claim 9 of the '862 patent is representative of dependent claims 10–20 of the '862 patent,

11   independent claim 9 of the '863 patent, and dependent claims 10–20 of the '863 patent.

12          Independent claim 9 of the '862 patent is nearly identical to independent claim 9 of the '863

13   patent, and the differences between them are trivial or typographical.  For example, '862 patent claim

14   9 requires providing an order variable "to proceed with merchant processing of the customer order,"

15   whereas '863 patent claim 9 requires providing an order variable "to thereby allow the merchant to

16   fulfill or reject the order."  *Compare* '862 patent, 51:13–16, *with* '863 patent, 52:13–15.  Similarly,

17   independent claim 1 of the '862 patent is nearly identical to independent claim 1 of the '863 patent

18   except that the latter includes an additional limitation "assembling order information for a customer

19   order . . ." '863 patent, 50:44–47.  And the dependent claims 2–8 and 10–20 of both the '862 and '863

20   patents do not add anything above the abstract idea.  These claims merely recite using "verification or

21   authentication fields" that change with each transaction (claims 2–6 and 10–15), conducting the

22   authentication procedure for the merchant (claims 16–17), or specify that the customer, merchant, or

23   both assign the transaction identifier ('862 patent claims 7–8, 18–20).  These are trivial variations of

24   the same abstract idea of facilitating purchases using an intermediary.  *See, e.g.*, *Inventor Holdings,*

25   *LLC v. Bed Bath & Beyond Inc.*, 876 F.3d 1372 (Fed. Cir. 2017) (remote seller generating an order

26   code for each order).  Thus, claim 1 of the '862 patent is representative of claims 2–8 of the '862

27   patent and claims 1–8 of the '863 patent, and claim 9 of the '862 patent is representative of claims 10–

28   20 of the '862 patent and claims 9–20 of the '863 patent.

2.   ***Alice* step one: The claims of the '862 Family are directed to facilitating purchases using an intermediary.**

The first step of the Alice framework "look[s] at the 'focus' of the claims [and] their 'character as a whole,'" to determine whether they are directed to an abstract idea or other patent-ineligible concept. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  Here, the clear focus of the claims is the abstract idea of facilitating purchases using an intermediary.  The asserted claims do not provide a "solution of a 'technological problem'" or "an improvement in computer or network functionality." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016).  *See also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) (holding "[t]o be a patent-eligible improvement to computer functionality, we have required the claims to be directed to an improvement in the functionality of the computer or network platform itself.").  Rather, the claims do nothing more than use an intermediary—a bank—to pay a seller upon the buyer authorizing a specified transaction with the intermediary in order to avoid transmitting sensitive information to the seller that may be intercepted.

a.   **Representative Claim 9 of the '862 patent**

Claim 9 of the '862 patent is directed to the abstract idea of facilitating a purchase using an intermediary.  Broadly, claim 9 requires the steps of: (1) a customer (*i.e.*, buyer) placing an order with a merchant (*i.e.*, seller) via the internet ('862 patent, 51:52–61), (2) generating a transaction identifier for the order (*id.* at 51:62–52:2); (3) the buyer authenticating itself and approving the transaction identified by the transaction identifier with the bank (*i.e.*, intermediary) (*id.* at 52:3–9); and (4) the intermediary paying the seller (*id.* at 52:10–18).  This is effectively the same as paying for a purchase via wire transfer:  a buyer places an order with a seller, the seller gives the customer an order number so that he or she knows what an incoming wire is for, the buyer communicates with his or her bank to authenticate with the bank and provide instructions, including the order number, for paying the seller, after which the bank pays the seller.  This is not a technological solution to a problem rooted in technology, but simply a method of conducting a transaction that has been used for centuries.

Both the Supreme Court and the Federal Circuit have consistently found similar claims covering facilitating purchases and other financial transactions using intermediaries directed to

abstract ideas. *See, e.g.*, *Alice*, 573 U.S. at 219 (holding claims directed to "exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk" abstract); *Innovation Scis., LLC v. Amazon.com, Inc.*, 778 F. App'x 859 (Fed. Cir. 2019) (holding claims directed to the abstract idea of "securely processing a credit card transaction with a payment server" ineligible); *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528 (Fed. Cir. 2021) (holding "the claims are directed to the abstract idea of payment escrow" using an "online marketplace"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding performance guaranty by a third-party "safe transaction service" provider a type of "long-familiar commercial transaction[]" and abstract); *Integrated Tech. Sys. v. First Internet Bank of Ind.*, No. 2:16-CV-00417-JRG, 2017 WL 631195, at *4 (E.D. Tex. Jan. 30, 2017) (claims directed to "electronic escrow agent" to facilitate sending cash between individuals found abstract); *Inventor Holdings*, 876 F.3d 1372 (Fed. Cir. 2017) (holding claims directed to local processing of payments by a POS system for remotely purchased goods "are manifestly directed to an abstract idea").

