**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ECARDLESS BANCORP, LTD., | Case No.  24-cv-01054-BLF |
| Plaintiff, | |
| v. | **ORDER CONSTRUING CLAIMS** |
| | [Re:  ECF 156, 157, 175, 178, 194, 195] |
| PAYPAL INC, | |
| Defendant. | |

Plaintiff eCardless Bancorp, Ltd. ("eCardless") brought this patent infringement lawsuit against Defendant PayPal Inc. ("PayPal"), alleging infringement of four Plaintiff's patents directed to methods for purchasing goods or services over the internet: U.S. Patent Nos. 7,599,862 (the "'862 Patent"); 7,599,863 (the "'863 Patent"); 9,202,206 (the "'206 Patent"); and 9,785,942 (the "'942 Patent") (collectively, the "Asserted Patents"). The Court held a tutorial on October 4, 2024 and a *Markman* hearing on October 11, 2024.

## I.    BACKGROUND

The four Asserted Patents are directed to verifying and authorizing transactions via the internet. eCardless asserts that PayPal's web- and app-based platforms infringe the Asserted Patents. *See generally* First Amended Complaint ("FAC"), ECF 149. The four Asserted Patents are summarized below.

### A.  The '862 and '863 Patents

`    The '862 Patent, titled "Transferring Funds in Connection with Internet Orders Using Order Variables from Two Sources and Authentication," and the '863 Patent, titled "Order File Processing Using Order Variables from Two Sources and Authentication," share a common specification. *See*

ECF 149-1 (the "'862 Patent"); ECF 149-2 (the "'863 Patent"). The '862 and '863 Patents were both filed on January 3, 2006, as continuation applications of U.S. Pat. App. No. 09/669,335 (the "'335 Application") and both expired on November 8, 2021. ECF 149, ¶¶ 37, 48.

The '862 and '863 Patents are both directed to a method of performing an online transaction with "three discrete communications linkages which define communications routes between" three key parties—a customer, a merchant, and a bank. *See* '862 Patent at 8:57-61. The '862 Patent and the '863 Patent explain that the prior art methods of internet transactions were vulnerable to interception because "sensitive business information is communicated at least twice"—first, when "transmitting sensitive account information between the customer computer [] and merchant computer," and second, "when the merchant computer sends an authorization request to the bank computer." *Id.* at 7:33-35; 7:40-41; 7:46-47. The '862 and '863 Patents improve the prior art by simultaneously creating three discrete communications linkages and communicating data between the three parties on a real-time or nearly real time basis. *Id.* at 8:35-45. In a transaction, when placing an order, the customer builds and transmits an order file to the merchant. *Id.* at 30:35-60; Fig. 4 at Steps 110, 120 and 130. The customer then contacts the bank and authenticates the transaction by verifying his identity. *Id.* at 30:55-67; Fig. 4. at Steps 140 and 150. Once the transaction has been authenticated, the Bank "contacts the merchant and assures payment." *Id.* at 31:7-12; Fig. 4 at Step 180. The '862 and '863 Patents claim that the invention "provides increased security against surreptitious interception or collection of internet communication files" by separating "key information to one of the three or more communication linkages." *Id.* at 9:16-22.

### B. The '206 and '942 Patents

The '206 Patent, titled "Secure Financial Transaction Processing Using Location Information," was filed on May 26, 2009. ECF 149-3 (the "'206 Patent"). The '942 Patent, titled "Methods for Performing Internet Processes Using Global Positioning and Other Means," was filed on December 1, 2015, and was a continuation of the '206 Patent. ECF 149-4 (the "'942 Patent"). Both the '206 and the '942 Patents expired by the end of 2021. ECF 149, ¶¶ 64, 78.

The '206 and '942 Patents are also directed to performing an online transaction by

facilitating interactions among the customer, the merchant and the bank. '206 Patent at 9:37-42, 9:57-61. The specifications of the '206 and the '942 Patents substantially overlap. Compared to the '862 and '863 Patents, the '206 and '942 Patents teach additional steps to authenticate a consumer/merchant device using a two-step verification procedure. First, the bank computer verifies a device by assessing "changeable authentication or changeable verification parameters" and "computer identification information" associated with the device. '206 Patent at 16:17-21, 19:21-25, Claim 1. Second, the bank computer verifies that the "positioning location" of the customer computer or the merchant computer, which "includes positing data obtained from a GPS sensor," is at an "authorized location." *Id.* at 15:22-24; 32:7-19; Claim 1.

## II. LEGAL STANDARD

### A. Claim Construction

Claim Construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal citation omitted), and, as such, "[t]he appropriate starting point ... is always with the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

Claim terms "are generally given their ordinary and customary meaning," defined as "the meaning ... the term would have to a person of ordinary skill in the art in question ... as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313 (internal citation omitted). The court reads claims in light of the specification, which is "the single best guide to the meaning of a disputed term." *Id.* at 1315; *see also Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1284-85 (Fed. Cir. 2014) (en banc). Furthermore, "the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips*, 415 F.3d at

United States District Court
Northern District of California

1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). The words of the claims must therefore be understood as the inventor used them, as such understanding is revealed by the patent and prosecution history. *Id.* The claim language, written description, and patent prosecution history thus form the intrinsic record that is most significant when determining the proper meaning of a disputed claim limitation. *Id.* at 1315–17; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks and citations omitted). Evidence external to the patent is less significant than the intrinsic record, but the court may also consider such extrinsic evidence as expert and inventor testimony, dictionaries, and learned treatises "if the court deems it helpful in determining 'the true meaning of language used in the patent claims.'" *Philips,* 415 F.3d at 1318 (quoting *Markman*, 52 F.3d at 980). However, extrinsic evidence may not be used to contradict or change the meaning of claims "in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." *Id.* at 1319 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995)).