Claim 9 of the '862 patent closely mirrors the invention in *Inventor Holdings,* which "covers purchasing goods from a remote seller by placing an order, receiving an order code, entering the order code at a POS terminal, and paying for the order in person." *Inventor Holdings,* 875 F.3d at 1375. Although in *Inventor Holdings* the patent at issue included three method claims—one drafted from the perspective of each of the intermediary (POS system, claim 1), seller (claim 25), and buyer (claim 41)—whereas claim 9 aggregates the actions of all three parties (the bank, merchant, and customer, respectively) into a single claim, the limitations use nearly identical language to cover the same general process of: (1) a buyer placing an order with a seller via the internet, (2) generating a transaction identifier for the order; (3) the buyer authenticating itself and approving the transaction identified by the transaction identifier with the intermediary; and (4) the intermediary paying the seller and the seller processing the order. The table below compares the limitations of the '582 patent of *Inventor Holdings* with claim 9 of the '862 patent, color coded for each of these four steps:

| U.S. Patent No. 6,381,582 ('582 patent) of *Inventor Holdings* | Claim 9 of the '862 patent |
|---|---|
| (Claim 41 **[buyer]**): transmitting an order for goods to a remote merchant | communicating between a customer computer and a merchant computer via the internet; |

| | |
|---|---|
| (Claim 25 **[seller]**): receiving a remote order for a purchase of goods from a customer | assemble order information associated with a customer order using the merchant computer and customer computer during said communicating step |
| (Claim 25 **[seller]**): generating a code and a purchase price for said remote order | assigning a transaction identification during said communicating step to identify said transaction, said transaction identification not being useful for making other transactions against the customer account; |
| (Claim 41 **[buyer]**): providing at least one of said code and said purchase price for use by a point-of-sale system of a local seller in processing a payment for said order; | conducting an identification inquiry between the bank computer and customer computer via the internet to verify the authority of the customer user for using said customer account; |
| (Claim 8 **[POS system]**) receiving at a point-of-sale system a code relating to a purchase of goods | communicating between the customer computer and the bank computer via the internet including transaction identification and at least one order variable; |
| (Claim 8 **[POS system]**): transmitting to said remote seller data indicating that said payment has been received for said remote order<br><br>(Claim 25 **[seller]**): initiating, responsive to said payment data, a shipment of said goods; and<br>receiving a payment for said remote order from said local seller | communicating between the bank computer and the merchant computer;<br><br>said communicating between the bank computer and the merchant computer including said transaction identification and said at least one order variable not previously known to the merchant computer to proceed with merchant processing of the customer order;<br><br>paying the merchant using the bank. |

The only differences between the claims of the '582 patent and claim 9 of the '862 patent are: (i) in the '582 patent, the user submits payment directly to the intermediary (the POS system), whereas in claim 9, the user submits an "order variable not previously known to the merchant" over a separate communications linkage to authorize the intermediary (the bank) to make the payment, and (ii) eCardless admits that the order variable received from the customer by the bank is *the same order variable* that is sent from the bank to the merchant during payment. ECF No. 156 at 1. These differences do not render the claim patent-eligible, as they do not "constitute an improvement to computer functionality itself." *USR*, 10 F.4th at 1346.

*First*, authorizing an intermediary such as a bank to pay a seller is itself a long-established and conventional financial practice. When wiring money to a recipient, the sender's bank will authenticate the sender to make sure he or she is authorized to access the account by any known verification method

such as driver's license, debit card PIN, or—if the authorization is provided through online banking—

conventional web authentication such as username and password.  The Federal Circuit has held that

verifying a user's identity is, in both the payment and other contexts, an abstract idea.  *See, e.g.*, *USR*,

10 F.4th at 1350 (finding claims "directed to a method for verifying the identity of a user to facilitate

an economic transaction" abstract); *Telesign Corp. v. Twilio, Inc*., No. 18-cv-03279-VC, 2018 WL

10638619, ECF No. 219, slip op. at 3–4 (N.D. Cal. Oct. 19, 2018) (holding "verifying a user's identity

using passcodes" is an abstract idea).  *See also Asghari-Kamrani v. United Servs. Auto. Ass'n*, No.

2:15-cv-478, 2016 WL 3670804, at *4 (E.D. Va. July 5, 2016) (holding the combination of "the use

of a third party intermediary to confirm the identity of a participant to a transaction and the use of a

temporary code to confirm the identity of a participant to a transaction" is an abstract idea).

　　　　Likewise, when executing escrow, the escrow agent must verify the identity of the buyer and

that the transaction has been consummated prior to releasing funds to the seller.  The Federal Circuit

has held that electronic payment escrow is an abstract idea.  In *Boom! Payments*, the Federal Circuit

determined "the claims are directed to the abstract idea of payment escrow."  839 F. App'x at 532.

The claims at issue required that "the buyer provides payment information to the system, such as credit

or debit card information," after which a "unique 'buyer identifier' is then generated and provided to

the buyer.  Once the transaction has been consummated . . . the buyer provides the buyer identifier to

the seller . . . . The seller then provides the buyer identifier to the online marketplace . . . and payment

is authorized."  *Id.* at 530.  Because only the buyer and the online marketplace know the "buyer

identifier," reception of the buyer identifier authorizes the payment to the intermediary.  Thus,

authorizing a pre-stored payment method using an intermediary is itself an abstract idea, and cannot

remove claim 9 from the realm of the abstract.