**B.  Indefiniteness**

Under 35 U.S.C. § 112, ¶ 2 (2006 ed.),[1] a patent must "conclude with one or more claims

---

[1] Paragraph 2 of 35 U.S.C. § 112 was replaced with newly designated § 112(b) when § 4(c) of the America Invents Act ("AIA"), Pub. L. No. 112-29, took effect on September 16, 2012.  Because the '862 Patent and the '863 Patent were filed before that date, the Court refers to the pre-AIA version of § 112.

particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention." Section 112, ¶ 2 includes what is commonly called the "definiteness" requirement. *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 2125 (2014). In *Nautilus*, the Supreme Court held that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124. The Federal Circuit has cautioned that "the dispositive question in an indefiniteness inquiry is whether the 'claims,' not particular claim terms" fail the *Nautilus* test. *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1231 (Fed. Cir. 2016). The Court therefore reviews the claims, specification, and prosecution history to determine whether the claims "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124. Indefiniteness renders a claim invalid, and must be shown by clear and convincing evidence. *See Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008); *cf. Nautilus*, 134 S. Ct. at 2130 n.10.

## III.    AGREED CONSTRUCTIONS

The parties agree on the construction of several terms. *See* Joint Claim Construction Statement, ECF 156. The Court accordingly approves and adopts the following constructions:

| Claim Term | Agreed Construction |
|---|---|
| "said at least one customer order variable"<br><br>('862 Patent Claim 1)<br>('863 Patent Claim 1) | The term "said at least one customer order variable not provided to the merchant in said building a merchant order file" in '862 Patent limitation 1[J] derives its antecedent basis from "at least one customer order variable not provided to the merchant in said building a merchant order file" in '862 Patent limitation 1[G].<br><br>The term "said at least one customer order variable not provided to the merchant in said building a merchant order file needed by the merchant to proceed with the merchant processing of the customer order" in '863 Patent limitation 1[L] derives its antecedent basis from "at least one customer order variable not provided to the merchant in said building a merchant order file" in '863 Patent limitation 1[I]. |

| Claim Term | Agreed Construction |
|---|---|
| "said at least one order variable"<br><br>('862 Patent Claim 9) | The term "said at least one order variable not previously known to the merchant computer" in limitation 9[E] derives its antecedent basis from "at least one order variable" in limitation 9[D]. |

## IV.    DISPUTED TERMS

### A.  "transaction identifier"/"transaction identification" (All independent claims of the '862 and '863 Patents)

| eCardless's Proposal | PayPal's Proposal | Court's Construction |
|---|---|---|
| Plain and ordinary meaning; no construction is required. But if the Court requires construction, "non-fraud-enabling string of numbers and/or letters used to specifically or uniquely identify a transaction." | "an identifier that is created by the customer, merchant or both and used for completing a transaction." | "an identifier that is created by the customer, merchant or both and used for completing a transaction." |

The terms "transaction identifier" or "transaction identification" appear in all independent claims of the '862 Patent and the '863 Patent. *See* '862 Patent at Claims 1, 9; '863 Patent at Claims 1, 9. As a preliminary matter, the parties do not dispute that the terms "transaction identifier" and "transaction identification" should be construed in the same way. *See* ECF 192, *Markman* Tr. at 6:6-20 (explaining the parties treated the two terms "equally"). The parties, however, dispute whether the proper construction of "transaction identifier" should be limited to "an identifier that is created by the customer, merchant or both" but not the bank.

PayPal argues that through prosecution disclaimer, eCardless narrowed the scope of the term "transaction identifiers" to those not created by the Bank. ECF 157 at 4. PayPal contends that, to overcome a rejection during the prosecution of the '335 Application (a parent application of the '862 and '863 Patents), eCardless distinguished the prior art reference—U.S. Patent No. 5,883,810 ("Franklin")—and argued that the transaction identifier "results from the *customer/merchant exchange,*" not from the bank. *Id.* at 5-6 (emphasis in original). PayPal further maintains that

1    eCardless clearly and unmistakenly disclaimed the scope of "transaction identifier" when it failed

2    to challenge the examiner's characterization that the bank merely "receives" the "transaction

3    identifier" during the prosecution of the '862 and '863 Patents. *Id.* at 6-7.

4          eCardless argues that PayPal has not met its burden proving the statements in the

5    specification or the patents' file history evidence disavowal of claim scope, which requires the

6    "prosecution disclaimer" to be "[un]ambiguous," and "[not] amenable to multiple reasonable

7    interpretations." ECF 175 at 4 (citing *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed.

8    Cir. 2016)). eCardless argues that it did not clearly and unequivocally disclaim the scope of

9    "transaction identifier" during the prosecution of the '335 Application, because its statement focused

10   on the "*content and meaning* of the transaction identifier . . . not the *entity* creating it." ECF 175 at

11   6-7 (emphasis in original). eCardless argues that to the extent the Court finds prosecution disclaimer,

12   the disclaimer does not apply to the '862 and the '863 Patents because the claim limitation involving

13   "transaction identifier" has been materially altered in those two patents. *See* ECF 175 at 2-4.

14         A disclaimer "preclud[es] patentees from recapturing through claim interpretation specific

15   meanings disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323

16   (Fed. Cir. 2003). Such a disclaimer must be both "clear and unmistakable." *Id.* at 1325-26.

17   Regarding the construction of "transaction identifier," the Court finds PayPal's arguments

18   persuasive. The Court agrees with PayPal that eCardless disavowed that the claimed "transaction

19   identifier" could be created by the bank in multiple exchanges with the Examiner. *See* ECF 157 at

20   5-7.

21         eCardless's statements in the prosecution history rise to the level of clear and unmistakable

22   disavowal when, throughout the prosecution, eCardless demonstrated a clear understanding that the

23   "transaction identifier" was not created by the bank. During the prosecution of the '335 Application,

24   the examiner rejected the application's original claims over Franklin, which taught "using a [bank-

25   issued] proxy card number in the same format as a common charge card account number" for

26   transactions via the internet. ECF 157-2, Response to Office Action dated December 21, 2004, at

27   12. In response to the rejection, eCardless canceled the original claims and presented a new Claim

28   54 which claimed "building a customer order file which contains a plurality of customer order

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

variables; building a merchant order file which does not include all of said plurality of customer order variables, . . . [and] assigning a *transaction identifier* during said building a customer order file and said building a merchant order file." ECF 157-2, Response to Office Action dated December 21, 2004, at 3-4 (emphasis added). To distinguish the newly presented Claim 54 from Franklin, which taught the proxy card number was "transmitted over the internet *from the bank to the user*," eCardless argued:

> "The method of claim 54 includes *assigning a transaction identifier*. However, *this transaction identifier is created by the customer, merchant or both*. It is not created by the bank with attendant credit rights which can be intercepted and used by a fraud artist. *The transaction identifier is communicated to the bank* with additional order information needed to complete the transaction."