　　　　Furthermore, the fact that authorization occurs over a separate "communications linkage"

between the customer and the bank is also abstract.  For example, when executing a wire transfer, the

communications mechanism the buyer uses to communicate with the bank is typically different than

the one the buyer uses with the seller.  And this Court has specifically held that authentication using

multiple communications mediums is abstract.  *See Smart Authentication IP, LLC v. Elec. Arts, Inc.*,

402 F. Supp. 3d 842, 853 (N.D. Cal. Sept. 11, 2019) (granting motion to dismiss and holding asserted

1   patent "is directed to the abstract idea of verifying the identity of a user in more than one way over

2   multiple communications mediums."); *see also Strikeforce Techs., Inc. v. SecureAuth Corp.*, No. CV-

3   17-04314, 2017 WL 8808122, at *6 (C.D. Cal. Dec. 1, 2017) (finding claims that patentee

4   characterized as "implementing out-of-band authentication" abstract and ineligible subject matter).

5          ***Second***, the limitation requiring that certain information (*i.e.*, sensitive data) is ***not*** transmitted

6   to the merchant (*i.e.*, "order variable ***not previously known to the merchant computer***") is also itself

7   an abstract idea.  The Federal Circuit has held the "use of an identification code known only to the

8   buyer and the third party to verify a transaction could be performed just as readily without the use of

9   computers and cannot be said to be a 'technological' solution that improves the functioning of a

10  computer system."  *Boom! Payments,* 839 F. App'x at 532.  Indeed, in a conventional escrow or wire

11  transfer arrangement, the seller does not receive the buyer's account numbers.

12         Furthermore, claim 22 in *Universal Secure Registry* also included similar negative limitations,

13  but nonetheless the Federal Circuit found it was directed to an abstract idea.  *USR*, 10 F.4th at 1349

14  ("providing the account identifying information to a third party ***without providing the account***

15  ***identifying information to the provider*** . . . enabling or denying the provider to perform the transaction

16  ***without the provider's knowledge of the account identifying information***.").  The Federal Circuit

17  held, "the claims here involve allowing a financial transaction between two parties using a third-party

18  intermediary to mitigate information security risks," and that "sending data to a third-party as opposed

19  to the merchant itself is an abstract idea."  *Id.* at 1350.

20         Critically, the claims do not specify what "order variable" is withheld from the merchant, or

21  what "order variable" is provided by the customer and bank to complete the order.  Rather, the claims

22  use results-based negative limitations that whatever information is transmitted to the merchant cannot

23  "be used to make fraudulent charges against the customer account."  The Federal Circuit consistently

24  finds claims using this type of results-based language directed to abstract ideas.  *USR*, 10 F.4th at 1355

25  ("Because the claims broadly recite generic steps and results—as opposed to a specific solution to a

26  technological problem—we hold that the claims are abstract under *Alice.*"); *see also Innovation Scis.*,

27  778 F. App'x at 864 (finding claim that "recites, in merely functional, results-oriented terms" method

28  of "securely processing a credit card transaction with a payment server" abstract).  And like the claims

at issue in each of *Inventor Holdings*, *Innovation Sciences*, *Smart Authentication*, *StrikeForce*, *Asghari*, *USR*, and *Boom! Payments*, claim 9 "only describe[s] the steps of passing information back and forth by a computer." *Boom! Payments*, 839 F. App'x at 532.

Similarly, that the "transaction identifier" is not "useful for making other transactions against the customer account" ('862 patent, 51:59–62) is simply a characteristic of nearly all transaction identifiers. The patent admits that, during prior art online orders, a merchant typically assigns an order number for recordkeeping (*id.* at 4:24–25 ("An invoice or order number is usually assigned."))— ostensibly this order number cannot be used to make *other* orders. Indeed, in *Asghari,* the claims recited a "dynamic code that is valid for a predefined time and *becomes invalid after use.*" *Asghari*, 2016 WL 3670804, at *2. *See also Boom! Payments*, 839 F. App'x at 530 (reciting the step of "generat[ing] a *transaction-specific* buyer acceptance identifier"); *USR*, 10 F.4th at 1348 ("When a user initiates a purchase, the user enters a secret code . . . to cause the ID device to generate a *one-time code*."). Conventional, well-known characteristics cannot render the claims patent eligible.

*Third*, the requirement that the order variable be sent from the bank to the merchant "to proceed with merchant processing of the order," such as a shipping or delivery address, does not render the claims non-abstract. This step could just as easily be performed without the use of computers, and similarly cannot be said to be a "technological" improvement. Indeed, originally filed claim 1 of the '986 patent expressly recited this limitation ("providing delivery address information to the merchant from the bank in connection with said order"), yet the Patent Office rejected claim 1 as patent-ineligible. Kang Decl. Ex. A.