ECF 157-2, Response to Office Action dated December 21, 2004, at 15, 17 (emphasis added). Additionally, during an interview with the examiner on April 13, 2004, eCardless similarly emphasized that "the transaction ID is assigned by *either the customer or merchant*" during "a particular customer-merchant exchange" in the invention, and thus the transaction ID cannot be used for "fraudulent purposes" as seen in "Franklin's proxy card number … *issued by the bank*." ECF 157-3 at 3 (emphasis added). The Court finds these statements clearly and unmistakably disclaimed transaction identifiers created by the bank.

In response, eCardless points to its arguments made during its response to office action on March 12, 2004, and argues that it did not disclaim the bank from creating the "transaction identifier" but was merely arguing its "transaction identifier" represents the transaction itself as opposed to Franklin's proxy card number. ECF 175 at 5 (citing ECF 175-2 at 14, 17). However, the argument was unsuccessful in overcoming the rejection, and "an applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007). eCardless's reliance on *Avid Tech.* is also misplaced. ECF 175 at 8 (citing *Avid Tech.*, 812 F.3d at 1045). There, during prosecution, the applicant sought to distinguish his data storage system from the prior art reference by arguing "[the prior art

reference's] assignment of a client to a server through a centralized interface for its transaction [is] contrary to the claim limitations noted above." *Avid Tech*, 812 F.3d at 1046. The Federal Circuit explained that the applicant's argument could mean the prior art reference required each client application to be connected to only one storage unit, while the applicant's system allowed each client application to use segments of storage across different storage units. *See id.* at 1046-47. The Federal Circuit concluded that the applicant's argument did not clearly and unmistakably disclaim using central controllers for retrieving storage segments. *See id.* at 1047. Unlike *Avid Tech.*, here, eCardless clearly and unmistakably stated during prosecution that its "transaction identifier" was not created by a bank. *See* ECF 157-2 at 15, 17; ECF 157-3 at 3. Thus, the Court finds eCardless clearly and unmistakably disclaimed the scope of "transaction identifier" during the prosecution of the '335 Application.

The Court finds that the disclaimer applies to the claims in the '862 and '863 Patents. "Claim language ... must be read consistently with the totality of the patent's applicable prosecution history." *Biovail Corp. Int'l. v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1301 (Fed. Cir. 2001) (using earlier application prosecution history to restrictively construed the term "admixture" as requiring a homogenous admixture); *see Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306 (Fed. Cir. 2007) ("We have held that a statement made by the patentee during prosecution history of a patent in the same family as the patent-in-suit can operate as a disclaimer. ... To operate as a disclaimer, the statement in the prosecution history must be clear and unambiguous, and constitute a clear disavowal of scope."). Here, both the '862 and the '863 Patents derive from the initial '335 Application. The limitation "transaction identifier" or "transaction identification" appears in similar contexts in both the '335 Application and the '862 and '863 Patents. Specifically, the "transaction identifier/identification" is a "assign[ed]" during the communication between the customer and the merchant. *See* ECF 157-2 at 3-4, the '335 Application at Claim 54; '862 Patent at Claims 1, 9; '863 Patent at Claims 1, 9. Thus, the Court finds the prosecution history relating to the "transaction identifier" in the parent '335 Application should be applied with equal force to that limitation in Claims 1 and 9 of the '862 Patent and Claims 1 and 9 of the '863 Patent. *See Biovail*, 239 F.3d at 1301 (applying prosecution history disclaimer equally applied to limitations arising out

United States District Court
Northern District of California

United States District Court
Northern District of California

1    of similar context in the parent and child applications).

2         In response, eCardless relies on *Ventana* and argues prosecution disclaimer should not be

3    applied because the scope of the claims in the '335 Applications and the '862 and '863 Patents are

4    different. ECF 175 at 2-4 (citing *Ventana Med. Sys., Inc. v. Biogenex Lab'ys, Inc*., 473 F.3d 1173,

5    1182 (Fed. Cir. 2006)). The Court finds *Ventana* distinguishable. There, the parent application

6    "expressly required reagent in the reagent container to be 'dispensable directly to a sample'"

7    whereas the claim in the child application did not impose such a requirement. *Ventana*, 473, F.3d at

8    1182. Given this difference in claim scope, the Federal Circuit held that the alleged disclaimer made

9    during the prosecution of the parent application did not apply to determining the scope of the child

10   patent. *See id.* Unlike *Ventana*, here, eCardless has failed to explain how the "transaction identifier"

11   in the '335 Application is different from that in the '862 and '863 Patents because, in all claims, it

12   is assigned during the communication between the customer and the merchant. ECF 175 at 3; ECF

13   157-2 at 3-4, the '335 Application at Claim 54; '862 Patent at Claims 1, 9; '863 Patent at Claims 1,

14   9. Thus, the Court finds that the prosecution disclaimer applies to the '862 and '863 Patents. *See*

15   *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1350 (Fed. Cir. 2019)

16   ("Statements made during prosecution of a parent application are relevant to construing terms in a

17   patent resulting from a continuation application if such statements relate to the subject matter of the

18   claims being construed.").