*Finally,* the limitations requiring that the customer computer send an order variable to the bank, and subsequently that the bank forward the order variable to the merchant, cannot render the claims patent eligible. Fundamentally, a buyer providing information such as closing instructions to an intermediary, such as an escrow agent, who then provides the information to the seller is a conventional economic process that has been performed without computers for centuries. And this Court found a claim reciting a nearly identical process directed to an abstract idea. *Asghari*, 2016 WL 3670804, at *2 (holding claims that require a user "provide his or her UserName and SecureCode to the External-Entity" and "the External-Entity then sends the Username and SecureCode to the Central-

Entity" abstract).  Indeed, the Federal Circuit in *Inventor Holdings* found a similar set of claims, requiring that a "remote seller generates an 'order code'" that it sends to the buyer, after which "the buyer may then enter the order code at a point-of-sale (POS) terminal," directed to an abstract idea and patent-ineligible.  *Inventor Holdings*, 876 F.3d at 1375; *see also Boom! Payments*, 839 F. App'x at 530 (finding claims that require a "buyer identifier" to be provided from buyer to seller, then from the seller to an online marketplace, abstract). And critically, eCardless contends that claim 9 ***does not require*** that the variable sent from the bank to the merchant is the same order variable received at the bank from the customer.  Kang Decl. Ex. B at 16.  Even were this requirement enough to remove the claims from the realm of the abstract, it cannot save the eligibility of '863 patent, claim 9.

### b.    Representative Claim 1 of the '862 patent

Representative '862 patent, claim 1 is also directed to the abstract idea of facilitating purchases using an intermediary.  Like claim 9 of the '862 patent, claim 1 recites limitations that generally describe the same four steps of (1) a buyer placing an order with a seller via the internet ('862 patent, 50:39–52), (2) generating a transaction identifier for the order (*id.* at 50:53–55); (3) the buyer authenticating itself and approving the transaction identified by the transaction identifier with the bank (*i.e.*, intermediary) (*id.* at 50:56–51:6); and (4) the intermediary paying the seller (*id.* at 51:7–19).

Claim 1 differs only in that it includes more specificity in step (1); e.g., "building a customer order file" and "building a merchant order file" (*id.* at 50:42–52).  These limitations are simply directed to prior art mechanisms putting items in an online shopping cart at a merchant website, and do not change the abstract nature of the claim.  *See, e.g.*, '862 patent, 6:44–67 ("FIG. 2 further illustrates steps performed in a typical prior art internet purchase transaction . . . Step 43 involves interaction between the customer computer and the merchant computer wherein the customer builds an order file.").  "[N]o entity is entitled to 'wholly preempt' such concepts."  *Inventor Holdings*, 876, F.3d at 1378.  *See also Samsung Elecs. Co. Ltd. v. Blaze Mobile, Inc*., 673 F. Supp. 3d 1066, 1081 (N.D. Cal. May 16, 2023) (holding claims directed to "combination of two fundamental economic practices… (1) selecting and purchasing products and (2) providing security for transactions on mobile devices" directed to an abstract idea).  And as discussed above, limitations that some order information is withheld from the merchant cannot render the claim patent-eligible.  *USR*, 10 F.4th at 1349.

1    Accordingly, claims 1–20 of the '862 and '863 patents are directed to the abstract idea of

2    facilitating purchases using an intermediary.

3         **3.    *Alice* step two: The claims of the '862 Family lack an inventive concept.**

4    Because the claims of the '862 Family are directed to an abstract idea, they are patent-ineligible

5    unless they contain an "inventive concept" that ensures the patent amounts to significantly more than

6    a patent on the ineligible idea itself. *Content Extraction & Transmission LLC v. Wells Fargo Bank,*

7    *N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).  The '862 Family claims simply implement the abstract

8    idea using "well-understood, routine, conventional activity," and cannot supply an inventive concept.

9    *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 73 (2012).

10   Representative claims 1 and 9 of the '862 patent merely recite generic "computer[s]" (*e.g.*, a

11   "customer computer," a "merchant computer," and a "bank computer") without anything more.

12   "Computer" is simply a generic computing term that does not confer an inventive concept, particularly

13   by September 25, 2000, the earliest claimed priority date of the '862 Family. "[T]he mere recitation

14   of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible

15   invention." *Alice*, 573 U.S. at 223.

16   The specification also admits that the communication linkages between the three parties are

17   "conventional," and made using "known" communication techniques. *See, e.g.*, '862 patent, 6:16–18

18   ("This customer-merchant communications linkage can function in many of the conventional ways

19   now known"), 6:29-32 ("Communications links between the customer computer 10, customer internet

20   service provider 12, internet 15, merchant internet service provider 18 and merchant computer 20 may

21   use a variety of data processing communications vehicles."), 8:18–20 ("All links use ***conventional***

22   ***data communications vehicles*** or suitable future communications vehicles").  *See also id.* at 6:29–32,

23   9:24–33, 9:61–67, 24:15–18.

24   Similarly, the specification admits that the customer authentication by the bank is

25   accomplished via conventional means, such as verification of shipping or delivery address ('862

26   patent, 15:7–12), telephone number (*id.* at 15:20–26), "user personal identification"

27   information/code/number such as "numeric, alpha-numeric, alphabetical" PINs (*id.* at 15:28–32,

28   14:43–51), and "customer computer identification information" (*id.* at 15:13–19). *See also id.* at 17:34

1    ("a variety of **known** identification methods are possible.  One suitable form of identification is

2    sometimes referred to as a 'cookie.'"), 11:58–65 ("The associated bank data field used to specifically

3    or uniquely identify an authorized customer computer may take various forms **now known or**

4    **hereafter developed**."), 18:15–18.