19        Considering the claims, eCardless further relies on claim differentiation and argues that the

20   entities assigning the "transaction identifier" in the independent claims of the '862 and '863 Patents

21   are not limited to the customer and/or the merchant because those independent claims do not

22   "specify the entity performing that step." ECF 175 at 10-11 (citing *Liebel-Flarsheim Co. v. Medrad,*

23   *Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)). Dependent claims of the '862 and '863 Patents provide

24   that the "transaction identifier" is assigned by the customer, the merchant, or both. *See* '862 Patent

25   at Claims 7, 8, 20; '863 Patent at Claims 7, 8, 20. "[T]he the presence of a dependent claim that adds

26   a particular limitation raises a presumption that the limitation in question is not found in the

27   independent claim." *Liebel-Flarsheim*, 358 F.3d at 910. However, the doctrine of claim

28   differentiation "does not serve to broaden claims beyond their meaning" in light of other intrinsic

evidence. *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1326 (Fed. Cir. 2017). Here, as evidenced by the prosecution history of the '862 Patent family and the specification (as discussed below), the doctrine of claim differentiation does not militate in eCardless's favor because it cannot broaden the claim to include scope that eCardless clearly and unmistakenly disclaimed. *See id.*

The Court's disclaimer finding is further supported by the prosecution history of the '862 and '863 Patents. In the Notice of Allowability of both the '862 and the '863 Patents, the examiner explained that the prior art references do not teach "a customer's bank computer *receives* a transaction identification." ECF 157-4 at 7 (eCardless_00000439); ECF 178-2 at 4-6 (eCardless_00000894-96) (emphasis added). On both occasions, however, eCardless failed to respond to the reasons provided in the Notice of Allowance. In response, eCardless argues that the examiner's statements "[do not] support disclaimer." ECF 175 at 8 (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1124 (Fed. Cir. 2004)). But, as the Court explained above, it was eCardless, not the examiner, who disclaimed the scope of the claim during the prosecution of the '335 Application. *See Innova/Pure Water*, 381 F.3d at 1124 ("It is well settled, however, that it is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of the claims."). Without any response from eCardless, the reasons provided by the examiner in the Notices of Allowance of the '862 and the '863 Patents merely affirmed the scope of "transaction identifier." *See SandBox Logistics LLC v. Proppant Express Invs. LLC*, 813 F. App'x 548, 554 (Fed. Cir. 2020) ("[Patentee's] failure to challenge the Examiner's understanding in the Notice of Allowability amounts to a disclaimer."); *see also ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003) (applying Examiner's Reasons for allowance to limit all claims).

The specification further supports the construction that the "transaction identifier" is created by the customer, the merchant, or both, but not the bank. The specification discloses two embodiments. In the first embodiment, the order is assembled by the customer with "merely the ordered items specified, the identity of the merchant, and *a transaction identification or control number*." '862 patent, 23:50-53; *see* '862 patent, 34:16-24, 35:34-42 (explaining the order file built

United States District Court
Northern District of California

by the customer includes "transaction identification"). In the second embodiment, after an order is placed with the merchant, the merchant computer supplies order information, including the "transaction control number" and/or "transaction identification" to the bank. '862 Patent at 25:46-53; 25:59-61; 27:66-28:1. In response, eCardless points to several parts of the specification and argues that "the specification does not limit the claims." ECF 175 at 11-14 (citing '862 Patent at 2:66-23:1; 24:40-43; 24:44-49; 33:3-4; 33:59-61; 34:19-21; 33:11-13). But nothing in the specification indicates the "transaction identifier" is created or assigned by the Bank. Thus, absent evidence to the contrary, the Court finds the specification supports the finding of the prosecution disclaimer.

Based on the foregoing analysis, the Court need not and does not address any remaining arguments raised by the parties with respect to this term. Accordingly, the Court adopts PayPal's proposed construction of "an identifier that is created by the customer, merchant or both and used for completing a transaction" for the disputed term "transaction identifier"/"transaction identification" in Claims 1 and 9 of the '862 Patent and Claims 1 and 9 of the '863 Patent.

**B.  "said . . . at least one order variable" ('863 Patent, Claim 9)**

| eCardless's Proposal | PayPal's Proposal | Court's Construction |
|---|---|---|
| Plain and Ordinary meaning; no construction is required. But if the Court requires construction for order variable, "field of information included in an order file." | "'said at least one order variable not previously known to the merchant computer' in limitation [F] derives its antecedent basis from 'communicating between the customer computer and the bank computer via the internet including a transaction identification and at least one order variable' in limitation [E]" | "field of information included in an order file" |

//

//

//

//

The disputed term "said . . . at least one order variable" appears in Claim 9 of the '863 Patent. Claim 9 of the '863 Patent is recited as:

9. A method for purchasing by a customer using a merchant having an internet site at which the merchant offers goods and/or services; and wherein a bank authorizes the purchase in association with a customer account and assures payment to the merchant, comprising:

9[A] communicating between a customer computer used by a customer user and a merchant computer via the internet;

9[B] assembling order information associated with a customer order using the merchant computer and customer computer during said communicating step;

9[C] assigning a transaction identification during said communicating or said assembling steps to identify said order, said transaction identification not being useful for making other transactions against the customer account;

9[D] conducting an identification inquiry between the bank computer and customer computer via the internet to verify the authority of the customer user for using said customer account;

9[E] **communicating between the customer computer and bank computer via the internet,** including transaction identification and **at least one order variable**;

9[F] communicating between the bank computer and the merchant computer, **said communicating between the bank computer and the merchant computer including said transaction identification and at least one order variable not previously known to the merchant computer**, to thereby allow the merchant to fulfill or reject the order;

9[G] providing assurance of payment information between the bank computer and merchant computer to having said transaction identification and at least one order variable needed by the merchant to complete the purchase.

'863 Patent at Claim 9 (emphasis added). The parties dispute the appropriate construction for the term "at least one order variable" as recited in limitation 9 [F] of the '863 Patent. The dispute centers on whether the term refers back to the "at least one order variable" term in limitation 9[E] of the '863 Patent.

PayPal contends that the term "at least one order variable" in limitation 9[F] must derive its antecedent basis from the same term in limitation 9[E]. ECF 157 at 11. PayPal argues that the plain meaning of Claim 9 requires the bank to send the same set of information that it received from the

customer computer in limitation 9[E] to the merchant computer in limitation 9[F]. *Id.* at 12-13. In response, eCardless argues that the word "said" in limitation 9[F] only modifies the term "transaction identification" and does not modify the term "at least one order variable." ECF 175 at 14. Specifically, eCardless argues that the disputed "at least one order variable" is "not previously known to the merchant computer" and is not required to be included in the communication between the customer and the bank as claimed in limitation 9[E]. *Id.* at 16 (citing *Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("Different claim terms are presumed to have different meanings.")).