5          The specification also admits that payment is effected using conventional means.  '862 patent,

6    30:4–8 ("the bank can effect payment by sending checks, wire transfers, electronic funds transfers, or

7    other known or hereafter developed methods of payment.").  Nor does the specification describe any

8    technical advance in generating the "transaction identifier," and admits that in the prior art "an invoice

9    or other transaction control number is usually assigned." *Id.* at 23:50–55, 4:21–25.  *See Secured Mail*

10   *Sols., LLC*, 873 F.3d at 910 (Fed. Cir. 2017) (finding no inventive concept where barcode generation

11   claims "are not directed to a new barcode format, an improved method of generating or scanning

12   barcodes, or similar improvements in computer functionality," and the specification contains "no

13   description of how the unique identifier is generated").

14         Furthermore, the order and timing of the claim elements—including what data is sent between

15   the parties—are "merely the necessary steps of executing payment escrow, and so do not constitute an

16   inventive concept." *Boom! Payments*, 839 F. App'x at 533.  And the dependent claims do not add an

17   inventive concept, merely adding limitations that describe conventional well-known technology, such

18   as changing an authentication field with each transaction, or specifying whether the customer or the

19   merchant generates the transaction identifier.

20         In addition, none of the other claims in the '862 Family contain an inventive concept, but are

21   simply "high-level, functional claims supported by scant additional details in the specification." *Skillz*

22   *Platform, Inc. v. Aviagames Inc.*, No. 21-cv-02436, 2022 WL 783338, at *13–15 (N.D. Cal. Mar. 14,

23   2022).  For example, the specification merely states, "the computer identification information may

24   vary with time . . . . Still further, such information may change or be changeable each time or at a

25   certain frequency" without providing any technical improvement to computer identification

26   information, or details on how the information changes.  '862 patent, 11:66–12:22.

27         In response to PayPal's Motion to Dismiss the original Complaint (ECF No. 141), eCardless

28   filed the Amended Complaint.  ECF No. 149.  The Amended Complaint contains several conclusory

1   paragraphs regarding the novelty of the Asserted Patents, and concludes that the patents describe an

2   inventive concept.  ECF No. 149, ¶¶32–36, 54–63.  eCardless does not dispute that the asserted claims

3   are directed to abstract ideas, only that they "are directed at" various allegedly "novel and inventive

4   concepts."   First, eCardless does not explain why any of these concepts are inventive—it merely

5   concludes that they are.  A court need not accept as true a complaint's legal conclusions.  *Iqbal*, 556

6   U.S. at 679.  Second, eCardless conflates novelty with patent eligibility.  *Yu v. Apple Inc.*, 1 F.4th

7   1040, 1045 (Fed. Cir. 2021) ("Eligibility and novelty are separate inquiries.") (citing *Two-Way Media*

8   *Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017)); *MyMail, Ltd. v. ooVoo*,

9   *LLC*, No. 2020-1825, 2021 WL 3671364, at *7 (Fed. Cir. Aug. 19, 2021) ("[T]he search for an

10  inventive concept is distinct from demonstrating novelty.") (citing *Synopsys, Inc. v. Mentor Graphics*

11  *Corp.*, 839 F.3d 1138 (Fed. Cir. 2016)).  Third, each of the allegedly "novel and inventive concepts"

12  eCardless identifies was not only present in the prior art, but also found patent-ineligible.  For example,

13  while eCardless alleges that "creating two distinct order files for a single transaction" where the

14  "merchant order file has incomplete order information" is a "novel and inventive concept" (ECF No.

15  149, ¶¶ 33-34, 44-45), the claims in *Asghari* and *USR* are directed to a nearly identical concept: each

16  describes a system where personal or financial information is not transmitted to the merchant, but

17  maintained at a central entity or secure registry.  *USR*, 10 F.4th at 1350 ("Because sending data to a

18  third-party as opposed to the merchant is itself an abstract idea, it cannot serve as an inventive

19  concept.").  Critically, claim 9 of the '863 patent does not even require the creation of two order files,

20  thus this concept—even if inventive—cannot salvage that claim.

21      eCardless argues "allowing the financial institution to feed the merchant with information

22  instead of the customer doing so" is a "novel and inventive concept," (ECF No. 149, ¶¶ 34, 45) but

23  nothing about this concept depends upon its implementation by computers; as discussed above, such

24  an operation can and was performed manually during escrow transactions. *See, e.g.*, *Asghari*, 2016

25  WL 3670804, at *4 (analogizing computer-implemented claims to "courier" giving a "time sensitive

26  code" from a "handler" to a "source"); *Esignature Software, LLC v. Adobe Inc*., No. 2023-1711, 2024

27  WL 3289488, at *3 (Fed. Cir. July 3, 2024) (holding "Esignature simply emphasizes the *electronic*

28  aspects of claim 1. But . . . this emphasis shows only that the longstanding business practice happens

on a computer—which hardly solves the claim's 'do it on a computer' problem.").