The Court agrees with eCardless and finds that the evidence does not support PayPal's proposed construction. The claims of the '863 Patent support eCardlees's construction. *See Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). The plain language of Claim 9 does not require the information communicated between the bank computer and the merchant computer in limitation 9[F] to be the same as the information communicated between the customer computer and the bank computer in limitation 9[E]. *See* '863 Patent at Claim 9. Rather, limitation 9[F] requires its "at least one order variable" only to be "not previously known to the merchant computer." *See id.* Thus, the Court finds the terms "at least one order variable" in limitations 9[E] and 9[F] are worded differently and "are presumed to have different meanings." *See Bd. of Regents of the Univ. of Texas Sys.*, 533 F.3d at 1371.

The specification further supports eCardless's construction. For example, the invention uses "delivery address" for order verification purposes. '863 Patent at 13:5-16. The specification teaches that during a purchase transaction, "the delivery address can alternatively be supplied by the bank to the merchant." *Id.* at 13:17-19. In other words, the "delivery address" does not have to be communicated between the customer computer and the bank computer; rather, after the bank computer communicates with the customer computer and validates the transaction, the bank computer can supplement that information in its "authorization notice" to the merchant computer based on "the customer account records." *Id.* at 13:19-23; 13:42-46; 29:34-39.

PayPay's reliance on the prosecution history is misplaced. In the Notice of Allowance, the

14

examiner explained the cited prior art references did not teach "withholding [] an order variable from a merchant until a customer's bank computer receives a transaction identification and at least one order variable from the customer and releases said transaction identification and at least one order variable needed by the merchant to complete the purchase processing." ECF 157-4 at Page 13 (eCardless_00000440). PayPal argues that, in view of the Notice of Allowance, "[i]t makes little sense to 'release' an order variable" that is "not the one that is withheld and subsequently received" to the merchant. ECF 157 at 14. But the order variable does not have to be received by the bank during its communication with the customer. Instead, as the examiner explained, the released "at least one order variable" is only "needed by the merchant to complete the purchase processing." ECF 157-4 at Page 13 (eCardless_00000440). As the specification explained, this released "at least one order variable" could be "an authorized delivery address specified by the bank to the merchant." '863 Patent at 13:42-46.

Accordingly, the Court adopts eCardless's proposed construction "field of information included in an order file" for the disputed term "said . . . at least one order variable" in claim 9 of the '863 Patent.

### C. "Utilizing the positioning location from the [customer/merchant] [computer/computer device] device [to verify/that verifies] that the [customer/merchant] [computer/computer device] is at an authorized location" ('206 patent claim 1, 6, 11; and '942 patent, claims 1, 7, 13)

|  | eCardless's Proposal | PayPal's Proposal | Court's Construction |
|---|---|---|---|
| Original Construction | Plain and Ordinary meaning; no construction is required. But if the Court requires construction, "using the positioning location provided by the [customer/merchant] [computer/computer device] device [to verify/that verifies] that the [customer/merchant] [computer/computer device] is located at an authorized location" | "comparing the positioning location to a stored location associated with the [customer/merchant]" | "verifying based on comparing the [computer/computer device] positioning location to a stored authorized location" |

|  | eCardless's Proposal | PayPal's Proposal | Court's Construction |
|---|---|---|---|
| Supplemental Construction | "verifying based on comparing the [computer/computer device] positioning location to a stored authorized location" | "verifying based on comparing the [computer/computer device] positioning location to a stored authorized location associated with the [customer/merchant]" | |

The parties dispute the appropriate construction for the term "utilizing the positioning location from the [customer/merchant] [computer/computer device] device [to verify/that verifies] that the [customer/merchant] [computer/computer device] is at an authorized location" in independent claims 1, 6, 11 of the '206 Patent and independent claims 1, 7, 13 of the '942 Patent. The dispute centers on the scope of the term "authorized location." PayPal initially argued that the claimed "authorized location" is "a stored location [] associated with the customer or merchant." ECF 157 at 16. In its initial response, eCardless argued that PayPal's initially proposed construction oversimplified "verifying" and a skilled artisan would understand the "verifying" would involve the steps of "validating the data, comparing it with the authorized location, and ultimately determining whether the accessed data corresponds to the authorized location." ECF 175 at 21.

At the *Markman* hearing, the parties indicated that they might be able to agree to a construction of this term, and the Court instructed the parties to meet and confer. ECF 192, *Markman* Tr. at 67:17-25. The parties were not able to reach an agreement and submitted supplemental briefing. ECF 194, 195. In their supplemental briefing, the parties indicate that they were able to narrow the scope of their dispute, and the dispute now centers on whether the "authorized location" is "associated with the customer/merchant." *See* ECF 194, 195. PayPal argues that the "authorized location" must be "associated with a [customer/merchant] account" regardless of whether the location originated from the bank or from a third party. ECF 194. eCardless argues that the "authorized location" does not have to be "associated with the merchant/customer" if the location

is provided by third parties.

The Court reads claims in light of the specification, which is the "single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. To support its construction, PayPal focuses mainly on the specification's disclosure on verifying positioning location information with "bank-originated account information." ECF 194 (citing '206 Patent at 11:7-16; 17:4-10; 14:16-24, 15:20-28, 18:29-35, 20:21-27, 32:7-19). PayPal argues that the bank may verify the positioning location using customer account information, such as the customer's "prior accounts at the bank." ECF 194 (citing '206 Patent at 11:7-16); *see* '206 Patent at 10:64-11:6 (explaining customer account information may be included when setting up a bank account.). In other words, because a bank is verifying the GPS location using information provided in a customer account with the bank, the "authorized location" is "associated with the customer." *See id.* But in addition to "bank-originated account information," the specification of the '206 Patent discloses that the positioning location information of a customer/merchant computer can also be verified using "third-party-originated account information." '206 Patent at 11:17-11:36. Thus, "absent a clear indication in the intrinsic record that the patentee intended the claims to be limited," PayPal's focus on portions of the specification discussing "bank-originated account information" is "improper." *See Liebel-Flarsheim*, 358 F.3d at 913. Considering the specification in its full scope, the Court finds the specification supports eCardless's proposed construction. With respect to "third-party-originated account information," the specification discloses that the "authorized location" may be provided from "credit information from a credit reporting service or other business or credit reference" and "information from a government entity, public records or the publically available information." '206 Patent at 11:17-25. The specification also discloses that the GPS information may be provided by a third party. *Id.* at 11:28-36. The specification further discloses "cross-check[ing]" the positioning location "with an authenticating source, such as credit reports or other authenticating information, advantageously from a third-party authentication source." '206 Patent at 40:38-44. PayPal argues