eCardless also alleges in ¶¶ 35 and 46 that generating a transaction identifier that cannot be used to conduct fraudulent transactions is an inventive concept, but numerous authorities cited herein found this very arrangement patent ineligible. *See, e.g.*, *Boom! Payments*, 839 F. App'x at 533 (dismissing complaint's allegation that the use of a "transaction-specific buyer acceptance identifier" constitutes an inventive concept because it "serves only to authenticate the transaction and is not rooted in a technological problem or solution"); *Asghari*, 2016 WL 3670804, at *5  (holding "the claim elements do not add anything inventive to the abstract concept underlying them. They simply instruct a generic computer or computers to verify the identity of a participant to a transaction using a *randomly generated code*."); *USR*, 10 F.4th at 1350 ("[T]he patent itself acknowledges that the claimed step of generating time-varying codes for authentication of a user is conventional and long-standing.").

At bottom, the limitations of the '862 Family claims may make use of technology, but do not describe improvements to payment processing itself.  Instead, they do little more than "recite[] that the abstract idea[s] . . . will be implemented using the conventional components and functions" generic to computers. *Affinity Labs*, 838 F.3d at 1263.  Accordingly, claims 1–20 of the '862 and '863 patents lack an "inventive concept" under *Alice* step 2.

**B.     The claims of the '206 Family are patent-ineligible.**

Claims 1–15 of the '206 patent and 1–15 of the '942 patent are directed to the abstract idea of multi-factor authentication using location layered on top of the abstract idea of the '862 Family. "Adding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), *cert. denied*, 583 U.S. 1056, 138 S. Ct. 672 (2018).  Because nothing in these claims adds an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself," the Court should also find the claims ineligible. *See Alice*, 573 U.S. at 225–26.

**1.     Claim 1 of the '206 patent is representative**

Claim 1 of the '206 patent representative of the remaining claims of the '206 Family.  As discussed below, representative claim 1 of the '206 patent is directed to the abstract idea of multi-

factor authentication using location information layered on top of the abstract idea of facilitating a purchase with an intermediary claimed in the '862 Family.  The first part of the claim discusses the multi-factor authentication procedure for a customer ('206 patent, 65:64–66:28), and the latter part of the claim simply describes authenticating a merchant (*id.* at 66:28-34), and facilitating the transaction in the same manner as in the '862 Family (*id.* at 66:35-43).

The remaining claims in the '206 Family "are substantially similar and linked to the same abstract idea." *Dropbox*, 371 F. Supp. 3d at 684.  The other independent claims recite substantially the same subject matter—while '206 patent claim 1 is a method claim drafted from the perspective of a financial provider, the other independent claims of the '206 patent (claims 6 and 11) are merely counterpart Beauregard and system claims, respectively, reciting the same subject matter.  '942 patent claim 1 differs only that it lacks the step of "receiving, by at least one processor, computer identification information from a merchant computer device," and method claims 7 and 13 are simply drafted from the perspective of a customer computer or merchant computer, respectively.  Independent claims 7 and 13 also add the feature of the merchant computer receiving a transaction identifier or customer verification information from the customer computer that "is not useful in determining a customer account number."  But as discussed *supra* Section V.A.2, this type of results-based negative limitation is itself an abstract idea and thus does not alter the representativeness inquiry.

Likewise, the dependent claims simply recite minor variations of the same abstract idea.  For the '206 patent, the dependent claims recite using telephone information during the first verification (claims 2, 7, 12); using shipping address during the second verification (claims 3, 8, 13); using delivery address in the second verification (4, 9, 14); and using location information obtained from a third party (claims 5, 10, 15).  Similarly, for the '942 patent, the dependent claims simply claim variations on the same two verification procedures; for example, that the payment request is initiated by the customer (claim 3) or the merchant (claim 4); obtaining GPS location information from both the customer and the merchant in a third verification procedure (claims 5, 7); communicating without using the internet (claims 8, 14); or communicating using encrypted communication linkages (claims 12, 15).  And claim 2 adds the same results-based negative limitation of the transaction identifier "not useful in determining a customer account number."  None of these minor variations render the claims eligible.

2.    ***Alice* step one: The claims of the '206 Family are directed to the abstract idea of multi-factor authentication using location information in combination with the abstract idea of the '862 Family.**

The claims of the '206 Family are directed to the abstract idea of multi-factor authentication using location information layered on top of the abstract idea of the '862 Family. This addition of two abstract ideas cannot render the claims patent eligible. *Boom! Payments*, 839 F. App'x at 532 (holding "at most, the use of an identification code does nothing more than overlay a second layer of abstraction—specifically, identity authentication—on the escrow procedure described by the claims"). Representative claim 1 of the '206 patent specifies that a first verification is performed based on received "authentication or . . . verification parameters" and "computer identification information," and that a second verification is performed based on received "positioning location indicative of a physical location of the customer computer device . . . wherein the positioning location includes position data obtained from a GPS sensor of the customer computer device." '206 patent, Claim 1.