United States District Court
Northern District of California

that account information provided by third party must be "associated with a particular account." ECF 194. The Court disagrees. Nothing in the specification limits the "third-party-originated account information," such as information from a credit reporting service or from a government entity, to information "associated with the customer."  Thus, the Court finds the specification supports eCardless's construction.

Further, the Court finds the prosecution history provides little guidance. During the prosecution of the '206 Patent, to overcome an obviousness rejection over U.S. Patent No. 6,377,810 ("Geiger") in view of other prior art references, eCardless argued that Geiger only taught "providing access to a GPS location," and it was "unrelated to secure financial transactions." ECF 157-5 at 13 (eCardless_00000114). eCardless further distinguished Geiger by arguing that the presented claims authorized a transaction "by associating a device used in a transaction *with a financial account* and comparing the actual device location with an authorized location *associated with a financial account*." *Id.* at 14 (eCardless_00000115) (emphasis added). PayPal argues that eCardless's statement supports its construction because it suggests the "authorized location" must be "associated with a financial account." ECF 154. The Court disagrees. Nothing in the prosecution history indicates eCardless's argued "financial account" must be one associated with the customer or the merchant. Rather, the financial account could be "third-party-account information," as disclosed in the specification. '206 Patent at 11:16-36.

Accordingly, the Court adopts eCardless's proposed construction "verifying based on comparing the [computer/computer device] positioning location to a stored authorized location" for the disputed term "utilizing the positioning location from the [customer/merchant] [computer/computer device] device [to verify/that verifies] that the [customer/merchant] [computer/computer device] is at an authorized location" in Claims 1, 6, 11 of the '206 Patent and Claims 1, 7, 13 of the '942 Patent.

//

### D. "communicating between the customer computer and the bank computer . . . including transaction identification" ('862 Patent, Claim 9; '863 Patent, Claim 9).

| eCardless's Proposal | PayPal's Proposal | Court's Construction |
|---|---|---|
| Plain and Ordinary meaning; no construction is required. But if the Court requires construction, "assigning a first transaction identification during said communicating step to identify said transaction, said first transaction identification . . . communicating between the customer computer and the bank computer via the internet including a second transaction identification . . . communicating between the bank computer and the merchant computer; said communicating between the bank computer and the merchant computer including said second transaction identification" | "communicating between the customer computer and the bank computer . . . including said transaction identification"<br><br>Alternatively, indefinite. | Indefinite |

The disputed term "communicating between the customer computer and the bank computer . . . including transaction identification" appears in Claim 9 of the '862 Patent and Claim 9 of the '863 Patent. Claim 9 of the '862 Patent is representative and is recited as:

> 9. A method for transferring funds in connection with purchasing by a customer using o merchant having an internet site at which the merchant offers goods and/or services; and wherein a bank computer authorizes the purchase in association with a customer account and assures payment to the merchant, comprising:
>
> 9[A] communicating between a customer computer and o merchant computer via the internet and assemble order information associated with a customer order using the merchant computer and customer computer during said communicating step;
>
> 9[B] assigning **a transaction identification** during said communicating step to identify said transaction, said transaction identification not being useful for making other transactions against the customer account;

9[C] conducting an identification inquiry between the bank computer and customer computer via the internet to verify the authority of the customer user for using said customer account;

9[D] **communicating between the customer computer and the bank computer** via the internet including **transaction identification** and at least one order variable;

9[E] communicating between the bank computer and the merchant computer, said communicating between the bank computer and the merchant computer including **said transaction identification** and said at least one order variable not previously known to the merchant computer to proceed with merchant processing of the customer order;

9[F] paying the merchant using the bank.

'862 Patent at Claim 9 (emphasis added). The parties dispute where the "said transaction identification" in limitation 9[E] derives its antecedent basis. PayPal asks the Court to correct the claim by construing the term "transaction identification" in limitation 9[D] to read "**said** transaction identification." ECF 157 at 19-20. In other words, PayPal argues the term "transaction identification" in limitation 9[D] and the term "said transaction identification" in limitation 9[E] derive their antecedent basis from the term "a transaction identification" in limitation 9[B], and the claim requires one "transaction identification" in limitations 9[B], 9[D], and 9[E]. *See id.* Alternatively, PayPal proposes the Court to find the claim indefinite for lack of antecedent basis. *See* ECF 157 at 20. In its response, eCardless contends that limitation 9[D] claims a "transaction identification" different from that claimed in limitation 9[B], and the "said transaction identification" in limitation 9[E] refers to the "transaction identification" claimed in limitation 9[D]. ECF 175 at 22-25. eCardless does not raise an argument as to why the claim is not indefinite. *See id.* In its reply, PayPal argues that eCardless's proposed construction would render the claim indefinite because it still fails to resolve the antecedent basis issue. ECF 178 at 13-15.