The Federal Circuit has held that multi-factor authentication is an abstract idea. In *Universal Secure Registry*, the Court held that claims 10 and 12 of the analyzed patent were directed to the abstract idea of "multi-factor authentication of a user's identity using two devices to enable a transaction." *USR*, 10 F.4th at 1354–57. The Court rejected USR's arguments that the claims cover a technological solution to problems specific to authentication systems, because "the claims do not include sufficient specificity. . . . Rather, the claims generically provide for the collection of biometric information . . . then authenticating a user using both the biometric-information-derived first authentication and a second authentication information." *Id.* at 1354.

Claim 1 of the '206 patent is similarly generic. The claim merely requires "performing . . . a first verification procedure using the plurality of changeable authentication or changeable verification parameters and the computer identification information from the customer computer device to determine that the customer is authorized to use the customer computer device," but does not limit the parameters or information to any specific type. Rather, the '206 patent describes generic "changeable authentication or changeable verification parameters" such as passcodes. *See* '206 patent, 16:13–21:

> Customer account set up at the bank further preferably includes another
> field or fields of information to define authorized users for the customer

account.  This is done by setting up a user personal identification number or other user identification information and coding.  The user identification code may be selected by the bank, or the code may reflect the user's choice.  A particular requested personal identification number or code can be numeric, alpha-numeric, is alphabetical or some other code configuration.

The specification goes on to list other "authentication/verification parameters" that are entirely conventional:  shipping or delivery address (*id.* at 16:44–50) and telephone caller ID information (*id.* at 16:58–64).  The specification in fact states "a variety of ***known*** identification methods are possible." *Id.* at 19:15–20.  Contrary to eCardless's unsupported allegations in its Amended Complaint (ECF No. 149, ¶¶ 36, 56) there is nothing new about providing a "variable" or "changeable" passcode—users have been able to change or reset PIN numbers and passcodes since their inception.

Similarly, the specification does not describe any new "computer identification information," but merely describes conventional and known methods of identifying a computer, such as a browser cookie.  *See id.* at 19:21–25 ("[o]ne suitable form of identification is sometimes referred to as a 'cookie'.  The to [sic] preferred cookies for the invention are selectively allowed by the customer computer to be written into the customer computer in a form which allows the bank to positively identify the customer computer.").  Indeed, the specification states that the computer identification field is also entirely generic.  *Id.* at 19:67–20:2 ("A variety of customer computer identification techniques can be used as may ***now be known*** or using new technology hereafter developed.").

Nor does the claim's recitation that the computer identification information is "changeable" render the claim patent-eligible.  "In cases involving authentication technology, patent eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer functionality itself." *USR*, 10 F.4th at 1346.  The specification merely states that "the computer identification information may vary with time, so as to be unique at any particular point in time," and provides several generic methods of creating a time-varying code.  '206 patent, 12:51–13:6, 36:51–55, 38:14–18.  Time-varying codes have been a fundamental feature of cryptography and encryption. *Id.* at 63:69–70 ("***Current techniques*** using only encryption make the information available but difficult to decipher.").  The claims are not directed to any new method of providing variable computer identification information, but rather only that the information ***can*** vary.  *See Asghari*, 2016 WL

3670804, at *4 (holding the concept of generating a random, time-sensitive code "could easily be performed either by hand or, more simply, with technologies much older than computers" such as "using a set of dice containing both letters and numbers").

Furthermore, the use of location information is also an abstract idea. Courts have routinely invalidated patents under Section 101 that are directed to nothing more than taking a particular action, such as authenticating or verifying an individual, based on location data. *NantWorks, LLC v. Niantic, Inc.*, No. 20-CV-06262-LB, 2021 WL 24850, at *6 (N.D. Cal. Jan. 4, 2021) (holding claim directed to the abstract idea of "reconciling transactions based on a user's location and generic computer technologies" ineligible); *Skillz Platform*, 2022 WL 783338, at *13–15 (collecting cases); *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190, 1238 (D.N.M. 2016) (finding claims directed to the abstract idea of "authorizing handheld devices to receive streaming video based on a user's location" ineligible), *aff'd*, 697 F. App'x 701 (Fed. Cir. 2017); *Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789, 800 (D.N.J. Sept. 7, 2022) (holding "the concept of taking action in response to location-based information . . . is abstract and patent-ineligible"); *CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 847 (D. Del. 2020) (finding claims directed to the "basic steps of determining the configuration of a game based on the location of a mobile device" ineligible), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021). Indeed, the claims in *Smart Authentication* included limitations where a user-authentication service policy specifies "geographical constraints," yet nonetheless this Court found all claims directed to abstract ideas and patent-ineligible. *Smart Authentication*, 402 F. Supp. 3d at 846.

The remaining limitations of the claim are purely routine—the financial provider system authenticates a merchant computer, receives a payment request from it, a transaction identifier is generated, and assures payment from the customer to the merchant. None of these limitations remove the claim from the realm of the abstract—they are simply formulations of online shopping using an intermediary. For example, despite eCardless alleging the "mechanistic method for generating a transaction identification based on . . . two factors" constitutes an inventive concept (ECF No. 149, ¶¶ 62, 76), the specification does not even mention how the transaction identifier is generated "based on the first and second verification procedures" at all.

At bottom, the claims of the '206 Family present no improvement to computer functionality, and are merely directed to multi-factor authentication using location.  Accordingly, Claims 1–15 of the '206 and '942 patents are directed to an abstract idea under Step 1 of *Alice*.