As an initial matter, the Court finds it lacks the authority to correct the claim as requested by PayPal. "A district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution

20

history does not suggest a different interpretation of the claims." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). Here, PayPal argues "the specification does not describe the existence of *two* separate transaction identifiers [] for a single transaction." ECF 157 at 20. In response, eCardless argues that the specification does not "forbid" the use of more than one "transactional identification" during a transaction. *See* ECF 175 at 23 (citing '863 Patent at 12:13-15) ("The specification discussed alternative embodiments that 'include parameters such *as bank or customer transaction numbers, control numbers* or other variables.'") (emphasis in original). The Court is unpersuaded by PayPal's argument that the "transaction identification" in limitations 9[B] and 9[D] must be the same. The specification discloses that a "transaction identification" is included in the order file created when the customer computer communicates with the merchant computer, as claimed in limitation 9[B]. '862 Patent at 34:21-25, 35:39-44; '863 Patent at 34:21-26, 35:41-46. But the specification fails to explicitly disclose whether the same "transaction identification" is communicated between the customer computer and the bank computer, as claimed in limitation 9[D], and the merchant computer and the bank computer, as claimed in limitation 9[E]. '862 Patent at Claim 9. In its reply, PayPal argues that using multiple transaction identifiers would be "illogical" given the purpose of the "transaction identification" is to "reconcile received communications to a specific transaction." ECF 178 at 14 (citing '863 Patent at 25:59–67, 27:66–28:8, 29:20–33). But PayPal has not shown that the specification forecloses the possibility that the "transaction identification" in limitation 9[D] is different from the "transaction identification" in limitation 9[B]. Indeed, as PayPal explained in its own brief, the specification equated "transaction identifier/identification" with "transaction control number" on several occasions. *See* ECF 157 at 9-11; '862 patent at 25:46-53 ("The merchant communicates with the bank and indicates that the customer has placed an order that includes a request that the bank is to be used to assure payment and/or make payment for the customer order. The merchant can communicate relevant information to the bank indicating the *transaction control number*, customer identification, and amount of

charges associated with the order."); 25:59-61 ("The merchant information supplied to the bank concerning the customer order includes *transaction identification* which is also provided to the customer computer."); 4:12-25 ("For internet purchase transactions . . . a response is usually communicated by the merchant to the customer . . . the responses usually involve sending a confirmation that the order has been received and accepted. An invoice or other *transaction control number* is usually assigned.") (emphasis added). Accordingly, the Court rejects PayPal's proposed construction that the claim requires one "transaction identification" in limitations 9[B], 9[D], and 9[E].

In its response, eCardless proposes that the "transaction identification" claimed in limitations 9[B] and 9[D] are "different" from each other, and "it is more reasonable to assume" that the "said transaction identification" in limitation 9[E] refers to the "transaction identification" in the immediately preceding limitation 9[D]. ECF 175 at 22-23. In other words, eCardless essentially requests the Court to rewrite "a transaction identification" in limitation 9[B] as "a **first** transaction identification"; and "transaction identification" in limitation 9[D] as "**a second** transaction identification." *See* ECF 175 at 23. In its reply, PayPal argues that eCardless's proposal would still render Claim 9 indefinite because the "said transaction identification" could reasonably reference to the "transaction identification" claimed in either limitation 9[B] or 9[D] and eCardless offered no legal authority supporting its contention that it is "more reasonable" to assume limitation 9[E] refers to limitation 9[D] rather than limitation 9[B]. ECF 178 at 14-15.

Having determined Claim 9 does not require the "transaction identification" in limitations 9[B] and 9[D] to be the same and having rejected PayPal's "correction," the Court finds the claim indefinite for lack of antecedent basis. A claim is "indefinite if a [claim] term does not have proper antecedent basis." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). For a claim term to have antecedent basis support, an indefinite article (*i.e.*, "a" or "an") must precede a claim term the first time the claim term is used in the claims. Subsequent references in the

claims to the claim term must be preceded by a definite article (*i.e.*, "the" or "said"). *See generally Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) (explaining establishing proper antecedent basis through indefinite and definite articles). Antecedent basis is necessary so that those with skill in the art can ascertain the scope of a patent and its claimed inventions with "reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

In this case, limitation 9[E]–" communicating between the bank computer and the merchant computer . . . said transaction identification"–introduces the term "said transaction identification." '862 Patent at Claim 9. However, in limitations 9[B] and 9[D], Claim 9 references two instances of "transaction identification" before limitation 9[E]. *See id.* Thus, the Court finds the term "said transaction identification" in limitation 9[E] appears in the claim without antecedent basis, which "signals a potential indefiniteness problem." *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526 (Fed. Cir. 2020). But the Court's inquiry does not end there because "the lack of an antecedent basis does not render a claim indefinite as long as the claim 'apprises one of ordinary skill in the art of its scope and, therefore, serves the notice function required by [§ 112 ¶ 2].'" *In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018) (citing *In re Packard*, 751 F.3d 1307, 1310, 1314 (Fed. Cir. 2014)) (alternation in original).

Considering the broader context of the claim, the Court finds it impossible to determine which one of the two terms "transaction identification" in limitations 9[B] and 9[D] was referenced by the "said transaction identification" in limitation 9[E]. Claim 9 describes two "transaction identification[s]": 1) in limitation 9[B], "assigning a transaction identification" during the "communication step" between the consumer computer and the o merchant computer; and 2) in limitation 9[D], a "transaction identification" is communicated between the consumer computer and the bank computer. '862 Patent at Claim 9. And having agreed with eCardless that those transaction identifications can be different from each other, a skilled artisan would have no guidance on which one relates to limitation 9[E]. eCardless's assertion without authority that it is "more reasonable" to

23

look to immediately preceding limitation 9[D] is not persuasive.

At the *Markman* hearing, eCardless argued that, because the "said transaction identification" in limitation 9[E] is "not previously known to the merchant computer," it must refer to the "transaction identification" in limitation 9[D]. ECF 192, *Markman* Tr. at 84:6-22. In eCardless's view, because the "transaction identification" in limitation 9[B] is assigned during the communication between the customer computer and the merchant computer, that "transaction identification" is known to the merchant computer. *Id.* at 85:3-22. In response, PayPal contended that limitation 9[E] exhibits a "grammatical failure" as to which transaction identification in limitations 9[B] and 9[D] it is referring to. *Id.* at 101:7-9.