### 3.    *Alice* step two: The claims of '206 Family lack an inventive concept.

Because the claims of the '206 Family are directed to the abstract idea of multi-factor authentication using location in combination with the abstract idea of facilitating purchases using an intermediary, these claims are ineligible unless they contain an "inventive concept" that ensures the patent amounts to significantly more than a patent on the ineligible idea itself.

Like the claims of the '862 Family, representative claim 1 of the '206 patent merely recites conventional components, such as a "computer device," "processor," and "GPS sensor."  These are generic computing terms that were well-known and that do not confer an inventive concept, particularly by the earliest claimed priority date of September 25, 2000. "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.  *See also Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1374 (Fed. Cir. 2017) (finding claims teaching the use of a "processor," an "interface," "memory," and "data," including "hash identifier[s]" to "merely requir[e] generic computer implementation"); *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) ("a database, user profile . . .[,] and a communication medium, are all generic computer elements").  Like the claims of the '862 Family, the '206 Family's claims use these generic components in conventional ways, and do not solve a problem unique to the Internet or e-commerce. *See Intell. Ventures*, 792 F.3d at 1371.

The specification admits that the claims utilize only conventional components.  For example, the specification states that "location information can be generated by a global satellite positioning device.  Such global satellite positioning devices are ***commercially available in a wide range of forms*** and are often referred to as 'GPS' units."  '206 patent, 10:43–46; *see also id.* at 8:22–24 ("All links use ***conventional data communications vehicles*** or suitable future technology communications vehicles."), 9:34–36 ("This customer-merchant communications linkage can function in many of the ***conventional ways now known*** . . ."), 40:58–60 ("The bank then utilizes ***conventional technology*** to seek authorization to charge the potential customer's pre-existing charge account.").

1    And tellingly, the specification describes the invention as simply combining GPS location

2    information with other verification parameters to achieve an expected, commensurate increase in

3    security. '206 patent, 16:3–11 ("Another preferred form of the invention utilizes any available

4    customer or user locational information to further authenticate the ordering computer.  The GPS or

5    other location information may be combined with telephone caller identification information . . . . This

6    may facilitate detection of fraudulent routing schemes *which might otherwise misuse telephone caller*

7    *identification alone*.").  There is nothing in the specification or the Complaint suggesting "that the

8    claimed combination of these conventional authentication techniques achieves more than the expected

9    sum of the security provided by each technique." *USR*, 10 F.4th at 1353.  Like the claims analyzed in

10   *USR*, the claims of the '206 Family are simply a "combination of . . . long-standing conventional

11   methods of authentication" that "yields expected results of an additive increase in security."  *Id.*

12   Finally, like its allegations for the '862 Family, eCardless's Amended Complaint consists of

13   unsupported legal conclusions that conflate the eligibility analysis and novelty—an approach the

14   Federal Circuit has repeatedly rejected.  The Court should not give eCardless's unsupported legal

15   conclusions any weight.  And as discussed above, the purported "inventive concepts" eCardless

16   identifies—for example the use of location information for authentication (¶¶ 57, 73) and multifactor

17   authentication (¶¶ 58–59, 74–75)—have already been found ineligible by multiple Courts and cannot

18   constitute an inventive concept. *NantWorks*, 2021 WL 24850, at *7 (N.D. Cal. Jan. 4, 2021) ("Only

19   the complaint alleges improvements, but that does not alter the conclusion that the patent itself recites

20   nothing beyond generic computer technology coupled with location information."); *USR*, 10 F.4th at

21   1358 ("There is nothing in the specification suggesting, or any other factual basis for a plausible

22   inference (as needed to avoid dismissal), that the combination of these conventional authentication

23   techniques results in an unexpected improvement beyond the expected sum of the security benefits of

24   each individual authentication technique.").

25   Accordingly, Claims 1–15 of the '206 and '942 patents do not add an "inventive concept."

26   **VI.    CONCLUSION**

27   Because the Asserted Patents are directed to ineligible subject matter, the Court should grant

28   PayPal's motion to dismiss with prejudice.

Dated: July 11, 2024

WINSTON & STRAWN LLP

By:  */s/ Robert N. Kang*

ROBERT N. KANG
(SBN: 274389)
rkang@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 34th Fl.
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

BARRY K. SHELTON
(SBN: 199307)
bshelton@winston.com
**WINSTON & STRAWN LLP**
2121 N. PEARL ST., STE. 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

NIMALKA R. WICKRAMASEKERA
(SBN: 268518)
nwickramasekera@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Ave., 38th Fl.
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

RYUK PARK
(SBN: 298744)
rpark@winston.com
**WINSTON & STRAWN LLP**
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

DEVIN P. GARRITY
(admitted *Pro Hac Vice*)
dgarrity@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10016
Telephone: (212) 294-1730
Facsimile: (212) 294-4700

*Attorneys for Defendant PayPal, Inc.*

1

## **CERTIFICATE OF SERVICE**

2     I hereby certify that all counsel of record are being served with a copy of the foregoing

3 document via the Court's CM/ECF system on July 11, 2024.

4

5                    */s/ Robert N. Kang*
                    Robert N. Kang

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28