The Court agrees with PayPal. Limitation 9[E] is recited as:

> "communicating between the bank computer and the merchant computer; said communicating between the bank computer and the merchant computer including *said transaction identification* and *said at least one order variable not previously known to the merchant computer* to proceed with merchant processing of the customer order;"

'862 Patent at 52:8-14 (emphasis added). The Court finds that, based on a plain reading of the limitation, the claim requires only the "said at least one order variable" to be "not previously known to the merchant computer." In other words, contrary to eCardless's proposal, the plain and ordinary meaning of the claim does not require the "said transaction identification" to also be "not previously known to the merchant computer." *See 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1329 (Fed. Cir. 2013) ("For this claim term the patentee offers an ascertainable definition in the body of the claim, and our cases do not support prescribing a more particularized meaning unless a narrower construction is required by the specification or prosecution history."); *Markman* Tr. at 87:22-89:10) (explaining the term "not previously known to the merchant computer" does not limit "said transaction identification" based on a grammatically correct reading of limitation 9[E]).

Beyond the claim language, the specification does not clarify the meaning of the term "said transaction identifier." The Court notes that eCardless has not pointed to any disclosure in the

specification to support its construction that the "said transaction identification" in limitation 9[E] must refer to the "transaction identification" in limitation 9[D]. *See* ECF 175 at 22-25. The Court finds the specification fails to specify which "transaction identification" in limitations 9[B] and 9[D] is communicated to the merchant by the bank. The specification discloses that, after a transaction is verified, the bank communicates an assurance of payment to the merchant. *See* '862 Patent at Fig. 4 at Step 180, 31:7-12, 29:20-33. The specification further discloses that communicating the "assurance of payment" from the bank to the merchant "can most effectively be accomplished by merely including the transaction control number." '862 Patent at 29:27-31.   Nonetheless, the specification never specifies which "transaction control number" is included in the communication. Thus, the Court finds the specification does not clarify the meaning of the claim term "said transaction identification" because the specification neither provides a clear antecedent basis for the claim term nor resolves the ambiguities in the claim language.

In light of the ambiguity in the intrinsic record, the Court finds Claim 9 indefinite. The Court finds several cases from the Federal Circuit and this district instructive in its indefiniteness determination. In *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, the Federal Circuit provided an example of a claim being indefinite for lacking antecedent basis: "if two different levers are recited earlier in [a] claim, the recitation of 'said lever' in the same or subsequent claim would be unclear where it is uncertain which of the two levers was intended." 512 F.3d 1338, 1343 (Fed. Cir. 2008). Similarly, in *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, the Federal Circuit held the term "said different IP address" in a limitation reciting "a sixth processor that analyzes a request submitted to said different IP Address" was indefinite for a lack of antecedent basis because it was not clear which one of the earlier claimed "one or more IP Addresses," "one or more second IP Addresses," or "one or more third IP Addresses" was used to determine "different IP Address." 813 F. App'x 522, 526-27 (Fed. Cir. 2020). Lastly, this Court in *Sensor Elec. Tech., Inc. v. Bolb, Inc.* held the term "the material" in a dependent claim was indefinite because the independent claim did not provide

an adequate antecedent basis as it claimed "a first layer composed of a material" and "a second layer composed of a material," and it was unclear which "layer composed of a material" the dependent claim was referring to. No. 18-CV-05194-LHK, 2019 WL 4645338, at *31 (N.D. Cal. Sept. 24, 2019). Like those three cases, here, it is uncertain which "transaction identification" listed in limitations 9[B] and 9[D] provides the antecedent basis for the "transaction identification" referred by the term "said transaction identification" in limitation 9[E]. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (explaining that "there is an indefiniteness problem if the claim language 'might mean several different things and no informed and confident choice is available among the contending definitions'") (quoting *Nautilus*, 134 S. Ct. at 2130 & n.8) (internal quotation marks omitted). In its response, eCardless argues that "it is more reasonable to assume" the "said transaction identifier" in limitation 9[E] derives its antecedent basis from limitation 9[D] because "[limitation 9[D]] immediately precedes [limitation 9[E]]." ECF 175 at 23. But eCardless has failed to provide any legal authority that supports its argument.

In sum, because the claim term "said transaction identification" in limitation 9[E] lacks any antecedent basis, Claim 9 of the '862 Patent and Claim 9 of the '863 Patent are indefinite. *See Halliburton*, 514 F.3d at 1249 (holding that a claim is "indefinite if a [claim] term does not have proper antecedent basis").

## V. ORDER

For the foregoing reasons, the Court construes the following terms:

| | Claim Term | Court's Construction |
|---|---|---|
| 1 | "said at least one customer order variable" <br><br> ('862 Patent, Claim 1) <br> ('863 Patent, Claim 1) | The term "said at least one customer order variable not provided to the merchant in said building a merchant order file" in '862 Patent limitation 1[J] derives its antecedent basis from "at least one customer order variable not provided to the merchant in said building a merchant order file" in '862 Patent limitation 1[G]. <br> The term "said at least one customer order variable not provided to the merchant in said |

| Claim Term | Court's Construction |
|---|---|
|  | building a merchant order file needed by the merchant to proceed with the merchant processing of the customer order" in '863 Patent limitation 1[L] derives its antecedent basis from "at least one customer order variable not provided to the merchant in said building a merchant order file" in '863 Patent limitation 1[I]. |
| 2 | "said at least one order variable"<br><br>('862 Patent, Claim 9) | The term "said at least one order variable not previously known to the merchant computer" in limitation 9[E] derives its antecedent basis from "at least one order variable" in limitation 9[D]. |
| 3 | "transaction identifier"/"transaction identification"<br><br>(All independent claims of the '862 and '863 patents) | "an identifier that is created by the customer, merchant or both and used for completing a transaction" |
| 4 | "said . . . at least one order variable"<br><br>('863 Patent, Claim 9) | "field of information included in an order file" |
| 5 | "utilizing the positioning location from the [customer/merchant] [computer/computer device] device [to verify/that verifies] that the [customer/merchant] [computer/computer device] is at an authorized location"<br><br>('206 Patent, Claims 1, 6, 11; and '942 Patent, Claims 1, 7, 13) | "verifying based on comparing the [computer/computer device] positioning location to a stored authorized location" |
| 6 | "communicating between the customer computer and the bank computer . . . including transaction identification"<br><br>('862 Patent, Claim 9; '863 Patent, Claim 9) | Indefinite |

Dated:  November 14, 2024

_____

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California